# EXHIBIT "A"

STATE OF SOUTH DAKOTA                    }
                                         :SS
COUNTY OF _Pennington_                   }

IN CIRCUIT COURT

_7th_ _____ JUDICIAL CIRCUIT

| | |
|---|---|
| Chyenne Waisanen<br>Daniel Waisanen<br>**Plaintiff**<br><br>v.<br><br>Credit Collection Bureau<br>**Defendant** | Case No.: _5 ICIV24-00747_<br><br>**FINANCIAL AFFIDAVIT**<br><br>[X] PLAINTIFF    [ ] DEFENDANT |

I, _Daniel Waisanen_ _____ hereby swear under oath and under
   *(Name of party filling out this Affidavit)*

penalty of law that the following is true.

## CONTACT INORMATION

(1) My mailing address is:

_2315 E Philadelphia St_

_Rapid City SD 57703_

(2) My telephone number is: _605 545 3987_

## EMPLOYMENT

(3) I am **(check one)** [ ] Employed   [ ] Unemployed   [X] Self-Employed

## MONTHLY INCOME

| | Monthly Income Source | Per Month Amount |
|---|---|---|
| (4) | (If employed) My gross monthly pay is: | $    0 |
| (5) | (If self-employed) My monthly gain/profit from my business/profession is: | $    0 |
| (6) | My pension, retirement, disability, veterans, social security, or insurance payments received is: | $    0 |

FORM UJS-023
Rev. 04/2024

| (7) | My interest, dividends, rentals, royalties, or other gains is: | $ | 0 |
| (8) | Gain from sale, trade or conversion of capital assets is: | $ | 0 |
| (9) | I receive unemployment insurance and workers compensation benefits of: | $ | 0 |
| (10) | Benefit in lieu of compensation including but not limited to military pay allowances is: | $ | 0 |
| (11) | Other income (including spousal support) is: Explain:_____ | $ | 0 |
| (12) | **Total Gross Monthly Income** (add columns 4-11) | $ | 0 |

## DEDUCTIONS

| | Deduction Item | Deduction Amount Per Month |
|---|---|---|
| (13) | Income tax based on one withholding allowance for a single taxpayer (not actual number of dependents): | $ 0 |
| (14) | Social Security and Medicare taxes withheld from wages or salary: | $ 0 |
| (15) | Contributions to an IRS qualified retirement plan not exceeding 10% of gross income: | $ 0 |
| (16) | Unreimbursed employee business expenses (Attach IRS form 2106): | $ 0 |
| (17) | Payments made on other support orders OTHER THAN FOR CHILDREN IN THIS PROCEEDING (Attach court order and evidence of payments.): | $ 0 |
| (18) | Payments made for spousal support: | $ 0 |
| (19) | **Total Monthly Deductions** (add columns 13-18) | $ 0 |

| (20) | — | = $ 0 |
|---|---|---|
| | Total Gross Monthly Income | Total Monthly Deductions | Total Net Monthly Income |

*(Subtract the value of your total monthly deductions from your total gross monthly income)*

FORM UJS-023
Rev. 04/2024

(21) My total gross income before deductions for the previous year was:

$_____ 0 _____

(22) My total gross income before deductions for two years ago was:

$_____ 0 _____

(23) Including myself, I have the following number of dependents: _____ 2 _____

(24) Do you have health insurance available for dependents through your employer? *(check one)*   Yes ☐    No ☒

(25) If you provide health or dental insurance for your child(ren), please complete the following:

a) Name of the health and/or dental insurance

Company:_____

b) Total monthly cost for the employee only: $_____

c) Total monthly cost for the employee and child(ren):

$_____

d) Persons covered under the insurance policy:

_____

_____

(26) Do you incur childcare costs as a result of employment, job search, training, or education?    *(check one)*

Yes ☐     No ☒

If so, please complete the following:

a) Name and address of childcare provider:    _____

_____

_____

FORM UJS-023
Rev. 04/2024

b) Name(s) of child(ren) whom childcare is provided:

_____

_____

c) Hours per week that childcare is provided: _____

d) Childcare cost is: $_____ per month; $_____ per week; $_____ per hour

(27) Total amount of childcare cost for the past six months: $ _____

(28) Do you receive any assistance for childcare? **(check one)** Yes ☐   No ☒

a) If yes, how much do you receive per month? $_____

(29) Do you claim the Federal Child Care Tax Credit? **(check one)**  Yes ☐   No ☒

(30) Amount of Social Security or Veteran's Benefits provided to a child(ren) of the parties due to your retirement, disability or other eligibility:

$_____ _O_ _____

a) Which parent receives payment for the child: _____

ASSETS

| | Asset | Value |
|---|---|---|
| (31) | Cash on hand/in the bank | $ – 15.57 |
| (32) | Accounts and Notes Receivable (IOU's and other money payable to me) | $ O |
| (33) | investments (stocks, bonds, savings bond, CD's, money market, etc.) | $ O |
| (34) | Retirement Account balance | $ O |
| (35) | Real Estate (house, land, tribal lease land, rental property, etc.) | $ O |
| (36) | Automobile(s) (include value, make, model, and year) 2007 Ford Focus 2016 Ford F150 (if multiple vehicles, add the value of all vehicles to get total) | $ 28,500 |

FORM UJS-023
Rev. 04/2024

| (37) | Recreational Vehicles (*boats, campers, ATV's, etc.*) | $ | O |
|------|----|----|----|
| (38) | Household Goods (*furniture, appliances, TV, etc.*) | $ | O |
| (39) | Sporting Equipment | $ | O |
| (40) | Jewelry | $ | O |
| (41) | Tools / Shop Equipment | $ | O |
| (42) | Value of Business | $ | O |
| (43) | Any other assets (*anything else I could sell or borrow money on*) | $ | O |
| (44) | **Total Value of Assets** (*add value of columns 31-43*) | $ | O |

**LIABILITIES** (*money that you owe*)

(45) Debts (*vehicle, mortgage, student, or personal loans, credit cards, medical bills, etc.*)

| | Name of Debt (who you owe to) | Outstanding balance | Monthly payment |
|---|---|---|---|
| a) | vehicle  BHFCU | $ 33,000 | $ 614 |
| b) | HELOC  BHFCU | $ 71,000 | $ 700 |
| c) | Mortgage  Mr. Cooper | $ 234,000 | $ 1850 |
| d) | CC BHFCU | $ 5000 | $ 120 |
| e) | CC  Best Buy | $ 3500 | $ 50 |
| f) | CC  Scheels | $ 980 | $ 50 |
| g) | CC  Green sky | $ 11,000 | $ 250 |
| h) | | $ | $ |
| i) | **TOTAL DEBTS** | 357,500 (*combined total of outstanding balance*) | 3634 (*combined total of monthly payments*) |

(46) Total of regular monthly expenses (*housing, utilities, food, insurance, etc.*):

$ 1635

FORM UJS-023
Rev. 04/2024

**(47) TOTAL MONTHLY LIABILITIES: $** 5,269

*(Add your total monthly payments with your total of monthly expenses)*

**ANTICIPATED INCOME** *(money or property you are expecting)*

(48) Total monies or income from sale of house or land, gifts, inheritance, allotments,

trust funds, lease money, etc. $_____ O _____

(49) When is the money/income expected? _____ O _____

Dated this 26 day of November , 20 24 .

Plaintiff/Defendant *(circle one)* Signature

Daniel Waigaren

**Plaintiff/Defendant** *(circle one)* printed Name

2315 E Philadelphia

Address

Rapid City SD 57703

City/State/Zip

$ 605 545 3987

Phone Number

Sworn/affirmed before me this 26 day
of November , 2024 .

Notary Public/Clerk/Clerk of Court

My Commission Expires:

FILED
Pennington County, SD
IN CIRCUIT COURT

NOV 26 2024

Amber Watkins, Clerk of Courts
By_____ Deputy

FORM UJS-023
Rev. 04/2024

**IN THE STATE OF SOUTH DAKOTA**
**COUNTY OF PENNINGTON**

**IN CIVIL COURT**
**7TH JUDICIAL CIRCUIT**

| | |
|---|---|
| CHYENNE WAISANEN,<br>DANIEL WAISANEN<br>     Plaintiff.<br><br>V.<br><br>CREDIT COLLECTION BUREAU<br>     Defendant. | Case no.:   SVCW 24·COV747<br><br>Affidavit of Truth |

## Affidavit of Truth

We, CHYENNE and  DANIEL WAISANEN, of 2315 E Philadelphia St Rapid City South Dakota 57703, being duly sworn, do hereby make this Affidavit of Truth based upon my personal knowledge, belief, and understanding, and in accordance with the laws of the State of South Dakota. This affidavit is submitted to clarify the facts, irregularities, and procedural misconduct I have encountered in relation to the judgment placed against me, subsequent seizure of personal property, and actions taken by the involved agencies.

### Timeline

### Procedural Irregularities in Judgment and Execution

1. The judgment for wage garnishment lacked transparency, and the agency pursued a second execution after a "lost execution," compounding financial strain.
2. The writ of execution for the seizure was issued without specificity regarding the property to be seized, violating enforcement norms.

### Fraudulent Documentation

3. The assignments of debt were signed electronically on the same day, regardless of the dates of service or acquisition of the debt.
4. The electronic signatures lack essential metadata (e.g., timestamps, IP addresses) to verify authenticity.
5. The signer for the hospital is untraceable, and email communications to her are undeliverable, raising doubts about the validity of the assignments.

### Improper Disclosure of Personal Data

1

6. The court provided sensitive personal information without verifying the requestor's identity, breaching confidentiality protocols.

## Misconduct During Seizure

7. The sheriff deputies did not allow us to retrieve essential items from the vehicle's front seat before its seizure.

8. The deputies were hesitant to allow access to the front seat to retrieve wallets, identification, and keys, imposing unnecessary restrictions.

9. The Plaintiff was terrified and unable to open the vehicle's front door to retrieve essential items, such as their wallet, keys, or other necessities, out of a well-founded concern that any action might result in detention or further escalation by the deputies present.

## Intimidation and Unprofessional Conduct

10. Deputies openly admitted to following and surveilling us before executing the seizure, including blocking the driveway with a personal unmarked vehicle.

11. Their statements that "there's nothing you can do" dismissed our rights and responsibilities as a citizen, employing both force and coercion to assert dominance over the situation. Civil Sheriff's further pressured us by stating that "if we did not hand over the keys to facilitate the seizure, it would compromise the sale value of the vehicle", intensifying the coercive tactics used against us.

12. When we did not provide the keys to the sheriff, they proceeded to load the vehicle onto the tow truck while it was locked and in park, potentially causing damage to the vehicle in the process.

## Repeated Denial of Motions Without Explanation

13. The court denied multiple motions without providing reasoning, leaving us with no recourse except to file this lawsuit.

## Expanded Timeline for the Complaint

June 2024

14. Judgment issued for wage garnishment.

15. Bank account closed due to financial strain, but the agency failed to adapt collection methods in good faith.

2

## Subsequent Executions

16. Execution for wage garnishment reported as lost or stolen.
17. New execution filed for seizure, lacking any description of the targeted property.

October 28, 2024

18. Sheriff visits our property and is informed that no assets of the debt's value are available.

October 30, 2024

19. Three deputies arrive to seize our vehicle:
   - One deputy uses a personal, unmarked vehicle to block the driveway.
   - The vehicle is taken while locked and in park, with no opportunity to retrieve personal items from the front seat.

## Aftermath

20. Attempts to retrieve personal belongings are thwarted by the sheriff's office.
21. Additional motions to the court are denied without explanation.

## Legal and Emotional Impact

22. This sequence of events underscores a troubling pattern of procedural misconduct, exploitation of our lack of legal education, and actions that caused significant emotional distress. This case now reflects:
   - Fraudulent Practices: Collection agency and court documents display signs of fabrication, inconsistent data, and lack of verification.
   - Abuse of Power: The sheriff's office engaged in intimidation, surveillance, and misuse of authority.
   - Denial of Due Process: Both the courts and enforcement agencies failed to safeguard our legal rights.
   - Emotional and Financial Harm: The compounded stress, financial strain, and emotional toll justify seeking a significant award for damages.

I affirm under the penalties of perjury that the above is true and correct to the best of my knowledge.

Date:

3

CHYENNE WAISANEN
2315 E Philadelphia St
Rapid City SD 57703
N/A

DANIEL WAISANEN
2315 E Philadelphia St
Rapid City SD 57703
N/A

Subscribed and sworn to before me this 26 day of _____ , 2024

Notary Public Signature: _____ Notary Seal

My Commission Expires: _____



FILED
Pennington County, SD
IN CIRCUIT COURT

NOV 26 2024

Amber Watkins, Clerk of Courts
By_____Deputy

4

**IN THE STATE OF SOUTH DAKOTA**
**COUNTY OF PENNINGTON**

**IN CIVIL COURT**
**7TH JUDICIAL CIRCUIT**

| | |
|---|---|
| Chyenne Waisanen,<br>Daniel Waisanen<br><span>      Plaintiff.</span> | Case no.:  SICIVAN·OOI747 |
| V. | Affidavit of Financial Hardship |
| Credit Collection Bureau<br><span>      Defendant.</span> | |

AFFIDAVIT OF FINANCIAL HARDSHIP

We, CHYENNE and DANIEL WAISANEN, declare as follows:

1. I am the [Plaintiff/Defendant] in this matter and submit this affidavit to request a waiver or reduction of the bond requirement for the Temporary Restraining Order.

2. The seized truck was my sole means of income as it was necessary for operating my renovation business, including hauling tools and materials.

3. My current financial situation prevents me from affording the required bond. I have no significant savings, and my monthly income barely covers basic living expenses.

4. Requiring a bond would create undue hardship and further jeopardize my ability to sustain my business and livelihood.

I affirm under penalty of perjury that the foregoing is true and correct.

DATED: NOVEMBER 25, 2024

CHYENNE WAISANEN
2315 E Philadelphia St
Rapid City SD 57703
N/A

DANIEL WAISANEN
2315 E Philadelphia St
Rapid City SD 57703
N/A

FILED
Pennington County, SD
IN CIRCUIT COURT

NOV 26 2024

Amber Watkins, Clerk of Courts
By_____Deputy

NOTARY ACKNOWLEDGMENT

Subscribed and sworn to before me on this _26_ of _November 2024_, by _Hanna Beckstrom_

NOTARY PUBLIC SIGNATURE: _Hanna Be_____ My Commission Expires:

STATE OF SOUTH DAKOTA

COUNTY OF Pennington

IN CIRCUIT COURT

7th JUDICIAL CIRCUIT

| | |
|---|---|
| Chyenne Waisanen<br>Daniel Waisanen<br>       Plaintiff<br>vs<br>Credit Collection Bureau<br>       Defendant | FILE NO: 51CIV84.007147<br><br>**MOTION TO WAIVE FILING &<br>SERVICE OF PROCESS FEE** |

Comes now the Plaintiff/Defendant (*circle one*) named above, and makes this Motion to the Court to waive the following fees for the following reasons (*check one*):

☒ I am the Plaintiff named above and make this Motion pursuant to SDCL 16-2-29.2 and 16-2-29.3 for the purposes of requesting a waiver of the filing fee and service of process fee for the Summons & Complaint.

☐ I am the Defendant named above and make this Motion pursuant to SDCL 16-2-29.2 and 16-2-29.3 for the purposes of requesting a waiver of the filing fee for the Answer/Response to the Summons & Complaint.

I do solemnly swear that I am unable to pay the above-specified fee(s) for the legal proceedings which I am about to commence; and that I verily believe I am justly entitled to the relief sought by such legal proceedings. My Financial Affidavit, which sets forth my entire financial situation, (Form UJS-023) is filed herein and incorporated herein by reference.

WHEREFORE, based upon the foregoing statements and allegations, I respectfully request that the Court enter its Order to waive payment of the above-specified fee(s) in this matter, pursuant to SDCL 16-2-29.2. If this Request is denied, I understand that I must pay the above-specified fee(s) to proceed with the case. Furthermore, if I am the Plaintiff, I understand that if the filing fee is not paid within 30 days, my case will be dismissed.

Dated this 26 day of November, 20 24.

Sworn/Affirmed before me this
26 day of November, 20 24

_Dama Selchert_
Notary Public/Clerk of Court

My commission expires:

(SEAL)

Signature of Plaintiff/Defendant (*circle one*)
(Sign only in front of a Notary or Clerk of Court

Name (Print): Daniel Waisanen
Address: 2315 E Philadelphia
City/State/Zip: Rapid City SD 57103
Phone: (605) 545 3987

FILED
Pennington County, SD
IN CIRCUIT COURT
NOV 26 2024
Amber Watkins, Clerk of Courts
By _____ Deputy

Page 1 of 1

FORM UJS-022
Rev. 08/2022

STATE OF SOUTH DAKOTA )                    IN CIRCUIT COURT
                      ) :SS      7 th
COUNTY OF Pennington  )          _____ JUDICIAL CIRCUIT

| | |
|---|---|
| Chyenne Waisanen<br>Daniel Waisanen<br>Plaintiff<br><br>v.<br><br>Credit Collection Bureau<br>Defendant | Case No.: S1C1V24-001747<br><br>**FINANCIAL AFFIDAVIT**<br><br>☒ PLAINTIFF    ☐ DEFENDANT |

I, Chyenne Waisanen hereby swear under oath and under
(Name of party filling out this Affidavit)

penalty of law that the following is true.

## CONTACT INORMATION

(1) My mailing address is:

2315 E Philadelphia St

Rapid City SD 57703

(2) My telephone number is:
605. 608. 2500

## EMPLOYMENT

(3) I am **(check one)** ☐ Employed   ☐ Unemployed   ☒ Self-Employed

## MONTHLY INCOME

| | Monthly Income Source | Per Month Amount |
|---|---|---|
| (4) | (If employed) My gross monthly pay is: | $    0 |
| (5) | (If self-employed) My monthly gain/profit from my business/profession is: | $    0 |
| (6) | My pension, retirement, disability, veterans, social security, or insurance payments received is: | $    0 |

FORM UJS-023
Rev. 04/2024

| (7) | My interest, dividends, rentals, royalties, or other gains is: | $ | 0 |
| (8) | Gain from sale, trade or conversion of capital assets is: | $ | 0 |
| (9) | I receive unemployment insurance and workers compensation benefits of: | $ | 0 |
| (10) | Benefit in lieu of compensation including but not limited to military pay allowances is: | $ | 0 |
| (11) | Other income (including spousal support) is: Explain:_____ _____ | $ | 0 |
| (12) | **Total Gross Monthly Income** (add columns 4-11) ➡ | $ | 0 |

## DEDUCTIONS

| | Deduction Item | Deduction Amount Per Month |
|---|---|---|
| (13) | Income tax based on one withholding allowance for a single taxpayer (not actual number of dependents): | $ 0 |
| (14) | Social Security and Medicare taxes withheld from wages or salary: | $ 0 |
| (15) | Contributions to an IRS qualified retirement plan not exceeding 10% of gross income: | $ 0 |
| (16) | Unreimbursed employee business expenses (Attach IRS form 2106): | $ 0 |
| (17) | Payments made on other support orders OTHER THAN FOR CHILDREN IN THIS PROCEEDING (Attach court order and evidence of payments.): | $ 0 |
| (18) | Payments made for spousal support: | $ 0 |
| (19) | **Total Monthly Deductions** (add columns 13-18) ➡ | $ 0 |

| (20) | — | = | $ 0 |
|---|---|---|---|
| | Total Gross Monthly Income | Total Monthly Deductions | Total Net Monthly Income |

(Subtract the value of your total monthly deductions from your total gross monthly income)

FORM UJS-023
Rev. 04/2024

(21) My total gross income before deductions for the previous year was:

$_____Ø_____

(22) My total gross income before deductions for two years ago was:

$_____Ø_____

(23) Including myself, I have the following number of dependents: ____2____

(24) Do you have health insurance available for dependents through your
employer? *(check one)*  Yes ☐    No ☒

(25) If you provide health or dental insurance for your child(ren), please complete
the following:

a) Name of the health and/or dental insurance

Company:_____

b) Total monthly cost for the employee only: $_____

c) Total monthly cost for the employee and child(ren):

$_____

d) Persons covered under the insurance policy:

_____

_____

(26) Do you incur childcare costs as a result of employment, job search, training, or
education?    *(check one)*

Yes ☐    No ☒

If so, please complete the following:

a) Name and address of childcare provider:    _____

_____

_____

FORM UJS-023
Rev. 04/2024

b) Name(s) of child(ren) whom childcare is provided:

_____

_____

c) Hours per week that childcare is provided: _____

d) Childcare cost is: $_____ per month; $_____ per week; $_____ per hour

(27) Total amount of childcare cost for the past six months: $ _____

(28) Do you receive any assistance for childcare? **(check one)** Yes ☐   No ☑

a) If yes, how much do you receive per month? $_____

(29) Do you claim the Federal Child Care Tax Credit? **(check one)**  Yes ☐   No ☑

(30) Amount of Social Security or Veteran's Benefits provided to a child(ren) of the parties due to your retirement, disability or other eligibility:

$_____ Ø _____

a) Which parent receives payment for the child: _____

## ASSETS

| | Asset | Value |
|---|---|---|
| (31) | Cash on hand/in the bank | $ ~15.57 |
| (32) | Accounts and Notes Receivable (IOU's and other money payable to me) | $ Ø |
| (33) | Investments (stocks, bonds, savings bond, CD's, money market, etc.) | $ Ø |
| (34) | Retirement Account balance | $ Ø |
| (35) | Real Estate (house, land, tribal lease land, rental property, etc.) | $ Ø |
| (36) | Automobile(s) (include value, make, model, and year) 07 Ford Focus, 2016 F150 _____ (if multiple vehicles, add the value of all vehicles to get total) | $ 28,500 |

FORM UJS-023
Rev. 04/2024

| | | | |
|---|---|---|---|
| (37) | Recreational Vehicles (*boats, campers, ATV's, etc.*) | $ | 0 |
| (38) | Household Goods (*furniture, appliances, TV, etc.*) | $ | 0 |
| (39) | Sporting Equipment | $ | 0 |
| (40) | Jewelry | $ | 0 |
| (41) | Tools / Shop Equipment | $ | 0 |
| (42) | Value of Business | $ | 0 |
| (43) | Any other assets (*anything else I could sell or borrow money on*) | $ | 0 |
| (44) | **Total Value of Assets** (*add value of columns 31-43*) | $ | 0 |

**LIABILITIES** (*money that you owe*)

(45) Debts (*vehicle, mortgage, student, or personal loans, credit cards, medical bills, etc.*)

| | Name of Debt (who you owe to) | Outstanding balance | Monthly payment |
|---|---|---|---|
| a) | Vehicle - BHFCu | $ 33,000 | $ 614 |
| b) | Heloc - BHFCu | $ 71,000 | $ 700 |
| c) | Mortgage - Mi Cooper | $ 234,000 | $ 1850 |
| d) | CC - BHFCu | $ 5000 | $ 120 |
| e) | Best Buy - CC | $ 3500 | $ 50 |
| f) | CC - Skheels | $ 980 | $ 50 |
| g) | CC - Greensky | $ 11,000 | $ 250 |
| h) | | $ | $ |
| i) | **TOTAL DEBTS** | 357500 (combined total of outstanding balance) | 3634 (combined total of monthly payments) |

(46) Total of regular monthly expenses (*housing, utilities, food, insurance, etc.*):

$ 1635

FORM UJS-023
Rev. 04/2024

**(47) TOTAL MONTHLY LIABILITIES: $** _5,269_

*(Add your total monthly payments with your total of monthly expenses)*

**ANTICIPATED INCOME** *(money or property you are expecting)*

(48) Total monies or income from sale of house or land, gifts, inheritance, allotments,

trust funds, lease money, etc. $_____

(49) When is the money/income expected? _____

Dated this _26_ day of _November_ , 20_24_.

_____

**Plaintiff/Defendant** *(circle one)* Signature

_Chyenne Waisanen_

**Plaintiff/Defendant** *(circle one)* printed
Name

_2315 E Philadelphia St_
Address

_Rapid City SD 57703_
City/State/Zip

_605.608.2500_
Phone Number

Sworn/affirmed before me this _26_ day

of _November_ , 20_24_.

_____

Notary/Deputy Clerk/Clerk of Court

My Commission Expires: _____

FILED
Pennington County, SD
IN CIRCUIT COURT

NOV 26 2024

Page 6 of Amber Watkins, Clerk of Courts
By_____ Deputy

FORM UJS-023
Rev. 04/2024

STATE OF SOUTH DAKOTA                          IN CIRCUIT COURT

COUNTY OF _Pennington_                         _7th_ JUDICIAL CIRCUIT

| | |
|---|---|
| Chyenne Waisanen<br>Daniel Waisanen<br>_____ Plaintiff<br>vs<br>Credit Collection Bureau<br>_____ Defendant | FILE NO: _51C1V24-001747_<br><br>**MOTION TO WAIVE FILING &<br>SERVICE OF PROCESS FEE** |

Comes now the (Plaintiff)/Defendant (*circle one*) named above, and makes this Motion to the Court to waive the following fees for the following reasons (*check one*):

[X] I am the Plaintiff named above and make this Motion pursuant to SDCL 16-2-29.2 and 16-2-29.3 for the purposes of requesting a waiver of the filing fee and service of process fee for the Summons & Complaint.

[ ] I am the Defendant named above and make this Motion pursuant to SDCL 16-2-29.2 and 16-2-29.3 for the purposes of requesting a waiver of the filing fee for the Answer/Response to the Summons & Complaint.

I do solemnly swear that I am unable to pay the above-specified fee(s) for the legal proceedings which I am about to commence; and that I verily believe I am justly entitled to the relief sought by such legal proceedings. My Financial Affidavit, which sets forth my entire financial situation, (Form UJS-023) is filed herein and incorporated herein by reference.

WHEREFORE, based upon the foregoing statements and allegations, I respectfully request that the Court enter its Order to waive payment of the above-specified fee(s) in this matter, pursuant to SDCL 16-2-29.2. If this Request is denied, I understand that I must pay the above-specified fee(s) to proceed with the case. Furthermore, if I am the Plaintiff, I understand that if the filing fee is not paid within 30 days, my case will be dismissed.

Dated this _26_ day of _November_ , 20_24_.

Sworn/Affirmed before me this

_26_ day of _November_ , 20_24_

_Deana Sechrist_
Notary Public/Clerk of Court

_____

~~my commission expires:~~

[SEAL: UNIFIED JUDICIAL SYSTEM / STATE OF SOUTH DAKOTA]

Signature of (Plaintiff)/Defendant (*circle one*)
(Sign only in front of a Notary or Clerk of Court

Name (Print): _Chyenne Waisanen_
Address: _2315 E Philadelphia St_
City/State/Zip: _Rapid City SD 57703_
Phone: (_605_) _608 2500_

FILED
Pennington County, SD
IN CIRCUIT COURT
Page 1 of 1

NOV 26 2024

Amber Watkins, Clerk of Courts
By _____ Deputy

FORM UJS-022
Rev. 08/2022

**IN THE STATE OF SOUTH DAKOTA**
**COUNTY OF PENNINGTON**

**IN CIVIL COURT**
**7TH JUDICIAL CIRCUIT**

| | |
|---|---|
| Chyenne Waisanen,<br>Daniel Waisanen<br>        Plaintiff. | Case no.:   S\CvV&4·CO\747 |
| V. | Affidavit of Financial Hardship |
| Credit Collection Bureau<br>        Defendant. | |

## AFFIDAVIT OF FINANCIAL HARDSHIP

We, CHYENNE and DANIEL WAISANEN, declare as follows:

1. I am the [Plaintiff/Defendant] in this matter and submit this affidavit to request a waiver or reduction of the bond requirement for the Temporary Restraining Order.

2. The seized truck was my sole means of income as it was necessary for operating my renovation business, including hauling tools and materials.

3. My current financial situation prevents me from affording the required bond. I have no significant savings, and my monthly income barely covers basic living expenses.

4. Requiring a bond would create undue hardship and further jeopardize my ability to sustain my business and livelihood.

I affirm under penalty of perjury that the foregoing is true and correct.

DATED: NOVEMBER 25, 2024

CHYENNE WAISANEN
2315 E Philadelphia St
Rapid City SD 57703
N/A

DANIEL WAISANEN
2315 E Philadelphia St
Rapid City SD 57703
N/A

FILED
Pennington County, SD
IN CIRCUIT COURT

NOV 26 2024

Amber Watkins, Clerk of Courts
By_____Deputy

NOTARY ACKNOWLEDGMENT

Subscribed and sworn to before me on this _26_ of _November 2024_, by _Hanna Beckstrom_

NOTARY PUBLIC SIGNATURE: _Hanna Beck_____ My Commission Expires:

**IN THE STATE OF SOUTH DAKOTA**                           **IN CIVIL COURT**
**COUNTY OF PENNINGTON**                                    **7TH JUDICIAL CIRCUIT**

| | |
|---|---|
| Chyenne Waisanen,<br>Daniel Waisanen<br>    Plaintiff. | Case no.: 51C1U24 - 001747 |
| V.<br><br>Credit Collection Bureau<br>    Defendant. | SUMMONS FOR UNLAWFUL AND<br>FRAUDULENTDEBT COLLECTION<br>PRACTICE |

**SUMMONS FOR UNLAWFUL AND FRAUDULENTDEBT COLLECTION PRACTICE**

TO: CREDIT COLLECTION BUREAU
    410 Sheridan Lake Rd
    Rapid City SD 57702

A lawsuit has been filed against you. Within 21 days after service of this summons on you (not counting the day you received it) or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) C you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

                    CHYENNE WAISANEN
                    DANIEL WAISANEN
                    2315 E Philadelphia St
                    Rapid City, SD 57703

If you fail to respond, judgment by default will be entered against you for the relief demanded in the
complaint. You also must file your answer or motion with the court.

Dated:

_____              _____
CHYENNE WAISANEN                       DANIEL WAISANEN
2315 E Philadelphia St                 2315 E Philadelphia St
Rapid City SD 57703                    Rapid City SD 57703
N/A                                    N/A

FILED
Pennington County, SD
IN CIRCUIT COURT

DEC - 4 2024

Amber Watkins, Clerk of Courts
By_____Deputy

1

IN THE STATE OF SOUTH DAKOTA
COUNTY OF PENNINGTON

IN CIVIL COURT
7TH JUDICIAL CIRCUIT

| | |
|---|---|
| CHYENNE WAISANEN,<br>DANIEL WAISANEN<br>    Plaintiff.<br><br>V.<br><br>CREDIT COLLECTION BUREAU<br>    Defendant. | Case no.:  S\C\V84-OO\N7<br><br>Complaint for Unlawful and Fraudulent Debt<br>Collection Practices |

## PLAINTIFF'S COMPLAINT FOR UNLAWFUL AND FRAUDULENT DEBT COLLECTION PRACTICES

COMES NOW, person CHYENNE MARIE WAISANEN and DANIEL GARY WAISANEN, presented by man Chyenne Marie Waisanen and Daniel Gary Waisanen, allege and state as follows: (Please note that spelling of each name is important and will always be as above throughout this complaint for clarity in the court.)

### I. Introduction

1. This is an action for damages and injunctive relief to redress fraudulent, unlawful, and unconstitutional actions by the defendant collection agency and complicit acts of enforcement by the Pennington County Sheriff's Office. Plaintiffs were subjected to coercive collection tactics, unlawful seizure of essential property, and systemic violations of their rights, causing emotional, financial, and professional harm. Plaintiffs demand accountability and seek justice for the gross misconduct that has disrupted their lives.

2. This Complaint incorporated a prior small claims judgment entered on June 20, 2024 in Small Claims Court under case number 51SMC24-747.

### II. JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331 for federal claims and 28 U.S.C. § 1367 for supplemental state law claims, as well as 8 U.S.C. § 1101(a)(23) regarding naturalization and nationality. Venue is proper under 28 U.S.C. § 1391(b) as the events occurred in Pennington County. Through naturalization powers defined in 8 U.S.C. § 1101(a)(23), Chyenne Marie Waisanen and Daniel Gary Waisanen confer the nationality of "STATE OF SOUTH DAKOTA" on themselves, satisfying jurisdictional requirements. They will also make a general appearance and represent themselves, as they are incapable of independently speaking or writing.

1

Defendant Credit Collection Bureau, operating within Pennington County South Dakota, is subject to this Court's jurisdiction. This case arises under the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.), 42 U.S.C. § 1983 for rights violations, and South Dakota laws, including SDCL § 15-2-14 and SDCL § 21-3-2, addressing wrongful acts and damages. Plaintiffs seek relief for the unlawful seizure of property, fraudulent debt collection practices, and violations of their constitutional rights.

### III. PARTIES

4. Plaintiff is a person(s) residing in Pennington County, South Dakota.

5. Plaintiff resided in Pennington County, South Dakota, at all times relevant and all actions related to Plaintiff's stated herein took place in and around Pennington County, South Dakota.

6. Defendant Credit Collection Bureau is listed by the NMLS (Nationwide multistate licensing system) as an "Assumed Name" Business Type. Defendant's Principal Place of Business Address is 410 Sheridan Lake Rd Rapid City SD 57702.

7. Defendant acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

8. Defendant's agents, employees, officers, members, directors, and representatives were working within the course and scope of their employment when taking the actions stated herein.

### IV. GENERAL FACTUAL ALLEGATIONS

9. The Defendant presented invalid assignments of debt that failed to demonstrate ownership of the alleged debt.

10. These assignments were attached solely to itemized billing statements, with no supporting original contracts, consent form, or other foundational documentation in violation of SDCL § 57A-9-203(b)(3).

11. The electronic signatures on these assignments lack essential metadata such as timestamps, IP addresses, or digital certificates, raising significant doubts about their authenticity. This is contrary to evidentiary standards under SDCL § 15-6-56(e) and fails to meet requirements for electronic evidence authentication under federal guidelines .

12. Account numbers on the assignments and billing statements do not match those on the Plaintiffs' original consent forms.

13. Despite repeated requests from the plaintiffs' for proof of ownership, the defendant ignored or refused to provide such evidence showing a blatant disregard for verification requirements under the Uniform Commercial Code (U.C.C) § 3-309(b)

### V. Unlawful and Oppressive seizure of Property

2

14. On October 30th 2024 the Pennington County Civil Department orchestrated the seizure of the Plaintiff's vehicle, described as follows:

> 2016
> Ford
> F150 Supercrew Lariat Sport Special Edition
> Red with hockey stick stripe
> valued at $27,000, to satisfy an alleged $6,116.04 debt.

15. On October 30th 2024 Pennington County Civil deputies engaged in unwarranted and invasive surveillance of the plaintiffs, following their vehicle through town, then waiting outside a residence for them to exit the vehicle and enter a home. These actions were excessive, coercive, and an abuse of the authority granted under state law.

16. One deputy used an unmarked, personal vehicle to block the plaintiffs' vehicle in the driveway. This act of physical restriction further demonstrates the intentional and inappropriate measures employed to intimidate and corner the plaintiffs.

17. Deputies repeatedly told the Plaintiffs that "there is nothing you can do except pay the judgment," a false statement that disregards the plaintiffs' procedural rights under state and federal law. These statements, compounded with their actions, deprived the Plaintiffs' of their ability to make informed decisions about their legal recourse. This was in violation of FDCPA (15 U.S.C § 1692e).

18. The deputies forcibly seized the vehicle by having it pulled onto a tow truck while the vehicle was still locked and in park. This manner of seizure caused physical damage to the vehicle violating SDCL § 57A-9-609(b) which requires peaceful repossession and prohibits actions likely to cause a breach of peace and emotional harm to the plaintiffs.

19. Plaintiff's vehicle, the only asset of substantial value, was seized, rendering Plaintiff's renovation business non-operational, at it was the only vehicle capable of hauling necessary tool and materials

## VI: Emotional and Financial Harm

20. The Plaintiffs experienced severe emotional distress, including anxiety, fear, and physical symptoms such as hair loss, sleepless nights, and paranoia caused by the wrongful and oppressive seizure of their property.

21. The Plaintiffs' quality of life was diminished, and their financial stability was jeopardized by the Defendant's fraudulent and malicious actions, violating their rights under SDCL § 21-29-2 and 15 U.S.C § 1692d.

## VII: Legal Claims

22. Count 1: Fraudulent Practices

3

The Defendant knowingly submitted fraudulent and incomplete documentation to claim ownership of the alleged debt, violating SDCL § 57A-9-203(b), U.C.C § 3-309, both statutory and ethical standards.

23. Count 2: Fraudulent Misrepresentation and breach of contract:

The assignment of debt was flawed, as there were no original contracts or proper documentation to validate the debt. Defendant fraudulently misrepresented the legitimacy of the debt assignment, violating SDCL § 57A-9-203 and improperly processed the judgment

24. Count 3: Violation of the Fair Debt Collection Practices act (FDCPA)

The defendant violated the following provisions of the FDCPA:

    15 U.S.C. § 1692d: Prohibiting harassment and abuse

    15 U.S.C. § 1692e: Prohibiting false or misleading representations.

    15 U.S.C. § 1692f: Prohibiting unfair or unconscionable practices.

25. Count 4: Constitutional Violations

Deputies acting on behalf of the defendant violated the Plaintiffs' Fourth Amendment right against unreasonable seizures and their Fifth Amendment right to due process.

26. Count 5: Emotional Distress

The defendant's fraudulent and oppressive actions caused significant emotional distress, leaving the Plaintiffs in a state of fear, helplessness, and emotional anguish, damage to health and wellbeing.

27. Count 6: Procedural Misconduct and Unconscionable Actions

The Defendant, through the actions of the deputies engaged in coercive and malicious tactics that violated the plaintiffs fundamental rights to due process and fair treatment.

28. Count 7: Peonage and Debt Slavery

The actions and statements of defendant and the deputies, including the assertion that plaintiff could "do nothing but pay," violated the thirteenth amendment prohibiting involuntary servitude and debt slavery.

29. Count 8: Improper Seizure and lack of Due Process

The wrongful seizure of the plaintiff's vehicle was conducted without proper notice, specific identification of the property to be seized, and due process as required under both federal and state law.

30. Count 9: Violation of HIPAA

Defendant's use of Itemized billing statements containing personal medical details without plaintiff's consent was a clear violation of plaintiff's right to privacy under Hipaa, as these documents contained sensitive information unrelated to the debt.

31. Count 10: Failure to comply with court orders and procedures

Defendant failed to adhere to proper court procedures for debt collection. There was a lack of specificity in the writ that failed to identify the property to be seized, leading to a violation of plaintiff's due process rights under South Dakota law. (SDCL § 15-6-62(a)).

32. Count 11: Unlawful Blocking of Property and violation of state property laws

4

The use of an unmarked personal vehicle by the deputies to block plaintiffs driveway and the wrongful seizure of the vehicle without consent violated South Dakota property laws, specifically SDCL § 22-35-6, which prohibits interference with personal property. Additionally, this act contravenes the fourth amendment to the United States Constitution, which protects against unreasonable seizures of property without authorization.

33. Count 12: Unlawful interference with livelihood

By seizing the plaintiffs only means of transportation for the company, the defendant caused irreparable harm to plaintiffs livelihood. As a renovation business owner, the plaintiff's vehicle was crucial to carry out business duties and its seizure rendered the plaintiff unable to generate income.

34. Count 13: Unlawful Detention and withhold of personal property

The refusal of the deputies to allow the plaintiff to retrieve personal property, including identification, wallets, and keys from the vehicle, constituted unlawful detention and interference with plaintiffs property rights. This action violated SDCL § 57A-9-609(b), which requires repossession to occur without breaching the peace. Furthermore, it infringed upon the fourth and fifth amendments by depriving plaintiffs' of property and liberty without due process.

35. Count 14: Violation of the Fair Debt collection practices Act (FDCPA)

Defendant's actions of aggressively pursuing an alleged debt without validating it and using unfair practices in the collection process, such as preventing the plaintiff from negotiating, violated several provisions of the Fair Debt Collection practices Act.

15 U.S.C. § 1692d: Prohibiting harassment and abuse

15 U.S.C. § 1692e: Prohibiting false or misleading representations.

15 U.S.C. § 1692f: Prohibiting unfair or unconscionable practices.

36. Count 15: Unlawful Collection Practices and lack of debt validation

Defendant violated the Fair Credit Reporting Act (FCRA), specifically 15- U.S.C § 1681s-2 §(a)(1) by failing to properly verify the debt before proceeding with collection efforts. Plaintiff was repeatedly denied an opportunity to review proper documentation to validate the debt, a clear violation of their statutory rights under the FDCPA (15 U.S.C § 1692g(b)), which mandates debt validation upon dispute.

37. Count 16: Punitive Damages for Gross Misconduct

Defendant's actions, which included fraudulent documentation, improper seizure of plaintiff's vehicle, and severe emotional distress caused to plaintiffs, warrant an award of punitive damages; these actions constitute gross misconduct and bad faith, violating both state and federal laws. Under South Dakota law, SDCL § 24-1-4 allows for punitive damages in cases of fraud and oppression.

### VIII: Relief Requested

38. Plaintiff has suffered 5,000,000 in damages as a result of defendant's unlawful actions, including:

Financial distress and loss of livelihood due to the wrongful seizure of plaintiff's vehicle

Emotional distress caused by the extreme stress and anxiety associated with defendants fraudulent and unlawful conduct

Violation of privacy rights and damage to reputation caused by the improper disclosure of personal medical information.

### IX: Applicable legal Authorities

39. Fair Debt Collection Practices Act (FDCPA): 15 USC § 1692 et seq.

40. South Dakota Codified Laws (SDCL): Chapter 57A-9-203 (governing secured transactions).

41. U.S. Constitution:

   Fourth Amendment (protection against unreasonable seizures).

   Fifth Amendment (guarantee of due process).

42. Natural Rights Doctrine: Plaintiffs invoke their inherent and god-given right to property, freedom from fraud, and protection against oppression.

### X: Prayer for Relief

WHEREFORE, Plaintiffs respectfully request this court:

43. Award Plaintiff $5,000,000 in compensatory and punitive damages.

44. Issue injunctive relief to halt the sale and return the Plaintiffs vehicle.

45. Declare the defendant's actions fraudulent, oppressive, and unlawful.

46. Award the Plaintiffs all legal costs and any further relief the court deems just and proper.

47. Order Defendant to cease and desist from further unlawful collection efforts.

### XI: Verification

We declare under penalty of perjury that the foregoing is true and correct to the best of our knowledge.

Dated: 11.26.2024

Signed,

CHYENNE WAISANEN
2315 E Philadelphia St
Rapid City SD 57703
N/A

DANIEL WAISANEN
2315 E Philadelphia St
Rapid City SD 57703
N/A

FILED
Pennington County, SD
IN CIRCUIT COURT

NOV 26 2024

Amber Watkins Clerk of Courts
By_____Deputy

6

Case 5:25-cv-05001-RAL    Document 1-2    Filed 01/03/25    Page 29 of 202 PageID #: 36

**57A-9-203. Attachment and enforceability of security interest--Proceeds--Supporting obligations--Formal requisites.**

(a) A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment.

(b) Except as otherwise provided in subsections (c) through (i), a security interest is enforceable against the debtor and third parties with respect to the collateral only if:

(1) Value has been given;

(2) The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and

(3) One of the following conditions is met:

    (A) The debtor has signed a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned;

    (B) The collateral is not a certificated security and is in the possession of the secured party under § 57A-9-313 pursuant to the debtor's security agreement;

    (C) The collateral is a certificated security in registered form and the security certificate has been delivered to the secured party under § 57A-8-301 pursuant to the debtor's security agreement;

    (D) The collateral is controllable accounts, controllable electronic records, controllable payment intangibles, deposit accounts, electronic documents, electronic money, investment property, or letter-of-credit rights, and the secured party has control under § 57A-7-106, 57A-9-104, 57A-9-105.1, 57A-9-106, 57A-9-107, or 57A-9-107.1 pursuant to the debtor's security agreement; or

    (E) The collateral is chattel paper and the secured party has possession and control under § 57A-9-314.1 pursuant to the debtor's security agreement.

(c) Subsection (b) is subject to § 57A-4-210 on the security interest of a collecting bank, § 57A-5-118 on the security interest of a letter-of-credit issuer or nominated person, § 57A-9-110 on a security interest arising under chapter 57A-2 or 57A-2A, and § 57A-9-206 on security interests in investment property.

(d) A person becomes bound as debtor by a security agreement entered into by another person if, by operation of law other than this chapter or by contract:

(1) The security agreement becomes effective to create a security interest in the person's property; or

(2) The person becomes generally obligated for the obligations of the other person, including the obligation secured under the security agreement, and acquires or succeeds to all or substantially all of the assets of the other person.

(e) If a new debtor becomes bound as debtor by a security agreement entered into by another person:

(1) The agreement satisfies subsection (b)(3) with respect to existing or after-acquired property of the new debtor to the extent the property is described in the agreement; and

(2) Another agreement is not necessary to make a security interest in the property enforceable.

(f) The attachment of a security interest in collateral gives the secured party the rights to proceeds provided by § 57A-9-315 and is also attachment of a security interest in a supporting obligation for the collateral.

(g) The attachment of a security interest in a right to payment or performance secured by a security interest or other lien on personal or real property is also attachment of a security interest in the security interest, mortgage, or other lien.

(h) The attachment of a security interest in a securities account is also attachment of a security interest in the security entitlements carried in the securities account.

(i) The attachment of a security interest in a commodity account is also attachment of a security interest in the commodity contracts carried in the commodity account.

**Source:** SL 2000, ch 231; SL 2009, ch 254, § 826; SL 2024, ch 198, § 49.

# § 3-309. ENFORCEMENT OF LOST, DESTROYED, OR STOLEN INSTRUMENT.

(a) A person not in possession of an <u>instrument</u> is entitled to enforce the instrument if:

(1) the person seeking to enforce the instrument

(A) was entitled to enforce it the instrument when loss of possession occurred, or

(B) has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred;

(2) the loss of possession was not the result of a transfer by the person or a lawful seizure; and

(3) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(b) A person seeking enforcement of an <u>instrument</u> under subsection (a) must <u>prove</u> the terms of the instrument and the person's right to enforce the instrument. If that proof is made, Section <u>3-308</u> applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

# 15 U.S. Code § 1692d - Harassment or abuse

U.S. Code    Notes

prev | next

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

**(1)**The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

**(2)**The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

**(3)**The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) [1] of this title.

**(4)**The advertisement for sale of any debt to coerce payment of the debt.

**(5)**Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

**(6)**Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

# 15 U.S. Code § 1692e - False or misleading representations

U.S. Code     Notes

prev | next

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

**(1)**The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

**(2)**The false representation of—

   **(A)**the character, amount, or legal status of any debt; or

   **(B)**any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

**(3)**The false representation or implication that any individual is an attorney or that any communication is from an attorney.

**(4)**The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

**(5)**The threat to take any action that cannot legally be taken or that is not intended to be taken.

**(6)**The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to—

   **(A)**lose any claim or defense to payment of the debt; or

   **(B)**become subject to any practice prohibited by this subchapter.

**(7)**The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

**(8)**Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

**(9)**The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any

court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

**(10)**The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

**(11)**The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

**(12)**The false representation or implication that accounts have been turned over to innocent purchasers for value.

**(13)**The false representation or implication that documents are legal process.

**(14)**The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

**(15)**The false representation or implication that documents are not legal process forms or do not require action by the consumer.

**(16)**The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title.

# 15 U.S. Code § 1692f - Unfair practices

U.S. Code    Notes

prev | next

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

**(1)** The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

**(2)** The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

**(3)** The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

**(4)** Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

**(5)** Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

**(6)** Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

    **(A)** there is no present right to possession of the property claimed as collateral through an enforceable security interest;

    **(B)** there is no present intention to take possession of the property; or

    **(C)** the property is exempt by law from such dispossession or disablement.

**(7)** Communicating with a consumer regarding a debt by post card.

**(8)** Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

**IN THE STATE OF SOUTH DAKOTA**
**COUNTY OF PENNINGTON**

**IN CIVIL COURT**
**7TH JUDICIAL CIRCUIT**

| | |
|---|---|
| Chyenne Waisanen,<br>Daniel Waisanen<br>       Plaintiff. | Case no.:  S\C\V84-00747 |
| V.<br><br>Credit Collection Bureau<br>       Defendant. | Affidavit for Motion for Temporary Restraining Order |

### Affidavit for Motion for Temporary Restraining Order

We, Chyenne and Daniel Waisanen, being duly sworn, depose and state as follows:

### I. Factual Background

    1. On June 20, 2024, a default judgment was entered against us for an alleged debt totaling $6,116.04, including costs and pre-judgment interest.

    2. On October 18, 2024, a writ of execution was issued, resulting in the seizure of our 2016 Ford F150 Supercrew Pickup (VIN: 1FTEW1EG3GFC33149), valued at approximately $27,000, to satisfy the alleged debt.

### II. Fraudulent and Improper Assignment of Debt

    3. The alleged debt originates from medical services, but no signed contract exists between us and the medical provider.

    4. The Defendant's documentation lacks proof of ownership or validity of the assigned debt, violating SDCL § 57A-9-203(b)(3).

    5. The assignment of debt includes only itemized billing statements and lacks original agreements or consent forms.

    6. The digital signature on the assignment lacks authentication metadata (e.g., IP address or timestamp), making its validity questionable under SDCL § 15-6-56(e).

    7. Account numbers on the hospital's original consent forms do not match those on the assignments provided by the Defendant, undermining the assignment's validity.

### III. Irreparable Harm

    8. The seized vehicle is our work truck and critical to our small renovation business.

9. Without the vehicle, we are unable to transport materials, tools, and equipment necessary for completing renovation projects, directly jeopardizing our ability to generate income and sustain our livelihood.

10. The seizure has caused immediate and irreparable harm to our business and personal lives, as it is also essential for daily transportation.

11. The value of the seized vehicle significantly exceeds the amount of the alleged debt, resulting in an unjust windfall for the Defendant and an unnecessary burden on us.

### IV. Legal Basis for Relief

12. Under SDCL § 57A-9-203(b), no valid security agreement exists between us and the Defendant, and they lack the right to enforce any interest in the vehicle.

13. Defendant has failed to provide clear evidence of a valid assignment of the alleged debt, as required under SDCL §§ 57A-3-203(b) and 57A-3-309(b).

14. The sale of the vehicle would cause immediate and irreparable harm to our business and livelihood, warranting equitable relief under SDCL § 21-29-2.

### V. Relief Requested

15. We respectfully request that the Court:

- Issue a temporary restraining order halting the sale of the 2016 Ford F150 Supercrew Pickup;

- Schedule a hearing to determine the continuation of the restraining order as a preliminary injunction; and

- Grant any other relief the Court deems just and equitable.

We affirm under penalty of perjury that the foregoing is true and correct to the best of our knowledge.

CHYENNE WAISANEN
2315 E Philadelphia St
Rapid City SD 57703
N/A

DANIEL WAISANEN
2315 E Philadelphia St
Rapid City SD 57703
NA

*Date: 11.26.2024

Subscribed and sworn to before me this 26 day of Nov , 2024

Notary Public Signature: _____

My Commission Expires: _____

FILED
Pennington County, SD
IN CIRCUIT COURT

NOV 26 2024

Amber Watkins, Clerk of Courts
By_____ Deputy

**SDCL 57A-9-203-** Attachment and enforceability of security interest--Proceeds--Supporting obligations--Formal requisites.

(a) A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment.

(b) Except as otherwise provided in subsections (c) through (i), a security interest is enforceable against the debtor and third parties with respect to the collateral only if:

    (1)    Value has been given;

    (2)    The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and

    (3)    One of the following conditions is met:

        (A)    The debtor has signed a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned;

        (B)    The collateral is not a certificated security and is in the possession of the secured party under § 57A-9-313 pursuant to the debtor's security agreement;

        (C)    The collateral is a certificated security in registered form and the security certificate has been delivered to the secured party under § 57A-8-301 pursuant to the debtor's security agreement;

        (D)    The collateral is controllable accounts, controllable electronic records, controllable payment intangibles, deposit accounts, electronic documents, electronic money, investment property, or letter-of-credit rights, and the secured party has control under § 57A-7-106, 57A-9-104, 57A-9-105.1, 57A-9-106, 57A-9-107, or 57A-9-107.1 pursuant to the debtor's security agreement; or

        (E)    The collateral is chattel paper and the secured party has possession and control under § 57A-9-314.1 pursuant to the debtor's security agreement.

(c) Subsection (b) is subject to § 57A-4-210 on the security interest of a collecting bank, § 57A-5-118 on the security interest of a letter-of-credit issuer or nominated person, § 57A-9-110 on a security interest arising under chapter 57A-2 or 57A-2A, and § 57A-9-206 on security interests in investment property.

(d) A person becomes bound as debtor by a security agreement entered into by another person if, by operation of law other than this chapter or by contract:

    (1)    The security agreement becomes effective to create a security interest in the person's property; or

    (2)    The person becomes generally obligated for the obligations of the other person, including the obligation secured under the security agreement, and acquires or succeeds to all or substantially all of the assets of the other person.

(e) If a new debtor becomes bound as debtor by a security agreement entered into by another person:

    (1)    The agreement satisfies subsection (b)(3) with respect to existing or after-acquired property of the new debtor to the extent the property is described in the agreement; and

Case 5:25-cv-05001-RAL    Document 1-2    Filed 01/03/25    Page 38 of 202 PageID #: 45

## 57A-3-309. Enforcement of lost, destroyed, or stolen instrument.

(a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, § 57A-3-308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

**Source:** SL 1994, ch 367, § 3-309.

Case 5:25-cv-05001-RAL    Document 1-2    Filed 01/03/25    Page 39 of 202    PageID #: 46

## 15-6-56(e). Form of affidavits for summary judgment--Further testimony--Defense required.

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in § 15-6-56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in § 15-6-56, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

**Source:** SD RCP, Rule 56 (e), as adopted by Sup. Ct. Order March 29, 1966, effective July 1, 1966.

Case 5:25-cv-05001-RAL    Document 1-2    Filed 01/03/25    Page 40 of 202 PageID #: 47

**21-29-1. Power to issue writ--Purposes for which used.**
     The writ of mandamus may be issued by the Supreme and circuit courts, to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board, or person.

**Source:** CCivP 1877, § 695; CL 1887, § 5517; RCCivP 1903, § 764; RC 1919, § 3006; SDC 1939 & Supp 1960, § 37.4501.

Case 5:25-cv-05001-RAL    Document 1-2    Filed 01/03/25    Page 41 of 202 PageID #: 48

## 21-29-2. Writ issued when ordinary remedy inadequate--Application and affidavit.

The writ of mandamus must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon affidavit, upon the application of the party beneficially interested.

**Source:** CCivP 1877, § 696; CL 1887, § 5518; RCCivP 1903, § 765; RC 1919, § 3007; SDC 1939 & Supp 1960, § 37.4502.

IN THE STATE OF SOUTH DAKOTA        IN CIVIL COURT
COUNTY OF PENNINGTON        7TH JUDICIAL CIRCUIT

| | |
|---|---|
| CHYENNE WAISANEN,<br>DANIEL WAISANEN<br>    Plaintiff.<br><br>V.<br><br>CREDIT COLLECTION BUREAU<br>    Defendant. | Case no.:  SVCW 24·00747<br><br>Affidavit of Truth |

### Affidavit of Truth

We, CHYENNE and DANIEL WAISANEN, of 2315 E Philadelphia St Rapid City South Dakota 57703, being duly sworn, do hereby make this Affidavit of Truth based upon my personal knowledge, belief, and understanding, and in accordance with the laws of the State of South Dakota. This affidavit is submitted to clarify the facts, irregularities, and procedural misconduct I have encountered in relation to the judgment placed against me, subsequent seizure of personal property, and actions taken by the involved agencies.

### Timeline

### Procedural Irregularities in Judgment and Execution

1. The judgment for wage garnishment lacked transparency, and the agency pursued a second execution after a "lost execution," compounding financial strain.
2. The writ of execution for the seizure was issued without specificity regarding the property to be seized, violating enforcement norms.

### Fraudulent Documentation

3. The assignments of debt were signed electronically on the same day, regardless of the dates of service or acquisition of the debt.
4. The electronic signatures lack essential metadata (e.g., timestamps, IP addresses) to verify authenticity.
5. The signer for the hospital is untraceable, and email communications to her are undeliverable, raising doubts about the validity of the assignments.

### Improper Disclosure of Personal Data

1

6. The court provided sensitive personal information without verifying the requestor's identity, breaching confidentiality protocols.

## Misconduct During Seizure

7. The sheriff deputies did not allow us to retrieve essential items from the vehicle's front seat before its seizure.

8. The deputies were hesitant to allow access to the front seat to retrieve wallets, identification, and keys, imposing unnecessary restrictions.

9. The Plaintiff was terrified and unable to open the vehicle's front door to retrieve essential items, such as their wallet, keys, or other necessities, out of a well-founded concern that any action might result in detention or further escalation by the deputies present.

## Intimidation and Unprofessional Conduct

10. Deputies openly admitted to following and surveilling us before executing the seizure, including blocking the driveway with a personal unmarked vehicle.

11. Their statements that "there's nothing you can do" dismissed our rights and responsibilities as a citizen, employing both force and coercion to assert dominance over the situation. Civil Sheriff's further pressured us by stating that "if we did not hand over the keys to facilitate the seizure, it would compromise the sale value of the vehicle", intensifying the coercive tactics used against us.

12. When we did not provide the keys to the sheriff, they proceeded to load the vehicle onto the tow truck while it was locked and in park, potentially causing damage to the vehicle in the process.

## Repeated Denial of Motions Without Explanation

13. The court denied multiple motions without providing reasoning, leaving us with no recourse except to file this lawsuit.

## Expanded Timeline for the Complaint

June 2024

14. Judgment issued for wage garnishment.

15. Bank account closed due to financial strain, but the agency failed to adapt collection methods in good faith.

2

## Subsequent Executions

16. Execution for wage garnishment reported as lost or stolen.
17. New execution filed for seizure, lacking any description of the targeted property.

October 28, 2024

18. Sheriff visits our property and is informed that no assets of the debt's value are available.

October 30, 2024

19. Three deputies arrive to seize our vehicle:
    - One deputy uses a personal, unmarked vehicle to block the driveway.
    - The vehicle is taken while locked and in park, with no opportunity to retrieve personal items from the front seat.

## Aftermath

20. Attempts to retrieve personal belongings are thwarted by the sheriff's office.
21. Additional motions to the court are denied without explanation.

## Legal and Emotional Impact

22. This sequence of events underscores a troubling pattern of procedural misconduct, exploitation of our lack of legal education, and actions that caused significant emotional distress. This case now reflects:

    - Fraudulent Practices: Collection agency and court documents display signs of fabrication, inconsistent data, and lack of verification.
    - Abuse of Power: The sheriff's office engaged in intimidation, surveillance, and misuse of authority.
    - Denial of Due Process: Both the courts and enforcement agencies failed to safeguard our legal rights.
    - Emotional and Financial Harm: The compounded stress, financial strain, and emotional toll justify seeking a significant award for damages.

I affirm under the penalties of perjury that the above is true and correct to the best of my knowledge.

Date:

3

CHYENNE WAISANEN
2315 E Philadelphia St
Rapid City SD 57703
N/A

DANIEL WAISANEN
2315 E Philadelphia St
Rapid City SD 57703
N/A

Subscribed and sworn to before me this 26 day of NOV , 2024

Notary Public Signature: _____ Notary Seal

My Commission Expires: _____



FILED
Pennington County, SD
IN CIRCUIT COURT

NOV 2 6 2024

Amber Watkins, Clerk of Courts
By_____Deputy

4

IN THE STATE OF SOUTH DAKOTA                    IN CIVIL COURT
COUNTY OF PENNINGTON                            7TH JUDICIAL CIRCUIT

| | |
|---|---|
| Chyenne Waisanen,<br>Daniel Waisanen<br>　　　Plaintiff. | Case no.: S\CWQ4·OOT747 |
| V.<br><br>Credit Collection Bureau<br>　　　Defendant. | MOTION FOR TEMPORARY RESTRAINING<br>ORDER TO HALT SALE OF SEIZED<br>PROPERTY |

## MOTION FOR TEMPORARY RESTRAINING ORDER TO HALT SALE OF SEIZED PROPERTY

NOW COME the Plaintiffs, Chyenne and Daniel Waisanen, pro se, respectfully requesting this Court to issue an order halting the sale of the Plaintiffs' personal property (a 2016 Ford F150 Supercrew Pickup (VIN: 1F1EW1EG3GFC33149)), which was unlawfully seized by the Defendant to satisfy an alleged judgment debt. The sale of the Plaintiffs' vehicle would cause irreparable harm, as it serves as a critical work vehicle essential to the operation of their business. Without this vehicle, the Plaintiffs would be unable to perform necessary business functions, jeopardizing their livelihood and ability to generate income. In support of this Motion, Plaintiffs state as follows:

### I. FACTUAL BACKGROUND

#### 1. The Alleged Judgment and Seizure

1.1. On June 20, 2024, a default judgment was entered in favor of Defendant for the alleged debt amount of $4,669.17 cost of $48.82 and Pre-judgment Interest for $1398.05 totaling $6116.04.

1.2. On October 18, 2024, Defendant obtained a writ of execution, leading to the seizure of Plaintiffs' personal property—a 2016 Ford F150 Supercrew Pickup (VIN: 1F1EW1EG3GFC33149) valued at approximately $27,000—to satisfy this alleged debt.

#### 2. Fraudulent and Improper Assignment of Debt

2.1. The debt in question stems from alleged medical services. Upon Plaintiffs' discovery, no original signed contract exists between Plaintiffs and the medical provider.

1

2.2. Defendant's documentation fails to establish ownership or validity of the assigned debt, as required under South Dakota Codified Laws (SDCL) § 57A-9-203(b)(3).

2.3. The "assignment of debt" contains only itemized billing statements with no attached consent forms or original agreements, violating the requirement for proof of enforceable obligations under SDCL § 57A-3-309(b).

2.4. The digital signature on the assignment lacks critical metadata (e.g., IP address or timestamp) to authenticate its validity, contrary to general evidentiary principles outlined in SDCL § 15-6-56(e) for electronic evidence.

### 3. Discrepancies in Account Numbers

3.1. Upon obtaining original consent forms from the hospital, Plaintiffs discovered that the account numbers listed on the hospital's documentation do not match the account numbers on the alleged assignments provided by Defendant. This inconsistency undermines the validity of the purported assignment under SDCL § 57A-9-203(b).

### 4. Irreparable Harm

4.1. Plaintiffs are suffering irreparable harm due to the seizure of their vehicle, which is essential for transportation, work, and daily living.

4.2. The value of the seized property grossly exceeds the amount of the alleged judgment, constituting an unjust windfall to the Defendant, in violation of equitable principles under SDCL § 21-29-1.

## II. LEGAL ARGUMENT

### 1. Violation of UCC § 9-203

1.1. Under SDCL § 57A-9-203(b), a secured party cannot enforce a security interest unless:

- (1) Value has been given;

- (2) The debtor has rights in the collateral; and

- (3) There is an authenticated security agreement that provides a description of the collateral.

Here, no valid security agreement exists between Plaintiffs and Defendant. Defendant cannot enforce any interest in the vehicle under this statute.

### 2. Invalid Assignment of Debt

2.1. Under South Dakota law, a party seeking to enforce an assignment must provide a valid chain of title. SDCL § 57A-3-203(b) specifies that the transfer of an instrument is not enforceable unless there is clear evidence of the transfer.

2.2. Defendant's documentation does not meet the evidentiary standard for proving assignment under SDCL § 57A-3-309(b), which requires proof of terms and the right to enforce the instrument.

### 3. Equitable Relief

3.1. Plaintiffs face immediate and irreparable harm if the vehicle is sold at auction. Monetary compensation will not adequately restore the Plaintiffs' loss of their work vehicle, critical to their business and livelihood. Under SDCL § 21-29-2, this Court has the equitable authority to issue an injunction where irreparable harm and inadequate legal remedies exist.

### III. RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request this Court:

1. Immediately issue a temporary restraining order halting the sale of the 2016 Ford F150 Supercrew Pickup until further order of this Court;

2. Schedule a hearing to determine the propriety of continuing the restraining order as a preliminary injunction;

3. Grant any other relief the Court deems just and equitable under the circumstances.

### IV. DECLARATION OF PLAINTIFFS

We, Chyenne and Daniel Waisanen, declare under penalty of perjury that the foregoing is true and correct to the best of our knowledge and belief.

Date: **11. 26. 2024**

CHYENNE WAISANEN
2315 E Philadelphia St
Rapid City SD 57703

DANIEL WAISANEN
2315 E Philadelphia St
Rapid City SD 57703

FILED
Pennington County, SD
IN CIRCUIT COURT

NOV 26 2024

Amber Watkins, Clerk of Courts
By_____Deputy

3

**CONFIDENTIAL INFORMATION FORM** (Required by SDCL 15-15A-9)  51SMC24-000747

CREDIT COLLECTIONS BUREAU                          Case No. _____
Plaintiff/Petitioner

 CHYENNE M & DANIEL WAISANEN
Defendant/Respondent

**The information on this form is protected and shall not be placed in a publicly accessible portion of the court record. The filing documents will be placed in the public part of the court record devoid of this information.**

| **NAME** | **SOCIAL SECURITY NUMBER, EMPLOYER IDENTIFICATION NUMBER, TAXPAYER IDENTIFICTION NUMBER, FINANCIAL ACCOUNT NUMBERS, and MEDICAL ACCOUNT NUMBERS** |
|---|---|

Plaintiff/Petitioner
1. CREDIT COLLECTIONS BUREAU _____

Defendant/Respondent
1. CHYENNE M & DANIEL WAISANEN _____

Others Parties (including minor children)

1. _____
2. _____
3. _____
4. _____
5. _____
6. _____
7. _____
8. _____

Information supplied by : _____

Signed: _____ legal dept. Director

Firm:        CREDIT COLLECTIONS BUREAU
Address:   PO BOX 9490
               RAPID CITY, SD 57709
Date:       4/24/24

Documents Given
from clerk of courts

Form UJS-104 Rev. 10/2016

**ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU**

Name (s) : WAISANEN, CHYENNE M                CCB Account No. : ▇▇▇▇
WAISANEN, DANIEL

Client Account No: ▇▇▇▇▇▇▇▇
Statement Date: 05/17/2022
Date of last charge: 03/25/2022

    For valuable consideration, the undersigned does hereby assign and transfer unto the above
listed agency the account, and does hereby state that the account is just and owing, true and correct,
and does authorize the agency to bring suit in its own name and do any and all things necessary to
enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 205.01

Name of firm: MONUMENT HEALTH

Digitally Signed:  SAMANTHA MORRIS
Date:   01/29/2024

### ***STATEMENT OF ACCOUNT***

Date of Service: 03/25/2022
Date of Last Payment: 03/22/2023
Balance Due: 2050.19
Payments Received: 1845.18
Current Amount Owing: 205.01

214
▇▇▇▇
10100

05/31/23

| Acct # | Total Charges | Bal Due on Acct |
|--------|---------------|-----------------|
|        | $2,733.58     | $205.01 ✓        |

Chyenne M Waisanen
2315 E Philadelphia St
RAPID CITY SD 57703

Thank you for choosing Monument Health Rapid City Hospital for your healthcare needs. This is an itemization of the services provided during the visit on 03/25/22 through 03/25/22 for Chyenne M Waisanen.

Questions?    Call toll free (844) 641-5134    Coverage(s) on file
Customer service representatives are available    First Choice Commercial - First Choice
Mon - Fri 8:00 AM to 4:30 PM (except holidays).    Health Asi.

## Hospital Charges

| Date | Rev Code | Procedure Code | Description | Qty | Amount |
|------|----------|----------------|-------------|-----|--------|
| Anesthesia-General | | | | | |
| 03/25/22 | 0370 | 3700000300 | Mac Anesthesia Facility Charge 1st 15 Min | 1 | $278.00 |
| Gastrointestinal (GI) Services-General | | | | | |
| 03/25/22 | 0750 | 7500000200 | HC Endo Level 2 First 15 Min | 1 | $1,822.00 |
| Laboratory-General | | | | | |
| 03/25/22 | 0302 | 3028667700 | Heliobacter Pylori Ab | 1 | $109.00 |
| Pharmacy-General | | | | | |
| 03/25/22 | 0258 | J7120 | Lr Parenteral Solution (0338-0117-04) | 1 | $82.00 |
| 03/25/22 | 0250 | 2500000200 | Ketamine 50 Mg/5 Ml (10 Mg/Ml) Syringe (61553-320-33) | 1 | $86.19 |
| 03/25/22 | 0636 | J2704 | Propofol 10 Mg/Ml Emulsion (63323-269-29) | 15 | $51.30 |
| 03/25/22 | 0636 | J2704 | Propofol 10 Mg/Ml Emulsion (63323-269-29) | 25 | $85.50 |
| 03/25/22 | 0250 | 2500000200 | Benzocaine 20 % Spray,Non-Aerosol 1 Each Pf Appli (0283-0610-43) | 1 | $81.59 |
| Recovery Room-General | | | | | |
| 03/25/22 | 0710 | 7100000900 | Recovery Phase-2 1st 1/2 Hour Acuity Level 1 | 1 | $158.00 |
| | | | **Total Charges** | | **$2,733.58** |

## Hospital Payments and Adjustments

| Date | Description | Amount |
|------|-------------|--------|
| 03/17/23 | First Choice Commercial Payments<br>Coinsurance: $205.01 | -$1,845.18 |
| 04/25/22 | First Choice Commercial Adjustments | -$683.39 |
| | **Total Insurance Payments and Adjustments** | **-$2,528.57** |

ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

Name (s) : WAISANEN, CHYENNE                    CCB Account No. : ▮▮▮▮

Client Account No: ▮▮▮▮
Statement Date:
Date of last charge: 12/22/2022

For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 199.22

Name of firm: BLACK HILLS URGENT CARE

Digitally Signed: SAMANTHA MORRIS
Date:    01/29/2024

***STATEMENT OF ACCOUNT***

Date of Service: 12/22/2022
Date of Last Payment:
Balance Due: 199.22
Payments Received: 0.00
Current Amount Owing: 199.22

214
25302

Black Hills Urgent Care
PO Box 24085
Seattle, WA 98124-0085

IF PAYING BY MASTERCARD OR VISA FILL OUT BELOW

| ☐ MASTERCARD | ☐ VISA |
| ☐ AMEX | |
| CARD NUMBER | EXP. DATE |
| SIGNATURE | SHOW AMOUNT PAID HERE |
| STATEMENT DATE 5/31/2023 | ACCT# ▇▇▇▇ | |

CHYENNE  WAISANEN
2315 E PHILADELPHIA ST
RAPID CITY, SD  57703

Black Hills Urgent Care, LLC
PO Box 24085
Seattle, WA 98124-0085

☐ Please check box if address is incorrect or insurance information
has changed, and indicate change(s) on reverse side.

Please detach and send above with payment. To pay your bill online, go to http://bhucare.com/

## ACCOUNT SUMMARY    Acct #:    430808

| The Insurance Companies on file for these visits: | |
|---|---|
| CHYENNE WAISANEN<br>UHC<br>0139<br>BCBS SD<br>6327          82969 | Out to Insurance: $288.00<br>You have paid $10.00 as copays that are still pending.<br><br>You have $0.00 currently in your responsibility.<br>You have $0.00 available as a credit.<br>**You owe $0.00 today.** |

Visit Date:  12/22/2022
Visit ID:  ▇▇▇▇
Patient:  CHYENNE
Location:  Black Hills Urgent Care Haines Avenue
Physician:  Christopher Wenger, MD

| | CHARGES | INSURANCE PAYMENT | CONTRACT SAVINGS | PATIENT PAYMENT | ADJUSTMENT | BALANCE | RESPONSIBLE PARTY | DENIAL CODE |
|---|---|---|---|---|---|---|---|---|
| 99213  Office/outpatient visit est | $150.00 | $0.00 | $5.18 | $0.00 | $144.82 | $0.00 | | DED |
| A4565  Slings | $27.00 | $0.00 | $27.00 | $0.00 | $0.00 | $0.00 | | BUNDLED |
| A6448  L1 comprs bandge elast width < 3 in | $2.00 | $0.00 | $2.00 | $0.00 | $0.00 | $0.00 | | BUNDLED |
| 73070.1  XR ELBOW 2V (AP/LAT) | $104.00 | $0.00 | $49.60 | $0.00 | $54.40 | $0.00 | | DED |
| | $283.00 | $0.00 | $83.78 | $0.00 | $199.22 | $0.00 | | |

A finance charge is computed on a monthly periodic rate of
0.00%, 0% annually on any balance over 0 days.

Explanation of outstanding balance(s):
BUNDLED: The benefit for this service is included in the payment/allowance for another service/procedure
that has already been adjudicated.
DED: Insurance company indicates this amount is due by the patient as a deductible and has also been
applied to your yearly deductible amount.

| PATIENT OWES: |
|---|
| $0.00 |
| INSURANCE OWES: |
| $288.00 |

Thank you for choosing Black Hills Urgent Care. It was our pleasure to serve you. For questions regarding your    Page 1 of 1
account or to make a payment, please call 605-863-9970.

02-05-'24 14:12 FROM- Scovel                    6057218928        T-822  P0002/0002 F-446

# CREDIT COLLECTIONS BUREAU
PO Box 9490

January 30, 2024

KATHY ALT
SCOVEL PSYCHOLOGICAL
PO BOX 387
RAPID CITY SD 57709

Dear Client,

   We recommend legal action to assist in the collection of this
account.

   * **PLEASE SIGN THIS ASSIGNMENT WITH BLACK SHARPIE**
   * **EMAIL TO: ccbclientmail@ccbinet.com**

Sincerely,

Client Services Department.

214   15   LAO

                                            NEWASMT   SD

---

### ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

            Name(s): CHEYENNE M WAISANEN

Client Account No.:                          CCB Account No.:
  Statement Date:
Date of last charge: 04-13-22

   For valuable consideration, the undersigned does hereby assign
and transfer unto the above listed agency the account, and does
hereby state that the account is just and owing, true and correct,
and does authorize the agency to bring suit in its own name and
do any and all things necessary to enforce collection of the
account as agent for assignor.

Please confirm current amount owing: $186.60    ✓

If you are showing a different amount owing, please write that amount
here $_____ and initial here _____

Name of firm: SCOVEL PSYCHOLOGICAL

Signed: *Kathy A Alt*            Title: *Biller*

Client No.:                    605-721-8928

### ***STATEMENT OF ACCOUNT***

Date of Service: 04-13-22              Balance Due: $186.60
Date of Last Payment:            Payments Received: $0.00
                              Current Amount Owing: $186.60

08-06-'23 11:35 FROM-  Scovel                    6057218928                  T-468  |    ...  ..  ...



### Scovel Psychological
2902 W. Main St., Sta. 2
Rapid City, SD 57702-8174
Phone: 605-721-8822 | Fax: 605-721-8928

#### AUTHORIZATION FOR THE USE AND DISCLOSURE OF PROTECTED HEALTH INFORMATION

As required by the Health Insurance Portability and Accountability Act of 1996, Scovel Psychological may not use or disclose your health information without your authorization except as provided in our Notice of Privacy Practices. Your signature on this form indicates that you are giving permission for the uses and disclosures described herein. You may revoke this authorization at any time by signing and dating the revocation section on your copy of this form and returning it to this office.

#### AUTHORIZATION SECTION

I        Chyenne Waisanen

hereby authorize and request the use and disclosure of all of the health information that pertains to me. I authorize and request Scovel Psychological to make these disclosures of my health information. I authorize and request the following persons to receive these disclosures of my health information and elect not to provide statement of purpose for the use of the disclosure to the following persons (please print):

Daniel Waisanen                   Husband

I understand that information disclosed pursuant to this authorization may be re-disclosed to additional parties and no longer be protected.

I understand that this authorization will automatically expire after 5 years, but that I may revoke this authorization at any time by signing the revocation section of my copy of this form and returning it to Scovel Psychological. I further understand that any such revocation does not apply to the extent that persons authorized to use or disclose my health information have already acted in reliance on this authorization.

I understand that I am under no obligation to sign this authorization. I further understand that my ability to obtain treatment will not depend in any way on whether I sign this authorization or not.

12/22/2021

**Signature of Patient or Parent of Minor Child**

Only complete this section if you wish to revoke this authorization:

I revoke this authorization effective

12/22/2021

**Signature**

08-08-'23 11:35 FROM- Scovel          6057218928



**Scovel Psychological**
2902 W. Main St., Ste. 2
Rapid City, SD 57702-6174
Phone: 605-721-8622 | Fax: 605-721-8928

Scovel Psychological and Counseling Services, Ltd.

Consent for Receiving and the Method of Receiving Appointment Reminders

I explicitly authorize Scovel Psychological and Counseling Services, Ltd, to use or disclose my protected health information for the purpose of notifying me of future appointments. Scovel Psychological and Counseling Services, Ltd, may remind me of the date and time of my next appointment by one of the following methods.

NOTE: Please check the method you want to be contacted. Also provide a your preferred phone number/email to receive the appointment reminders.

    Text.

Please provide your cell phone or email if your are wanting appointment reminders by text or email.

Call          ▬▬▬▬▬▬▬

Email         ▬▬▬▬▬▬▬

I may revoke my consent in writing except to the extent that the Practice has already made disclosures upon my prior consent.

Signature of Patient or Legal Guardian

06-08-'23 11:35 FROM- Scovel                    8057218928

**Scovel Psychological**
2902 W. Main St., Ste. 2
Rapid City, SD 57702-8174
Phone: 605-721-8522;Fax: 605-721-8529
Tax ID: [redacted] PH: 1579744504

**Financial Summary**

Weisener, Cheyenne M (MRN: 0000086766)                    Primary Payer (Policy #):   SOUND HEALTH #2 [redacted]
2315 E PHILADELPHIA ST
Rapid City, SD 57709

| Clinic # DOS | | PRN Delay | DOS Comp. | Denied | Facility | Provider | Billed | Allowed | Ins Pay | Pat Pay | Adj | Write-Off | O. R. B N | Balance | Responsibility |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 724142 | 01/12/2022 | 25.00 | ☒ | 0.00 | F32.1 | Scovel Psychological & Counseling Services | Sternhagen, Scott , PhD | 220.00 | 177.55 | 147.84 | 30.00 | 42.44 | 0.00 | 0.00 | 0.00 | Patient |
| 724234 | 01/17/2022 | 25.00 | ☒ | 0.00 | F32.1 | Scovel Psychological & Counseling Services | Sternhagen, Scott , PhD | 175.00 | 149.52 | 119.52 | 30.00 | 25.48 | 0.00 | 0.00 | 0.00 | Patient |
| 724259 | 01/24/2022 | 25.00 | ☒ | 0.00 | F32.1 | Scovel Psychological & Counseling Services | Sternhagen, Scott , PhD | 175.00 | 149.52 | 119.52 | 30.00 | 25.48 | 0.00 | 0.00 | 0.00 | Patient |
| 724548 | 02/01/2022 | 25.00 | ☒ | 0.00 | F32.1 | Scovel Psychological & Counseling Services | Sternhagen, Scott , PhD | 175.00 | 149.52 | 119.52 | 30.00 | 25.48 | 0.00 | 0.00 | 0.00 | Patient |
| 724904 | 02/09/2022 | 25.00 | ☒ | 0.00 | F32.1 | Scovel Psychological & Counseling Services | Sternhagen, Scott , PhD | 175.00 | 149.52 | 111.52 | 23.48 | 25.48 | 6.50 | 0.00 | 0.00 | Patient |
| 725194 | 02/21/2022 | 30.00 | ☒ | 0.00 | F32.1 | Scovel Psychological & Counseling Services | Sternhagen, Scott , PhD | 175.00 | 149.52 | 119.52 | 0.00 | 25.48 | 30.00 | 0.00 | 0.00 | Patient |
| 725470 | 02/28/2022 | 30.00 | ☒ | 0.00 | F32.1 | Scovel Psychological & Counseling Services | Sternhagen, Scott , PhD | 175.00 | 149.52 | 119.52 | 0.00 | 25.48 | 30.00 | 0.00 | 0.00 | Patient |
| 725524 | 03/09/2022 | 30.00 | ☒ | 0.00 | F32.1 | Scovel Psychological & Counseling Services | Sternhagen, Scott , PhD | 175.00 | 148.40 | 118.40 | 0.00 | 25.60 | 30.00 | 0.00 | 0.00 | Patient |
| 725733 | 03/16/2022 | 30.00 | ☒ | 0.00 | F32.1 | Scovel Psychological & Counseling Services | Sternhagen, Scott , PhD | 175.00 | 148.40 | 118.40 | 0.00 | 25.60 | 30.00 | 0.00 | 0.00 | Patient |
| 726189 | 03/30/2022 | 30.00 | ☒ | 0.00 | F32.1 | Scovel Psychological & Counseling Services | Sternhagen, Scott , PhD | 190.00 | 148.40 | 118.40 | 0.00 | 41.60 | 30.00 | 0.00 | 0.00 | Patient |
| 726463 | 04/14/2022 | 30.00 | ☒ | 0.00 | F32.1 | Scovel Psychological & Counseling Services | Sternhagen, Scott , PhD | 190.00 | 148.40 | 118.40 | 0.00 | 41.60 | 30.00 | 0.00 | 0.00 | Patient |

Total ($): 300.00   0.00   ......   2005.00   1568.29   1338.56   143.48   331.72   246.60   0.00   0.00

73.00✓

**Financial Summary**

| | Current ($) | 31-60 Days | 61-90 Days | 91-120 Days | Over 120 Days | | Primary ($): 0.00 (0.00%) | Secondary ($): 0.00 (0.00%) | Tertiary ($): 0.00 (0.00%) |
|---|---|---|---|---|---|---|---|---|---|
| Insurance Aging ($) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | Patient ($): 0.00 (0.00%) | | Total ($): 0.00 (100.00%) |
| Patient Aging ($) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | Insurance Unapplied Credit ($): 00.00 | Patient Unapplied Credit ($): 00.00 | |

06-06-'23 11:36 FROM-  Scovel                    6057218928

## Payment Receipt

Waisanen, Cheyenne M
2315 E PHILADELPHIA ST
Rapid City, SD 57703

Scovel Psychological
2902 W. Main St., Ste. 2
Rapid City, SD 57702
Phone: 605-721-8822 Fax: 605-721-8928

Receipt #:

Receipt Date: 02/08/2022

Provider: Sternhagen, Scott, PhD

Paid Amount: $25.00

Paid by: Online

Description:

Processed by,

Christine P.

08-08-'23 11:38 FROM- Soovel                    6057218928

## Payment Receipt

Waisanen, Cheyenne M
2315 E PHILADELPHIA ST
Rapid City, SD 57703

Suovel Psychological
2902 W. Main St., Ste. 2
Rapid City, SD 57702
Phone: 605-721-8822 Fax: 605-721-8928

Receipt #: ████3

Receipt Date: 05/10/2022

Provider: Stemhagen, Scott, PhD

Paid Amount: $118.40

Paid by: Online

Description: Collected unapplied credit $118.40 through Easy Pay with Transaction # 1271 on 05/10/2022 12:29 PM

Processed by,

User, EasyPay.

# CREDIT COLLECTIONS BUREAU
PO Box 9490

January 30, 2024

MISSY                                        1520
ACTION MECHANICAL
PO BOX 880
RAPID CITY SD 57709-0880

Dear Client,

    We recommend legal action to assist in the collection of this account.

       * **PLEASE SIGN THIS ASSIGNMENT WITH BLACK SHARPIE**
       * **EMAIL TO: ccbclientmail@ccbinet.com**

Sincerely,

Client Services Department.

214   214   LAO

                                               NEWASMT   SD

---

## ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

                  Name(s): DAN WAISANEN
                          CHYENNE WAISANEN
Client Account No.: ▉▉▉▉▉▉▉▉          CCB Account No.: ▉▉▉▉▉▉
    Statement Date:
Date of last charge: 09-30-22

      For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for assignor.

Please confirm current amount owing: $207.04 _____

If you are showing a different amount owing, please write that amount here $_____ and initial here _____.

Name of firm: ACTION MECHANICAL

Signed: _~Shirley Johnson~_      Title: _President_

Client No.: 1▉▉▉      GET TO JEFFC

### ***STATEMENT OF ACCOUNT***

  Date of Service: 09-30-22           Balance Due: $207.04
  Date of Last Payment:           Payments Received: $0.00
                      Current Amount Owing: $207.04

# STATEMENT



02-06-23

ACTION MECHANICAL, INC.
PO BOX 680
RAPID CITY SD 57709-0880
(605)348-5212

WAISANEN, DAN OR CHYENNE
2315 E PHILADELPHIA ST
RAPID CITY          SD    57703

| | | | | BALANCE |
|---|---|---|---|---|
| 09-30-22 | 2054495 | OUTSTANDING OPEN ITEMS<br>*********************<br>DISCONNECTED AC | 153.36 | |

MAKE PAYMENTS now online at WWW.ACTIONMEG.COM

35% Finance charge on all unpaid invoices 31 days past invoice date

53.68

| | | | | | BALANCE |
|---|---|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 0.00 | 153.36 | 153.36 |

207.04 ✓



PLUMBING - HEATING - SHEET METAL - AIR CONDITIONING

1856 Lombardy Drive - PO Box 880
Rapid City, SD 57709-0880

Phone: (605)348-8212
Fax: (605)348-8984

Bill To / Ship To

WALSANEN, DAN OR CHEYENNE
2315 E PHILADELPHIA ST

RAPID CITY    SD 57703

(605)206-0051
DISCONNECTED AC

WORK DATE
INVOICE DATE        9/23/22
PO NUMBER
                    AC DISCONNECT

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 1.50 | BLAKE BAAKEN | 96.0000 | 144.00 |
|  | TAXABLE AMOUNT |  | 144.00 |
|  | EXCISE OR SALES TAX |  | 9.36 |
|  | FREIGHT |  | 0.00 |
|  | MISC CHARGES |  | 0.00 |
|  | MISC |  | 0.00 |
|  | TOTAL INVOICE |  | 153.36 |

36% Finance Charge on all unpaid invoices 31 days past invoice date.
PAYMENTS now online at WWW.ACTIONMEC.COM

## MECHANICAL CONTRACTORS

### COMMERCIAL * INDUSTRIAL *  RESIDENTIAL * SALES * SERVICE

ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

Name (s) : WAISANEN, CHYENNE                    CCB Account No. : ████████

Client Account No: ████████
Statement Date:
Date of last charge: 10/24/2018

      For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 72.00

Name of firm: BLACK HILLS URGENT CARE

Digitally Signed:   SAMANTHA MORRIS
Date:    01/29/2024

### ***STATEMENT OF ACCOUNT***

Date of Service: 10/24/2018
Date of Last Payment:
Balance Due: 72.00
Payments Received: 0.00
Current Amount Owing: 72.00

214

25302

Black Hills Urgent Care
PO Box 24085
Seattle, WA 98124-0085

**IF PAYING BY MASTERCARD OR VISA FILL OUT BELOW**

| ☐ MASTERCARD | ☐ VISA |
|---|---|
| ☐ AMEX | |

| CARD NUMBER | EXP. DATE |
|---|---|
| SIGNATURE | SHOW AMOUNT PAID HERE |

| STATEMENT DATE | ACCT# |
|---|---|
| 5/31/2023 | ▮▮▮▮ |

CHYENNE WAISANEN
2315 E PHILADELPHIA ST
RAPID CITY, SD 57703

Black Hills Urgent Care, LLC
PO Box 24085
Seattle, WA 98124-0085

☐ Please check box if address is incorrect or insurance information has changed, and indicate change(s) on reverse side.

**Please detach and send above with payment. To pay your bill online, go to http://bhucare.com/**

## ACCOUNT SUMMARY    Acct #: ▮▮▮▮▮

| The Insurance Companies on file for these visits: | |
|---|---|
| CHYENNE WAISANEN | Out to Insurance: $288.00 |
| UHC | You have paid $10.00 as copays that are still pending. |
| 0139 | |
| BCBS SD | You have $0.00 currently in your responsibility. |
| ▮▮▮▮▮ | You have $0.00 available as a credit. |
| | You owe $0.00 today. |

Visit Date: 10/24/2018
Visit ID: ▮▮▮▮
Patient: CHYENNE
Location: Black Hills Urgent Care Haines Avenue
Physician: Natalie Wooldridge, CNP

| | CHARGES | INSURANCE PAYMENT | CONTRACT SAVINGS | PATIENT PAYMENT | ADJUSTMENT | BALANCE | RESPONSIBLE PARTY | DENIAL CODE |
|---|---|---|---|---|---|---|---|---|
| 87186 Microbe susceptible mic | $13.50 | $0.00 | $0.00 | $7.50 | $6.00 | $0.00 | | |
| 99203 Office/outpatient visit new | $150.00 | $0.00 | $0.00 | $150.00 | $0.00 | $0.00 | | |
| 96372 Ther/proph/diag inj sc/im | $46.00 | $0.00 | $0.00 | $46.00 | $0.00 | $0.00 | | |
| 87077 Culture aerobic identify | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 | $0.00 | | |
| 36415.1 ROUTINE VENIPUNCTURE | $5.00 | $0.00 | $0.00 | $0.00 | $5.00 | $0.00 | | |
| 80053.1 CMP | $15.00 | $0.00 | $0.00 | $15.00 | $0.00 | $0.00 | | |
| 81003.1 URINALYSIS AUTO W/SCOPE | $12.00 | $0.00 | $0.00 | $0.00 | $12.00 | $0.00 | | |
| 81025.1 URINE HCG | $20.00 | $0.00 | $0.00 | $20.00 | $0.00 | $0.00 | | |
| 85025.1 CBC | $12.00 | $0.00 | $0.00 | $0.00 | $12.00 | $0.00 | | |
| 87086.1 URINE CULTURE/COLONY COUNT | $12.50 | $0.00 | $0.00 | $0.00 | $12.50 | $0.00 | | |
| J0696 Inj ceftriaxone sodium per 250 mg | $12.00 | $0.00 | $0.00 | $0.00 | $12.00 | $0.00 | | |
| | $310.50 | $0.00 | $0.00 | $238.50 | $72.00 ✓ | $0.00 | | |

A finance charge is computed on a monthly periodic rate of 0.00%, 0% annually on any balances over 0 days.

| PATIENT OWES: |
|---|
| $0.00 |
| **INSURANCE OWES:** |
| $288.00 |

Thank you for choosing Black Hills Urgent Care. It was our pleasure to serve you. For questions regarding your account or to make a payment, please call 605-863-8970.    Page 1 of 1

## ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

Name (s) : WAISANEN, CHYENNE M                    CCB Account No. : ███████

Client Account No: ███████
Statement Date: 03/26/2023
Date of last charge: 02/27/2023


        For valuable consideration, the undersigned does hereby assign and transfer unto the above
listed agency the account, and does hereby state that the account is just and owing, true and correct,
and does authorize the agency to bring suit in its own name and do any and all things necessary to
enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 1009.83

Name of firm: MONUMENT HEALTH

Digitally Signed:   SAMANTHA MORRIS
Date:    01/29/2024


### ***STATEMENT OF ACCOUNT***

Date of Service: 02/27/2023
Date of Last Payment:
Balance Due: 1009.83
Payments Received: 0.00
Current Amount Owing: 1009.83


214
████████
10100

01/29/24

| Acct # | Total Charges | Bal Due on Acct |
|---|---|---|
| | $8,633.14 | $1,009.83 ✓ |

Chyenne M Waisanen
2315 E Philadelphia St
RAPID CITY SD 57703

Thank you for choosing Monument Health Rapid City Hospital for your healthcare needs. This is an itemization of the services provided during the visit on 02/27/23 through 02/27/23 for Chyenne M Waisanen.

| Questions? | Call toll free (844) 641-5134 | Coverage(s) on file |
|---|---|---|
| | Customer service representatives are available | Blue Cross Blue Shield Wellmark – BCBS |
| | Mon - Fri 8:00 AM to 4:30 PM (except holidays). | South Dakota |

## Hospital Charges

| Date | Rev Code | Procedure Code | Description | Qty | Amount |
|---|---|---|---|---|---|
| **CT Scan-General** | | | | | |
| 02/27/23 | 0352 | 3527417700 | CT Abdomen & Pelvis W/Contrast Material | 1 | $5,312.00 |
| 02/27/23 | 0352 | 3200100400 | HC Cdsm National Decision Support Company | 1 | $0.01 |
| **Emergency Room-General** | | | | | |
| 02/27/23 | 0450 | 4509928400 | HC EMERGENCY DEPARTMENT VISIT LEVEL 4 Mod SEVERITY | 1 | $1,206.00 |
| 02/27/23 | 0450 | 2609637400 | Ther Proph/Dx Njx IV Push Single/1st Sbst/Drug | 1 | $370.00 |
| 02/27/23 | 0450 | 2609637500 | Therapeutic Injection IV Push Each New Drug | 1 | $219.00 |
| **IV Therapy-General** | | | | | |
| 02/27/23 | 0260 | 2609636100 | IV Infusion Hydration Each Additional Hour | 1 | $117.00 |
| **Laboratory-General** | | | | | |
| 02/27/23 | 0307 | 3078100100 | Urine Auto With Micro | 1 | $89.00 |
| 02/27/23 | 0300 | 3003641500 | Collection Venous Blood Venipuncture | 1 | $50.00 |
| 02/27/23 | 0301 | 3018005300 | Cmp Comprehensive Metabolic | 1 | $192.00 |
| 02/27/23 | 0301 | 3018369000 | Lipase | 1 | $144.00 |
| 02/27/23 | 0301 | 3018470300 | Hcg Qual Preg Test | 1 | $142.00 |
| 02/27/23 | 0305 | 3058502500 | Complete Bl Count W Diff Auto | 1 | $129.00 |
| **Pharmacy-General** | | | | | |
| 02/27/23 | 0250 | J7030 | Sodium Chloride 0.9 % 0.9 % Bolus Parenteral Solution (0338-0049-04) | 1 | $94.20 |
| 02/27/23 | 0636 | J2270 | Morphine 4 Mg/MI Solution (0409-1891-03) | 1 | $111.38 |
| 02/27/23 | 0636 | J2405 | Ondansetron 4 Mg/2 MI Solution (60505-6130-0) | 4 | $104.60 |
| 02/27/23 | 0255 | Q9967 | Iopamidol 370 Mg Iodine /MI (76 %) Solution (0270-1316-37) | 140 | $372.95 |
| | | | **Total Charges** | | **$8,633.14** |

## Hospital Payments and Adjustments

| Date | Description | Amount |
|---|---|---|
| 03/22/23 | Blue Cross Blue Shield Wellmark Payments | -$1,286.56 |
| | Deductible: $750.00 | |
| | Coinsurance: $259.83 | |

| Date | Description | Amount |
|------|-------------|--------|
| 03/22/23 | Blue Cross Blue Shield Wellmark Adjustments | -$6,336.75 |
| | Total Insurance Payments and Adjustments | -$7,623.31 |

## ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

Name (s) : WAISANEN, DANIEL        CCB Account No. : ███████

Client Account No: ██████████
Statement Date: 03/03/2022
Date of last charge: 09/10/2021

      For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 213.22

Name of firm: MONUMENT HEALTH

Digitally Signed:  SAMANTHA MORRIS
Date:    01/29/2024

### ***STATEMENT OF ACCOUNT***

Date of Service: 09/10/2021
Date of Last Payment:
Balance Due: 213.22
Payments Received: 0.00
Current Amount Owing: 213.22

214
██████
10100

05/16/22

| Acct # | Total Charges | Bal Due on Acct |
|---|---|---|
| | $2,843.01 | $213.22 ✓ |

Daniel Waisanen
2315 E Philadelphia St
Rapid City SD 57703-1718

Thank you for choosing Monument Health Orthopedic & Specialty Hospital for your healthcare needs. This is an itemization of the services provided during the visit on 09/10/21 through 09/10/21 for Daniel Waisanen.

Questions?    Call toll free (844) 641-5134              Coverage(s) on file
             Customer service representatives are available     First Choice Commercial - First Choice
             Mon - Fri 8:00 AM to 4:30 PM (except holidays).    Health Asi

**Hospital Charges**

| Date | Rev Code | Procedure Code | Description | Qty | Amount |
|---|---|---|---|---|---|
| MAGNETIC RESONANCE TECHNOLOGY-GENERAL | | | | | |
| 09/10/21 | 0612 | 6127214100 | MRI SPINAL CANAL CERVICAL W/O CONTRAST MATRL | 1 | $2,843.00 |
| 09/10/21 | 0612 | 3200100400 | Hc Cdsm National Decision Support Company | 1 | $0.01 |
| | | | **Total Charges** | | **$2,843.01** |

**Hospital Payments and Adjustments**

| Date | Description | Amount |
|---|---|---|
| 02/11/22 | First Choice Commercial Payments | -$1,919.03 |
| | Coinsurance: $213.22 | |
| 02/11/22 | First Choice Commercial Adjustments | -$710.76 |
| | **Total Insurance Payments and Adjustments** | **-$2,629.79** |

## ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

Name (s) : WAISANEN, CHYENNE                         CCB Account No. : ███████

Client Account No: ████
Statement Date:
Date of last charge: 01/11/2022

For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 214.91

Name of firm: DAKOTA RADIOLOGY

Digitally Signed:   SAMANTHA MORRIS
Date:    01/29/2024

### ***STATEMENT OF ACCOUNT***

Date of Service: 01/11/2022
Date of Last Payment:
Balance Due: 214.91
Payments Received: 0.00
Current Amount Owing: 214.91

214
███
50099

**Collection Agency Report**
**Client: DAKOTA RADIOLOGY**
Run date: 06-06-2023 11:49:51 AM

**Guarantor Information**
WAISANEN, CHYENNE M
2315 B PHILADELPHIA ST
RAPID CITY, SD 57703

Home Phone:  (605) 206-0051        Guarantor ID:
Work Phone:
Fax:
Address Ind:   Unknown

Patient: WAISANEN, CHYENNE M          Patient ID:          DOB:          Sex:  F
Primary: F1007 - FIRST CHOICE HEALTH

| Provider | DOS | Creation Date | Primary Date Filed | Service | Amount | Balance |
|----------|-----|---------------|--------------------|---------|--------|---------|
| HABBE, THOMAS G. (1336106012) | 12/07/21 | 12/13/21 | 12/13/21 | 93975 - VASCULAR STUDY | 349.00 | 0.00 |
| | | | | 01/07/22 - Commercial Payment (COP) | 296.08 | |
| | | | | Insurance Payment SubTotal: | 296.08 | |
| | | | | 01/07/22 - Commercial Non Allowed (CI | 27.92 | |
| | | | | Insurance Write-Off SubTotal: | 27.92 | |
| | | | | 04/19/22 - Credit Collection Bureau (CC | 25.00 | |
| | | | | Guarantor Credit SubTotal: | 25.00 | |
| *NIGAM, RISHI A. (1205268455) | 01/05/22 | 01/08/22 | 01/09/22 | 76770 - US EXAM ABDO BACK WALL COMP | 142.00 | 0.00 |
| | | | | 02/09/22 - Commercial Payment (COP) | 100.64 | |
| | | | | Insurance Payment SubTotal: | 100.64 | |
| | | | | 02/09/22 - Commercial Non Allowed (CI | 11.36 | |
| | | | | Insurance Write-Off SubTotal: | 11.36 | |
| | | | | 04/19/22 - Credit Collection Bureau (CC | 30.00 | |
| | | | | Guarantor Credit SubTotal: | 30.00 | |
| *VOIGT, CHARLES . (1003927666) | 01/11/22 | 01/17/22 | 01/17/22 | 50390 - DRAINAGE OF KIDNEY LESION | 384.00 | 0.00 |
| | | | | 03/04/22 - Commercial Payment (COP) | 53.89 | |
| | | | | Insurance Payment SubTotal: | 53.89 | |
| | | | | 03/04/22 - Commercial Non Allowed (CI | 115.20 | |
| | | | | Insurance Write-Off SubTotal: | 115.20 | |
| | | | | 06/07/22 - Credit Collection Bureau (CC | 214.91 ✓ | |
| | | | | Guarantor Credit SubTotal: | 214.91 | |
| *VOIGT, CHARLES . (1003927666) | 01/11/22 | 01/17/22 | 01/17/22 | 50390 - DRAINAGE OF KIDNEY LESION | 384.00 | 0.00 |
| | | | | 03/04/22 - Commercial Payment (COP) | 235.02 | |
| | | | | Insurance Payment SubTotal: | 235.02 | |
| | | | | 03/04/22 - Commercial Non Allowed (CI | 115.20 | |
| | | | | Insurance Write-Off SubTotal: | 115.20 | |
| | | | | 06/07/22 - Credit Collection Bureau (CC | 33.78 | |
| | | | | Guarantor Credit SubTotal: | 33.78 | |
| *VOIGT, CHARLES . (1003927666) | 01/11/22 | 01/17/22 | 01/17/22 | 77012 - CT SCAN FOR NEEDLE BIOPSY | 225.00 | 0.00 |
| | | | | 03/04/22 - Commercial Payment (COP) | 137.71 | |
| | | | | Insurance Payment SubTotal: | 137.71 | |

## ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

Name (s) : WAISANEN, CHYENNE M          CCB Account No. : █████████

Client Account No: ████████
Statement Date:
Date of last charge: 02/27/2023

For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 83.00

Name of firm: RAPID CITY EMERGENCY SERVICES

Digitally Signed:  SAMANTHA MORRIS
Date:   01/29/2024

### ***STATEMENT OF ACCOUNT***

Date of Service: 02/27/2023
Date of Last Payment:
Balance Due: 83.00
Payments Received: 0.00
Current Amount Owing: 83.00

214

25607

**Filed: 4/24/2024 2:21 PM CST   Pennington County, South Dakota     51SMC24-000747**

## Collection Agency Report
### Client: RAPID CITY EMERGENCY SERVICES PA
Run date: 02-22-2024 07:21:39 AM

**Guarantor Information**
WAISANEN, CHYENNE M
2315 E PHILADELPHIA ST
RAPID CITY, SD 57703

Home Phone: (605) 206-0051
Work Phone:
Fax:
Address Ind:  Unknown

Guarantor ID:

Patient: WAISANEN, CHYENNE M          Patient ID:          DOB:          Sex:  F
Primary: BC354 - BCBS OF SOUTH DAKOTA
Secondary: FI009 - FIRST CHOICE HEALTH ADMIN

| Provider | DOS | Creation Date | Primary Date Filed | Service | Amount | Balance |
|---|---|---|---|---|---|---|
| *WEYER, CNP, NICOLE M. (1730711144) | 02/27/23 | 03/04/23 | 03/31/23 | 99285 - EMERGENCY DEPT VISIT HI MDM | 841.00 | 0.00 |
| | | | | 04/18/23 - Blue Shield Payment  (BSP) | 332.00 | |
| | | | | Insurance Payment SubTotal: | 332.00 | |
| | | | | 04/18/23 - Blue Shield Non Allowed  (BS | 426.00 | |
| | | | | Insurance Write-Off SubTotal: | 426.00 | |
| | | | | 08/31/23 - Credit Collection Bureau (CC | 83.00 | |
| | | | | Guarantor Credit SubTotal: | 83.00 | |

Total Chgs: $ 841.00    Total Pmts: $ 332.00    Total WOs: $ 426.00    Total Adjs: $ 83.00    Total Bal: $ 0.00

## ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

Name (s) : WAISANEN, DANIEL            CCB Account No. : ███████

Client Account No: ███████
Statement Date: 02/01/2022
Date of last charge: 11/30/2021

      For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 82.95

Name of firm: MONUMENT HEALTH

Digitally Signed:   SAMANTHA MORRIS
Date:    01/29/2024

### ***STATEMENT OF ACCOUNT***

Date of Service: 11/30/2021
Date of Last Payment:
Balance Due: 82.95
Payments Received: 0.00
Current Amount Owing: 82.95

214
10100

05/16/22

| Acct # | Total Charges | Bal Due on Acct |
|---|---|---|
| ▮▮▮▮▮ | $1,106.00 | $82.95 ✓ |

Daniel Waisanen
2315 E Philadelphia St
Rapid City SD 57703-1718

Thank you for choosing Monument Health Orthopedic & Specialty Hospital for your healthcare needs. This is an itemization of the services provided during the visit on 11/02/21 through 11/30/21 for Daniel Waisanen.

| Questions? | Call toll free (844) 641-5134 | Coverage(s) on file |
|---|---|---|
| | Customer service representatives are available | First Choice Commercial - First Choice |
| | Mon - Fri 8:00 AM to 4:30 PM (except holidays). | Health Asi |

**Hospital Charges**

| Date | Rev Code | Procedure Code | Description | Qty | Amount |
|---|---|---|---|---|---|
| PHYSICAL THERAPY-GENERAL | | | | | |
| 11/02/21 | 0420 | 4209701200 | APPL MODALITY 1/> AREAS TRACTION MECHANICAL | 1 | $62.00 |
| 11/02/21 | 0420 | 4209714000 | MANUAL THERAPY TQS 1/> REGIONS EACH 15 MINUTES | 2 | $160.00 |
| 11/08/21 | 0420 | 4209701200 | APPL MODALITY 1/> AREAS TRACTION MECHANICAL | 1 | $62.00 |
| 11/08/21 | 0421 | 4219711000 | THERAPEUTIC PX 1/> AREAS EACH 15 MIN EXERCISES | 1 | $60.00 |
| 11/08/21 | 0420 | 4209714000 | MANUAL THERAPY TQS 1/> REGIONS EACH 15 MINUTES | 1 | $80.00 |
| 11/10/21 | 0421 | 4219711000 | THERAPEUTIC PX 1/> AREAS EACH 15 MIN EXERCISES | 1 | $80.00 |
| 11/10/21 | 0420 | 4209714000 | MANUAL THERAPY TQS 1/> REGIONS EACH 15 MINUTES | 1 | $80.00 |
| 11/10/21 | 0420 | 4209701200 | APPL MODALITY 1/> AREAS TRACTION MECHANICAL | 1 | $62.00 |
| 11/16/21 | 0421 | 4219711000 | THERAPEUTIC PX 1/> AREAS EACH 15 MIN EXERCISES | 1 | $60.00 |
| 11/16/21 | 0420 | 4209703500 | APPL MODALITY 1/> AREAS ULTRASOUND EA 15 MIN | 1 | $60.00 |
| 11/16/21 | 0420 | 4209714000 | MANUAL THERAPY TQS 1/> REGIONS EACH 15 MINUTES | 1 | $80.00 |
| 11/16/21 | 0421 | 4219711000 | THERAPEUTIC PX 1/> AREAS EACH 15 MIN EXERCISES | 1 | $80.00 |
| 11/16/21 | 0420 | 4209703500 | APPL MODALITY 1/> AREAS ULTRASOUND EA 15 MIN | 1 | $60.00 |
| 11/16/21 | 0420 | 4209714000 | MANUAL THERAPY TQS 1/> REGIONS EACH 15 MINUTES | 1 | $80.00 |
| | | | **Total Charges** | | **$1,106.00** |

**Hospital Payments and Adjustments**

| Date | Description | Amount |
|---|---|---|
| 01/24/22 | First Choice Commercial Payments | -$746.55 |
| | Coinsurance: $82.95 | |
| 01/24/22 | First Choice Commercial Adjustments | -$276.50 |
| | **Total Insurance Payments and Adjustments** | **-$1,023.05** |

## ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

Name (s) : WAISANEN, CHYENNE M          CCB Account No. ▮▮▮▮▮

Client Account No: ▮▮▮▮▮▮▮
Statement Date: 06/16/2022
Date of last charge: 11/02/2021

       For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 600.00

Name of firm: MONUMENT HEALTH

Digitally Signed:   SAMANTHA MORRIS
Date:   01/29/2024

### ***STATEMENT OF ACCOUNT***

Date of Service: 11/02/2021
Date of Last Payment:
Balance Due: 600.00
Payments Received: 0.00
Current Amount Owing: 600.00

214
▮▮▮▮
10100

05/31/23

| Acct # | Total Charges | Bal Due on Acct |
|---|---|---|
| ▓▓▓▓▓▓▓ | **$600.00** | **$600.00** ✓ |

Chyenne M Waisanen
2315 E Philadelphia St
RAPID CITY SD 57703

Thank you for choosing Monument Health Rapid City Clinic Burlage, Robin, RD for your healthcare needs. This is an itemization of the services provided during the visit on 11/02/21 through 11/02/21 for Chyenne M Waisanen.

Questions?          Call toll free (844) 641-5134                Coverage(s) on file
                    Customer service representatives are available    First Choice Commercial – First Choice
                    Mon - Fri 8:00 AM to 4:30 PM (except holidays).   Health Asi

**Professional Charges**

| Svc Dt | Procedure Code | Procedure Patient-Friendly Name | Proc Qty | Orig Amt | Total Bal |
|---|---|---|---|---|---|
| 11/02/2021 | 97802 | Med Nutr Ther, 1st, Indiv, Ea 15 Min | 6 | $600.00 | |

**ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU**

Name (s) : WAISANEN, CHYENNE M                CCB Account No. : ███████

Client Account No: ███████
Statement Date: 06/16/2022
Date of last charge: 12/06/2021


        For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 340.00

Name of firm: MONUMENT HEALTH

Digitally Signed:   SAMANTHA MORRIS
Date:   01/29/2024


**\*\*\*STATEMENT OF ACCOUNT\*\*\***

Date of Service: 12/06/2021
Date of Last Payment:
Balance Due: 340.00
Payments Received: 0.00
Current Amount Owing: 340.00


214
████
10100

06/31/23

| Acct # | Total Charges | Bal Due on Acct |
|--------|---------------|-----------------|
|        | **$340.00**   | **$340.00** ✓   |

Chyenne M Waisanen
2315 E Philadelphia St
RAPID CITY SD 57703

Thank you for choosing Monument Health Rapid City Clinic Burlage, Robin, RD for your healthcare needs. This is an itemization of the services provided during the visit on 12/06/21 through 12/06/21 for Chyenne M Waisanen.

| Questions? | Call toll free (844) 641-5134<br>Customer service representatives are available<br>Mon - Fri 8:00 AM to 4:30 PM (except holidays). | Coverage(s) on file<br>First Choice Commercial - First Choice<br>Health Asi |
|------------|-----|-----|

**Professional Charges**

| Svc Dt | Procedure Code | Procedure - Patient-Friendly Name | Proc Qty | Orig Amt | Total Bal |
|--------|----------------|-----------------------------------|----------|----------|-----------|
| 12/08/2021 | 97803 | Med Nutr Ther, Subsq, Indiv, Ea 15 Min | 4 | $340.00 | |

**ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU**

Name (s) : WAISANEN, CHYENNE M                    CCB Account No. ▮▮▮▮▮▮

Client Account No: ▮▮▮▮▮▮▮▮
Statement Date: 10/16/2022
Date of last charge: 10/27/2021

      For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 277.00

Name of firm: MONUMENT HEALTH

Digitally Signed:   SAMANTHA MORRIS
Date:    01/29/2024

**\*\*\*STATEMENT OF ACCOUNT\*\*\***

Date of Service: 10/27/2021
Date of Last Payment:
Balance Due: 277.00
Payments Received: 0.00
Current Amount Owing: 277.00

214
10100

05/31/23

| Acct # | Total Charges | Bal Due on Acct |
|--------|---------------|-----------------|
|        | $277.00       | $277.00 ✓       |

Chyenne M Waisanen
2315 E Philadelphia St
RAPID CITY SD 57703

Thank you for choosing Monument Health Rapid City Clinic Weasel, Jacob, MD for your healthcare needs.  This is an itemization of the  services provided during the visit on 10/27/21 through 10/27/21 for Chyenne M Waisanen.

Questions?          Call toll free (844) 641-5134                              Coverage(s) on file
                    Customer service representatives are available            First Choice Commercial - First Choice
                    Mon - Fri 8:00 AM to 4:30 PM (except holidays).           Health Asi

**Professional Charges**

| Svc Dt | Procedure Code | Procedure - Patient-Friendly Name | Proc Qty | Orig Amt | Total Bal |
|--------|----------------|-----------------------------------|----------|----------|-----------|
| 10/27/2021 | 99203 | Office/Outpatient New Low Mdm 30-44 Minutes | 1 | $277.00 | |

### ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

Name (s) : WAISANEN, CHYENNE M                    CCB Account No. : ██████████

Client Account No: ██████████
Statement Date: 05/17/2022
Date of last charge: 01/11/2022

      For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 324.90

Name of firm: MONUMENT HEALTH

Digitally Signed:   SAMANTHA MORRIS
Date:    01/29/2024

### ***STATEMENT OF ACCOUNT***

Date of Service: 01/11/2022
Date of Last Payment:
Balance Due: 324.90
Payments Received: 0.00
Current Amount Owing: 324.90

214

10100

05/31/23

| Acct # | Total Charges | Bal Due on Acct |
|---|---|---|
| ▮▮▮▮▮▮▮ | $4,332.00 | $324.90 ✓ |

Chyenne M Waisanen
2315 E Philadelphia St
RAPID CITY SD 57703

Thank you for choosing Monument Health Rapid City Hospital for your healthcare needs. This is an itemization of the services provided during the visit on 01/11/22 through 01/11/22 for Chyenne M Waisanen.

| Questions? | Call toll free (844) 641-5134 | Coverage(s) on file |
|---|---|---|
| | Customer service representatives are available | First Choice Commercial - First Choice |
| | Mon - Fri 8:00 AM to 4:30 PM (except holidays). | Health Asi |

### Hospital Charges

| Date | Rev Code | Procedure Code | Description | Qty | Amount |
|---|---|---|---|---|---|
| CT Scan-General | | | | | |
| 01/11/22 | 0350 | 3507701200 | CT Guidance Needle Placement | 1 | $2,252.00 |
| Operating Room Services-General | | | | | |
| 01/11/22 | 0360 | 3605039000 | Aspir &/Njx Renal Cyst/Pelvis Needle Prq | 1 | $2,080.00 |
| | | | Total Charges | | $4,332.00 |

### Hospital Payments and Adjustments

| Date | Description | Amount |
|---|---|---|
| 05/12/22 | First Choice Commercial Payments | -$2,924.10 |
| | Coinsurance: $324.90 | |
| 05/12/22 | First Choice Commercial Adjustments | -$1,083.00 |
| | Total Insurance Payments and Adjustments | -$4,007.10 |

## ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

Name (s) : WAISANEN, CHYENNE M       CCB Account No. : ███████

Client Account No: ███████
Statement Date: 04/25/2023
Date of last charge: 03/09/2023

      For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 91.40

Name of firm: MONUMENT HEALTH

Digitally Signed:   SAMANTHA MORRIS
Date:   01/29/2024

### ***STATEMENT OF ACCOUNT***

Date of Service: 03/09/2023
Date of Last Payment:
Balance Due: 91.40
Payments Received: 0.00
Current Amount Owing: 91.40

214
██████

10100

01/29/24

| Acct # | Total Charges | Bal Due on Acct |
|---|---|---|
| ███████ | $551.20 | $91.40 ✓ |

Chyenne M Waisanen
2315 E Philadelphia St
RAPID CITY SD 57703

Thank you for choosing Monument Health Rapid City Hospital for your healthcare needs. This is an itemization of the services provided during the visit on 03/09/23 through 03/09/23 for Chyenne M Waisanen.

Questions?    Call toll free (844) 641-5134          Coverage(s) on file
              Customer service representatives are available    Blue Cross Blue Shield Wellmark - BCBS
              Mon - Fri 8:00 AM to 4:30 PM (except holidays).    South Dakota

## Hospital Charges

| Date | Rev Code | Procedure Code | Description | Qty | Amount |
|---|---|---|---|---|---|
| IV Therapy-General | | | | | |
| 03/09/23 | 0260 | 2609636000 | IV Infusion Hydration Initial 31 Min-1 Hour | 1 | $457.00 |
| Pharmacy-General | | | | | |
| 03/09/23 | 0250 | J7030 | Sodium Chloride 0.9 % 0.9 % Bolus Parenteral Solution (0338-0049-04) | 1 | $94.20 |
| | | | **Total Charges** | | **$551.20** |

## Hospital Payments and Adjustments

| Date | Description | Amount |
|---|---|---|
| 03/29/23 | Blue Cross Blue Shield Wellmark Payments Coinsurance: $91.40 | -$543.85 |
| 03/29/23 | Blue Cross Blue Shield Wellmark Adjustments | $84.05 |
| | **Total Insurance Payments and Adjustments** | **-$459.80** |

## ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

Name (s) : WAISANEN, DANIEL                    CCB Account No. : █████████

Client Account No: ██████████
Statement Date: 06/02/2022
Date of last charge: 03/31/2022

For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 72.00

Name of firm: MONUMENT HEALTH

Digitally Signed:  SAMANTHA MORRIS
Date:    01/29/2024

### ***STATEMENT OF ACCOUNT***

Date of Service: 03/31/2022
Date of Last Payment:
Balance Due: 72.00
Payments Received: 0.00
Current Amount Owing: 72.00

214
█████
10100

05/31/23

| Acct # | Total Charges | Bal Due on Acct |
|---|---|---|
| ██████████ | **$960.00** | **$72.00** ✓ |

Daniel Waisanen
2315 E Philadelphia St
Rapid City SD 57703-1718

Thank you for choosing Monument Health Orthopedic & Specialty Hospital for your healthcare needs. This is an itemization of the services provided during the visit on 03/02/22 through 03/31/22 for Daniel Waisanen.

| Questions? | Call toll free (844) 641-5134<br>Customer service representatives are available<br>Mon - Fri 8:00 AM to 4:30 PM (except holidays). | Coverage(s) on file<br>First Choice Commercial - First Choice<br>Health Asi |
|---|---|---|

**Hospital Charges**

| Date | Rev Code | Procedure Code | Description | Qty | Amount |
|---|---|---|---|---|---|
| Physical Therapy-General | | | | | |
| 03/02/22 | 0420 | 4209714000 | Manual Therapy Tqs 1/> Regions Each 15 Minutes | 2 | $160.00 |
| 03/02/22 | 0420 | 4209703500 | Appl Modality 1/> Areas Ultrasound Ea 15 Min | 1 | $60.00 |
| 03/09/22 | 0420 | 4209714000 | Manual Therapy Tqs 1/> Regions Each 15 Minutes | 2 | $160.00 |
| 03/09/22 | 0420 | 4209703500 | Appl Modality 1/> Areas Ultrasound Ea 15 Min | 1 | $60.00 |
| 03/16/22 | 0420 | 4209714000 | Manual Therapy Tqs 1/> Regions Each 15 Minutes | 1 | $80.00 |
| 03/16/22 | 0420 | 4209703500 | Appl Modality 1/> Areas Ultrasound Ea 15 Min | 1 | $60.00 |
| 03/23/22 | 0420 | 4209714000 | Manual Therapy Tqs 1/> Regions Each 15 Minutes | 2 | $160.00 |
| 03/30/22 | 0421 | 4219711000 | Therapeutic Px 1/> Areas Each 15 Min Exercises | 1 | $80.00 |
| 03/30/22 | 0420 | 4209703500 | Appl Modality 1/> Areas Ultrasound Ea 15 Min | 1 | $60.00 |
| 03/30/22 | 0420 | 4209714000 | Manual Therapy Tqs 1/> Regions Each 15 Minutes | 1 | $80.00 |
| | | | **Total Charges** | | **$960.00** |

**Hospital Payments and Adjustments**

| Date | Description | Amount |
|---|---|---|
| 05/13/22 | First Choice Commercial Payments<br>Coinsurance: $72.00 | -$648.00 |
| 05/13/22 | First Choice Commercial Adjustments | -$240.00 |
| | **Total Insurance Payments and Adjustments** | **-$888.00** |

## ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

Name (s) : WAISANEN, DANIEL          CCB Account No. : ███████

Client Account No: ███████████
Statement Date: 06/02/2022
Date of last charge: 12/31/2021

      For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 60.00

Name of firm: MONUMENT HEALTH

Digitally Signed   SAMANTHA MORRIS
Date:   01/29/2024

### ***STATEMENT OF ACCOUNT***

Date of Service: 12/31/2021
Date of Last Payment:
Balance Due: 60.00
Payments Received: 0.00
Current Amount Owing: 60.00

214

10100

05/31/23

| Acct # | Total Charges | Bal Due on Acct |
|---|---|---|
| | **$800.00** | **$60.00** ✓ |

Daniel Waisanen
2315 E Philadelphia St
Rapid City SD 57703-1718

Thank you for choosing Monument Health Orthopedic & Specialty Hospital  for your healthcare needs.  This is an itemization of the  services provided during the visit on 12/01/21 through 12/31/21 for Daniel Waisanen.

Questions?  Call toll free (844) 641-5134
Customer service representatives are available
Mon - Fri 8:00 AM to 4:30 PM (except holidays).

Coverage(s) on file
First Choice Commercial - First Choice
Health Asi

## Hospital Charges

| Date | Rev Code | Procedure Code | Description | Qty | Amount |
|---|---|---|---|---|---|
| Physical Therapy-General | | | | | |
| 12/01/21 | 0420 | 4209714000 | Manual Therapy Tqs 1/> Regions Each 15 Minutes | 1 | $80.00 |
| 12/01/21 | 0420 | 4209703500 | Appl Modality 1/> Areas Ultrasound Ea 15 Min | 1 | $60.00 |
| 12/08/21 | 0421 | 4219711000 | Therapeutic Px 1/> Areas Each 15 Min Exercises | 1 | $80.00 |
| 12/08/21 | 0420 | 4209703500 | Appl Modality 1/> Areas Ultrasound Ea 15 Min | 1 | $60.00 |
| 12/08/21 | 0420 | 4209714000 | Manual Therapy Tqs 1/> Regions Each 15 Minutes | 1 | $80.00 |
| 12/22/21 | 0420 | 4209714000 | Manual Therapy Tqs 1/> Regions Each 15 Minutes | 2 | $160.00 |
| 12/22/21 | 0420 | 4209703500 | Appl Modality 1/> Areas Ultrasound Ea 15 Min | 1 | $60.00 |
| 12/29/21 | 0421 | 4219711000 | Therapeutic Px 1/> Areas Each 15 Min Exercises | 1 | $80.00 |
| 12/29/21 | 0420 | 4209703500 | Appl Modality 1/> Areas Ultrasound Ea 15 Min | 1 | $60.00 |
| 12/29/21 | 0420 | 4209714000 | Manual Therapy Tqs 1/> Regions Each 15 Minutes | 1 | $60.00 |
| | | | **Total Charges** | | **$800.00** |

## Hospital Payments and Adjustments

| Date | Description | Amount |
|---|---|---|
| 02/08/22 | First Choice Commercial Payments Coinsurance: $31.50 | -$540.00 |
| 05/12/22 | First Choice Commercial Adjustments | -$200.00 |
| | **Total Insurance Payments and Adjustments** | **-$740.00** |

## ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

Name (s) : WAISANEN, CHYENNE M              CCB Account No. : ███████

Client Account No: ████████████
Statement Date: 06/16/2022
Date of last charge: 03/31/2022

For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 64.57

Name of firm: MONUMENT HEALTH

Digitally Signed:   SAMANTHA MORRIS
Date:    01/29/2024

### ***STATEMENT OF ACCOUNT***

Date of Service: 03/31/2022
Date of Last Payment:
Balance Due: 64.57
Payments Received: 0.00
Current Amount Owing: 64.57

214
██████
10100

05/31/23

| Acct # | Total Charges | Bal Due on Acct |
|--------|---------------|-----------------|
|        | **$138.00**   | **$64.57** ✓    |

Chyenne M Waisanen
2315 E Philadelphia St
RAPID CITY SD 57703

Thank you for choosing Monument Health Rapid City Clinic Stocks, Steven, MD for your healthcare needs. This is an itemization of the  services provided during the visit on 03/31/22 through 03/31/22 for Chyenne M Waisanen.

Questions?          Call toll free (844) 641-5134                      Coverage(s) on file
                    Customer service representatives are available    First Choice Commercial – First Choice
                    Mon - Fri 8:00 AM to 4:30 PM (except holidays).   Health Asi

**Professional Charges**

| Svc Dt | Procedure Code | Procedure - Patient-Friendly Name | Proc Qty | Orig Amt | Total Bal |
|--------|---------------|-----------------------------------|----------|----------|-----------|
| 03/31/2022 | 36415 | PR Collection Venous Blood Venipuncture | 1 | $50.00 | |
| 03/31/2022 | 83036 | PR Hemoglobin A1c | 1 | $88.00 | |

**Professional Payments and Adjustments**

| Date | Description | Amount |
|------|-------------|--------|
| 06/14/22 | First Choice Commercial Adjustments | -$73.43 |

**ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU**

Name (s) : WAISANEN, CHYENNE M                    CCB Account No. : ███████

Client Account No: ████████
Statement Date: 06/16/2022
Date of last charge: 03/25/2022

     For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 52.00

Name of firm: MONUMENT HEALTH

Digitally Signed:  SAMANTHA MORRIS
Date:    01/29/2024

**\*\*\*STATEMENT OF ACCOUNT\*\*\***

Date of Service: 03/25/2022
Date of Last Payment:
Balance Due: 52.00
Payments Received: 0.00
Current Amount Owing: 52.00

214

10100

05/31/23

| Acct # | Total Charges | Bal Due on Acct |
|---|---|---|
| ▮▮▮▮▮▮▮▮ | **$952.00** | **$52.00** ✓ |

Chyenne M Waisanen
2315 E Philadelphia St
RAPID CITY SD 57703

Thank you for choosing Monument Health Rapid City Hospital Erenberg, Brian, CRNA for your healthcare needs. This is an itemization of the   services provided during the visit on 03/25/22 through 03/25/22 for Chyenne M Waisanen.

| Questions? | Call toll free (844) 641-5134 | Coverage(s) on file |
|---|---|---|
| | Customer service representatives are available | First Choice Commercial - First Choice |
| | Mon - Fri 8:00 AM to 4:30 PM (except holidays). | Health Asi |

**Professional Charges**

| Svc Dt | Procedure Code | Procedure - Patient-Friendly Name | Proc Qty | Orig Amt | Total Bal |
|---|---|---|---|---|---|
| 03/25/2022 | 00731 | Anesthesia Upper GI Endoscopic Px Nos | 8 | $952.00 | |

**Professional Payments and Adjustments**

| Date | Description | Amount |
|---|---|---|
| 06/16/22 | First Choice Commercial Payments | -$468.00 |
| | Coinsurance: $52.00 | |
| 06/16/22 | First Choice Commercial Adjustments | -$432.00 |
| | Total Insurance Payments and Adjustments | -$900.00 |

ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

Name (s) : WAISANEN, DANIEL                    CCB Account No. : ██████

Client Account No: ████████
Statement Date: 01/02/2022
Date of last charge: 10/31/2021

     For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 45.52

Name of firm: MONUMENT HEALTH

Digitally Signed:   SAMANTHA MORRIS
Date:   01/29/2024

***STATEMENT OF ACCOUNT***

Date of Service: 10/31/2021
Date of Last Payment:
Balance Due: 45.52
Payments Received: 0.00
Current Amount Owing: 45.52

214
██████

10100

05/16/22

| Acct # | Total Charges | Bal Due on Acct |
|---|---|---|
| ▓▓▓▓▓▓ | **$607.00** | **$45.52** ✓ |

Daniel Waisanen
2315 E Philadelphia St
Rapid City SD 57703-1718

Thank you for choosing Monument Health Orthopedic & Specialty Hospital for your healthcare needs. This is an itemization of the services provided during the visit on 10/13/21 through 10/31/21 for Daniel Waisanen.

| Questions? | Call toll free (844) 641-5134 | Coverage(s) on file |
|---|---|---|
| | Customer service representatives are available | First Choice Commercial - First Choice |
| | Mon - Fri 8:00 AM to 4:30 PM (except holidays). | Health Asi |

## Hospital Charges

| Date | Rev Code | Procedure Code | Description | Qty | Amount |
|---|---|---|---|---|---|
| PHYSICAL THERAPY-GENERAL | | | | | |
| 10/13/21 | 0424 | 4249716200 | PT EVAL VISIT MODERATE COMPLEX | 1 | $225.00 |
| 10/13/21 | 0420 | 4209701200 | APPL MODALITY 1/> AREAS TRACTION MECHANICAL | 1 | $62.00 |
| 10/25/21 | 0420 | 4209714000 | MANUAL THERAPY TQS 1/> REGIONS EACH 15 MINUTES | 2 | $160.00 |
| 10/27/21 | 0420 | 4209753000 | THERAPEUT ACTVITY DIRECT PT CONTACT EACH 15 MIN | 1 | $80.00 |
| 10/27/21 | 0420 | 4209714000 | MANUAL THERAPY TQS 1/> REGIONS EACH 15 MINUTES | 1 | $80.00 |
| | | | **Total Charges** | | **$607.00** |

## Hospital Payments and Adjustments

| Date | Description | Amount |
|---|---|---|
| 12/16/21 | First Choice Commercial Payments | -$409.73 |
| | Coinsurance: $45.52 | |
| 12/16/21 | First Choice Commercial Adjustments | -$151.75 |
| | **Total Insurance Payments and Adjustments** | **-$561.48** |

## ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

Name (s) : WAISANEN, DANIEL          CCB Account No. : █████

Client Account No: █████████
Statement Date: 02/01/2022
Date of last charge: 11/23/2021

       For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 25.00

Name of firm: MONUMENT HEALTH

Digitally Signed:   SAMANTHA MORRIS
Date:   01/29/2024

### ***STATEMENT OF ACCOUNT***

Date of Service: 11/23/2021
Date of Last Payment:
Balance Due: 25.00
Payments Received: 0.00
Current Amount Owing: 25.00

214
████████
10100

05/16/22

| Acct # | Total Charges | Bal Due on Acct |
|---|---|---|
| | **$118.00** | **$25.00** ✓ |

Daniel Waisanen
2315 E Philadelphia St
Rapid City SD 57703-1718

Thank you for choosing Monument Health Rapid City Clinic Gregory A Brandenberg, MD PhD for your healthcare needs. This is an itemization of the services provided during the visit on 11/23/21 through 11/23/21 for Daniel Waisanen.

Questions?       Call toll free (844) 641-5134                Coverage(s) on file
                 Customer service representatives are available   First Choice Commercial - First Choice
                 Mon - Fri 8:00 AM to 4:30 PM (except holidays).  Health Asi

**Professional Charges**

| Svc Dt | Procedure Code | Procedure Description | Proc Qty | Orig Amt | Total Bal |
|---|---|---|---|---|---|
| 11/23/2021 | 99212 | OFFICE/OUTPATIENT ESTABLISHED SF MDM 10-19 MIN | 1 | $118.00 | |

**Professional Payments and Adjustments**

| Date | Description | Amount |
|---|---|---|
| 01/11/22 | First Choice Commercial Payments Copay: $25.00 | -$54.45 |
| 01/11/22 | First Choice Commercial Adjustments | -$38.55 |
| | Total Insurance Payments and Adjustments | -$93.00 |

**ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU**

Name (s) : WAISANEN, DANIEL                     CCB Account No. : ███████

Client Account No: ███████
Statement Date: 04/03/2022
Date of last charge: 01/31/2022

      For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 16.50

Name of firm: MONUMENT HEALTH

Digitally Signed:   SAMANTHA MORRIS
Date:   01/29/2024

**\*\*\*STATEMENT OF ACCOUNT\*\*\***

Date of Service: 01/31/2022
Date of Last Payment:
Balance Due: 16.50
Payments Received: 0.00
Current Amount Owing: 16.50

214
██████
10100

05/31/23

| Acct # | Total Charges | Bal Due on Acct |
|--------|---------------|-----------------|
|        | **$220.00**   | **$16.50** ✓    |

Daniel Waisanen
2315 E Philadelphia St
Rapid City SD 57703-1718

Thank you for choosing Monument Health Orthopedic & Specialty Hospital for your healthcare needs. This is an itemization of the services provided during the visit on 01/26/22 through 01/31/22 for Daniel Waisanen.

| Questions? | Call toll free (844) 641-5134 | Coverage(s) on file |
|------------|-------------------------------|---------------------|
|            | Customer service representatives are available | First Choice Commercial - First Choice |
|            | Mon - Fri 8:00 AM to 4:30 PM (except holidays). | Health Asi |

**Hospital Charges**

| Date | Rev Code | Procedure Code | Description | Qty | Amount |
|------|----------|----------------|-------------|-----|--------|
| Physical Therapy-General | | | | | |
| 01/26/22 | 0421 | 4219711000 | Therapeutic Px 1/> Areas Each 15 Min Exercises | 1 | $80.00 |
| 01/26/22 | 0420 | 4209703500 | Appl Modality 1/> Areas Ultrasound Ea 15 Min | 1 | $60.00 |
| 01/26/22 | 0420 | 4209714000 | Manual Therapy Tqs 1/> Regions Each 15 Minutes | 1 | $80.00 |
|          |      |            | **Total Charges** |   | **$220.00** |

**Hospital Payments and Adjustments**

| Date | Description | Amount |
|------|-------------|--------|
| 03/10/22 | First Choice Commercial Payments | -$148.50 |
|          | Coinsurance: $16.50 | |
| 03/10/22 | First Choice Commercial Adjustments | -$55.00 |
|          | **Total Insurance Payments and Adjustments** | **-$203.50** |

## ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

Name (s) : WAISANEN, DANIEL               CCB Account No. : █████

Client Account No: ██████████
Statement Date: 05/03/2022
Date of last charge: 02/28/2022

       For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 28.50

Name of firm: MONUMENT HEALTH

Digitally Signed:   SAMANTHA MORRIS
Date:    01/29/2024

### ***STATEMENT OF ACCOUNT***

Date of Service: 02/28/2022
Date of Last Payment:
Balance Due: 28.50
Payments Received: 0.00
Current Amount Owing: 28.50

214
█████
10100

05/31/23

| Acct # | Total Charges | Bal Due on Acct |
|---|---|---|
| ▉▉▉▉▉▉▉▉ | **$380.00** | **$28.50** ✓ |

Daniel Waisanen
2315 E Philadelphia St
Rapid City SD 57703-1718

Thank you for choosing Monument Health Orthopedic & Specialty Hospital for your healthcare needs. This is an itemization of the services provided during the visit on 02/10/22 through 02/28/22 for Daniel Waisanen.

| Questions? | Call toll free (844) 641-5134<br>Customer service representatives are available<br>Mon - Fri 8:00 AM to 4:30 PM (except holidays). | Coverage(s) on file<br>First Choice Commercial - First Choice<br>Health Asi |
|---|---|---|

**Hospital Charges**

| Date | Rev Code | Procedure Code | Description | Qty | Amount |
|---|---|---|---|---|---|
| Physical Therapy-General | | | | | |
| 02/10/22 | 0420 | 4209714000 | Manual Therapy Tqs 1/> Regions Each 15 Minutes | 2 | $160.00 |
| 02/16/22 | 0421 | 4219711000 | Therapeutic Px 1/> Areas Each 15 Min Exercises | 1 | $80.00 |
| 02/15/22 | 0420 | 4209703500 | Appl Modality 1/> Areas Ultrasound Ea 15 Min | 1 | $60.00 |
| 02/15/22 | 0420 | 4209714000 | Manual Therapy Tqs 1/> Regions Each 15 Minutes | 1 | $80.00 |
| | | | **Total Charges** | | **$380.00** |

**Hospital Payments and Adjustments**

| Date | Description | Amount |
|---|---|---|
| 04/08/22 | First Choice Commercial Payments<br>Non-covered: $28.50 | -$256.50 |
| 04/08/22 | First Choice Commercial Adjustments | -$95.00 |
| | **Total Insurance Payments and Adjustments** | **-$351.50** |

**ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU**

Name (s) : WAISANEN, DANIEL          CCB Account No. : ███████

Client Account No: ███████████
Statement Date: 06/02/2022
Date of last charge: 04/30/2022

      For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 33.00

Name of firm: MONUMENT HEALTH

Digitally Signed:   SAMANTHA MORRIS
Date:    01/29/2024 .

**\*\*\*STATEMENT OF ACCOUNT\*\*\***

Date of Service: 04/30/2022
Date of Last Payment:
Balance Due: 33.00
Payments Received: 0.00
Current Amount Owing: 33.00

214
██████
10100

05/31/23

| Acct # | Total Charges | Bal Due on Acct |
|--------|---------------|-----------------|
|        | **$440.00** | **$33.00** ✓ |

Daniel Waisanen
2315 E Philadelphia St
Rapid City SD 57703-1718

Thank you for choosing Monument Health Orthopedic & Specialty Hospital  for your healthcare needs.  This is an itemization of the  services provided during the visit on 04/15/22 through 04/30/22 for Daniel Waisanen.

| Questions? | Call toll free (844) 641-5134 | Coverage(s) on file |
|---|---|---|
| | Customer service representatives are available | First Choice Commercial - First Choice |
| | Mon - Fri 8:00 AM to 4:30 PM (except holidays). | Health Asi |

**Hospital Charges**

| Date | Rev Code | Procedure Code | Description | Qty | Amount |
|------|----------|----------------|-------------|-----|--------|
| Physical Therapy-General | | | | | |
| 04/15/22 | 0421 | 4219711000 | Therapeutic Px 1/> Areas Each 15 Min Exercises | 1 | $80.00 |
| 04/15/22 | 0420 | 4209703500 | Appl Modality 1/> Areas Ultrasound Ea 15 Min | 1 | $60.00 |
| 04/15/22 | 0420 | 4209714000 | Manual Therapy Tqs 1/> Regions Each 15 Minutes | 1 | $80.00 |
| 04/28/22 | 0421 | 4219711000 | Therapeutic Px 1/> Areas Each 15 Min Exercises | 1 | $80.00 |
| 04/28/22 | 0420 | 4209703500 | Appl Modality 1/> Areas Ultrasound Ea 15 Min | 1 | $60.00 |
| 04/28/22 | 0420 | 4209714000 | Manual Therapy Tqs 1/> Regions Each 15 Minutes | 1 | $80.00 |
| | | | **Total Charges** | | **$440.00** |

**Hospital Payments and Adjustments**

| Date | Description | Amount |
|------|-------------|--------|
| 05/24/22 | First Choice Commercial Payments | -$297.00 |
| | Coinsurance: $33.00 | |
| 05/24/22 | First Choice Commercial Adjustments | -$110.00 |
| | **Total Insurance Payments and Adjustments** | **-$407.00** |

## ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

Name (s) : WAISANEN, CHYENNE M              CCB Account No. : ████████

Client Account No: ████████
Statement Date: 01/12/2022
Date of last charge: 09/01/2021

　　　　For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 25.00

Name of firm: MONUMENT HEALTH

Digitally Signed:　SAMANTHA MORRIS
Date:　01/29/2024

### ***STATEMENT OF ACCOUNT***

Date of Service: 09/01/2021
Date of Last Payment:
Balance Due: 25.00
Payments Received: 0.00
Current Amount Owing: 25.00

214
████████
10100

05/31/23

| Acct # | Total Charges | Bal Due on Acct |
|---|---|---|
| | **$128.00** | **$25.00** ✓ |

Chyenne M Waisanen
2315 E Philadelphia St
RAPID CITY SD 57703

Thank you for choosing Monument Health Orthopedic & Specialty Hospital Leong, Wesley M, DPM for your healthcare needs. This is an itemization of the services provided during the visit on 09/01/21 through 09/01/21 for Chyenne M Waisanen.

| Questions? | Call toll free (844) 641-5134 | Coverage(s) on file |
|---|---|---|
| | Customer service representatives are available | First Choice Commercial - First Choice |
| | Mon - Fri 8:00 AM to 4:30 PM (except holidays). | Health Asi |

**Professional Charges**

| Svc Dt | Procedure Code | Procedure - Patient-Friendly Name | Proc Qty | Orig Amt | Total Bal |
|---|---|---|---|---|---|
| 09/01/2021 | 73630 | X-Ray Foot 3+ Vw | 1 | $64.00 | |
| 09/01/2021 | 73630 | X-Ray Foot 3+ Vw | 1 | $64.00 | |

**Professional Payments and Adjustments**

| Date | Description | Amount |
|---|---|---|
| 11/02/21 | Commercial Insurance Payments | -$56.58 |
| | Copay: $25.00 | |
| 11/02/21 | Commercial Insurance Adjustments | -$46.42 |
| | Total Insurance Payments and Adjustments | -$103.00 |

ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

Name (s) : WAISANEN, CHYENNE M                    CCB Account No. : ███████

Client Account No █████████
Statement Date: 02/13/2022
Date of last charge: 12/03/2021

        For valuable consideration, the undersigned does hereby assign and transfer unto the above
listed agency the account, and does hereby state that the account is just and owing, true and correct,
and does authorize the agency to bring suit in its own name and do any and all things necessary to
enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 25.00

Name of firm: MONUMENT HEALTH

Digitally Signed:   SAMANTHA MORRIS
Date:    01/29/2024

***STATEMENT OF ACCOUNT***

Date of Service: 12/03/2021
Date of Last Payment:
Balance Due: 25.00
Payments Received: 0.00
Current Amount Owing: 25.00

214
███████
10100

05/31/23

| Acct # | Total Charges | Bal Due on Acct |
|---|---|---|
| ██████ | $655.00 | $25.00 ✓ |

Chyenne M Waisanen
2315 E Philadelphia St
RAPID CITY SD 57703

Thank you for choosing Monument Health Rapid City Clinic Johnson, Nicole E, CNP for your healthcare needs. This is an itemization of the services provided during the visit on 12/03/21 through 12/03/21 for Chyenne M Waisanen.

| Questions? | Call toll free (844) 641-5134 | Coverage(s) on file |
|---|---|---|
| | Customer service representatives are available | First Choice Commercial - First Choice |
| | Mon - Fri 8:00 AM to 4:30 PM (except holidays). | Health Asi |

**Professional Charges**

| Svc Dt | Procedure Code | Procedure - Patient-Friendly Name | Proc Qty | Orig Amt | Total Bal |
|---|---|---|---|---|---|
| 12/03/2021 | 36415 | PR Collection Venous Blood Venipuncture | 1 | $50.00 | |
| 12/03/2021 | 80069 | PR Renal Function Panel | 1 | $167.00 | |
| 12/03/2021 | 82575 | PR Creat Clearance | 1 | $140.00 | |
| 12/03/2021 | 84156 | PR Protein-Quant Urine | 1 | $104.00 | |
| 12/03/2021 | 99213 | Office/Outpatient Established Low Mdm 20-29 Min | 1 | $194.00 | |

**Professional Payments and Adjustments**

| Date | Description | Amount |
|---|---|---|
| 01/28/22 | First Choice Commercial Payments Copay: $26.00 | -$141.96 |
| 01/28/22 | First Choice Commercial Adjustments | -$488.04 |
| | Total Insurance Payments and Adjustments | -$630.00 |

**ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU**

Name (s) : WAISANEN, CHYENNE M                    CCB Account No. :

Client Account No:
Statement Date: 02/13/2022
Date of last charge: 12/07/2021

     For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 25.00

Name of firm: MONUMENT HEALTH

Digitally Signed:   SAMANTHA MORRIS
Date:   01/29/2024

**\*\*\*STATEMENT OF ACCOUNT\*\*\***

Date of Service: 12/07/2021
Date of Last Payment:
Balance Due: 25.00
Payments Received: 0.00
Current Amount Owing: 25.00

214

10100

05/31/23

| Acct # | Total Charges | Bal Due on Acct |
|--------|---------------|-----------------|
| ▓▓▓▓ | **$534.00** | **$25.00** ✓ |

Chyenne M Waisanen
2315 E Philadelphia St
RAPID CITY SD 57703

Thank you for choosing Monument Health Rapid City Clinic Johnson, Nicole E, CNP for your healthcare needs.  This is an itemization of the services provided during the visit on 12/07/21 through 12/07/21 for Chyenne M Waisanen.

Questions?        Call toll free (844) 641-5134                    Coverage(s) on file
                  Customer service representatives are available    First Choice Commercial – First Choice
                  Mon – Fri 8:00 AM to 4:30 PM (except holidays).   Health Asi

**Professional Charges**

| Svc Dt | Procedure Code | Procedure - Patient-Friendly Name | Proc Qty | Orig Amt | Total Bal |
|--------|----------------|-----------------------------------|----------|----------|-----------|
| 12/07/2021 | 76770 | US,Retroperit, B-Scan/Real Time,Complete | 1 | $212.00 | |
| 12/07/2021 | 93976 | Duplex Abd/Pel Vaso Study,Limitd | 1 | $322.00 | |

**Professional Payments and Adjustments**

| Date | Description | Amount |
|------|-------------|--------|
| 01/28/22 | First Choice Commercial Payments | -$279.89 |
| | Copay: $25.00 | |
| 01/28/22 | First Choice Commercial Adjustments | -$229.11 |
| | **Total Insurance Payments and Adjustments** | **-$509.00** |

## ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU

Name (s) : WAISANEN, CHYENNE M                      CCB Account No. █████

Client Account No: ████████
Statement Date: 03/16/2022
Date of last charge: 01/03/2022

For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 30.00

Name of firm: MONUMENT HEALTH

Digitally Signed:   SAMANTHA MORRIS
Date:    01/29/2024

### ***STATEMENT OF ACCOUNT***

Date of Service: 01/03/2022
Date of Last Payment:
Balance Due: 30.00
Payments Received: 0.00
Current Amount Owing: 30.00

214
█████
10100

05/31/23

| Acct # | Total Charges | Bal Due on Acct |
|--------|---------------|-----------------|
|        | $1,054.00     | $30.00 ✓        |

Chyenne M Waisanen
2315 E Philadelphia St
RAPID CITY SD 57703

Thank you for choosing Monument Health Rapid City Clinic Johnson, Nicole E, CNP for your healthcare needs.  This
is an itemization of the services provided during the visit on 01/03/22 through 01/03/22 for Chyenne M Waisanen.

| Questions? | Call toll free (844) 641-5134 | Coverage(s) on file |
|------------|-------------------------------|---------------------|
|            | Customer service representatives are available | First Choice Commercial - First Choice |
|            | Mon - Fri 8:00 AM to 4:30 PM (except holidays). | Health Asi |

**Professional Charges**

| Svc Dt | Procedure Code | Procedure - Patient-Friendly Name | Proc Qty | Orig Amt | Total Bal |
|--------|----------------|-----------------------------------|----------|----------|-----------|
| 01/03/2022 | 36415 | PR Collection Venous Blood Venipuncture | 1 | $50.00 | |
| 01/03/2022 | 80069 | PR Renal Function Panel | 1 | $167.00 | |
| 01/03/2022 | 81001 | PR Urine Auto With Micro | 1 | $69.00 | |
| 01/03/2022 | 82570 | PR Creatinine Body Fluid | 1 | $83.00 | |
| 01/03/2022 | 83735 | PR Magnesium | 1 | $92.00 | |
| 01/03/2022 | 84156 | PR Protein-Quant Urine | 1 | $104.00 | |
| 01/03/2022 | 84550 | PR Uric Acid Blood | 1 | $60.00 | |
| 01/03/2022 | 85018 | PR Hemoglobin | 1 | $47.00 | |
| 01/03/2022 | 87077 | PR Bacterial ID | 1 | $78.00 | |
| 01/03/2022 | 87088 | PR Urine Culture | 1 | $77.00 | |
| 01/03/2022 | 87186 | PR Susceptability Aerobic Mic | 1 | $227.00 | |

**Professional Payments and Adjustments**

| Date | Description | Amount |
|------|-------------|--------|
| 02/25/22 | First Choice Commercial Payments | -$64.37 |
|          | Copay: $30.00 | |
| 02/25/22 | First Choice Commercial Adjustments | -$959.63 |
|          | Total Insurance Payments and Adjustments | -$1,024.00 |

**ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU**

Name (s) : WAISANEN, CHYENNE M          CCB Account No. : ███████

Client Account No: ███████████
Statement Date: 03/16/2022
Date of last charge: 01/28/2022

For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 30.00

Name of firm: MONUMENT HEALTH

Digitally Signed:   SAMANTHA MORRIS
Date:    01/29/2024

**\*\*\*STATEMENT OF ACCOUNT\*\*\***

Date of Service: 01/28/2022
Date of Last Payment:
Balance Due: 30.00
Payments Received: 0.00
Current Amount Owing: 30.00

214

10100

05/31/23

| Acct # | Total Charges | Bal Due on Acct |
|---|---|---|
| | **$962.00** | **$30.00** ✓ |

Chyenne M Waisanen
2315 E Philadelphia St
RAPID CITY SD 57703

Thank you for choosing Monument Health Rapid City Clinic Johnson, Nicole E, CNP for your healthcare needs. This is an itemization of the services provided during the visit on 01/28/22 through 01/28/22 for Chyenne M Waisanen.

Questions?     Call toll free (844) 641-5134     Coverage(s) on file
               Customer service representatives are available     First Choice Commercial - First Choice
               Mon - Fri 8:00 AM to 4:30 PM (except holidays).     Health Asi

**Professional Charges**

| Svc Dt | Procedure Code | Procedure - Patient-Friendly Name | Proc Qty | Orig Amt | Total Bal |
|---|---|---|---|---|---|
| 01/28/2022 | 36415 | PR Collection Venous Blood Venipuncture | 1 | $50.00 | |
| 01/28/2022 | 80069 | PR Renal Function Panel | 1 | $167.00 | |
| 01/28/2022 | 81001 | PR Urine Auto With Micro | 1 | $69.00 | |
| 01/28/2022 | 82570 | PR Creatinine Body Fluid | 1 | $83.00 | |
| 01/28/2022 | 84156 | PR Protein-Quant Urine | 1 | $104.00 | |
| 01/28/2022 | 84550 | PR Uric Acid Blood | 1 | $60.00 | |
| 01/28/2022 | 85018 | PR Hemoglobin | 1 | $47.00 | |
| 01/28/2022 | 87077 | PR Bacterial ID | 1 | $78.00 | |
| 01/28/2022 | 87088 | PR Urine Culture | 1 | $77.00 | |
| 01/28/2022 | 87186 | PR Susceptability Aerobic Mic | 1 | $227.00 | |

**Professional Payments and Adjustments**

| Date | Description | Amount |
|---|---|---|
| 03/11/22 | First Choice Commercial Payments<br>Copay: $30.00 | -$54.32 |
| 03/11/22 | First Choice Commercial Adjustments | -$877.68 |
| | Total Insurance Payments and Adjustments | -$932.00 |

**ASSIGNMENT OF ACCOUNT TO CREDIT COLLECTIONS BUREAU**

Name (s) : WAISANEN, CHYENNE M                    CCB Account No. : ███████

Client Account No: ██████████
Statement Date: 03/16/2022
Date of last charge: 01/05/2022

       For valuable consideration, the undersigned does hereby assign and transfer unto the above listed agency the account, and does hereby state that the account is just and owing, true and correct, and does authorize the agency to bring suit in its own name and do any and all things necessary to enforce collection of the account as agent for the assignor.

Please confirm current amount owing: $ 30.00

Name of firm: MONUMENT HEALTH

Digitally Signed:  SAMANTHA MORRIS
Date:    01/29/2024

**\*\*\*STATEMENT OF ACCOUNT\*\*\***

Date of Service: 01/05/2022
Date of Last Payment:
Balance Due: 30.00
Payments Received: 0.00
Current Amount Owing: 30.00

214
██████
10100

05/31/23

| Acct # | Total Charges | Bal Due on Acct |
|--------|---------------|-----------------|
| ■■■■■■ | $545.00 | $30.00 ✓ |

Chyenne M Waisanen
2315 E Philadelphia St
RAPID CITY SD 57703

Thank you for choosing Monument Health Rapid City Clinic Johnson, Nicole E, CNP for your healthcare needs. This is an itemization of the services provided during the visit on 01/05/22 through 01/05/22 for Chyenne M Waisanen.

| Questions? | Call toll free (844) 641-5134 | Coverage(s) on file |
|------------|-------------------------------|---------------------|
| | Customer service representatives are available | First Choice Commercial - First Choice |
| | Mon - Fri 8:00 AM to 4:30 PM (except holidays). | Health Asi |

**Professional Charges**

| Svc Dt | Procedure Code | Procedure - Patient-Friendly Name | Proc Qty | Orig Amt | Total Bal |
|--------|----------------|-----------------------------------|----------|----------|-----------|
| 01/05/2022 | 76770 | US,Retroperit, B-Scan/Real Time,Complete | 1 | $212.00 | |
| 01/05/2022 | 99214 | Office/Outpatient Established Mod Mdm 30-39 Min | 1 | $333.00 | |

**Professional Payments and Adjustments**

| Date | Description | Amount |
|------|-------------|--------|
| 02/25/22 | First Choice Commercial Payments | -$274.48 |
| | Copay: $30.00 | |
| 02/25/22 | First Choice Commercial Adjustments | -$240.52 |
| | **Total Insurance Payments and Adjustments** | **-$515.00** |

STATE OF SOUTH DAKOTA

COUNTY OF   PENNINGTON

CREDIT COLLECTIONS BUREAU

VS.

CHYENNE M WAISANEN
DANIEL WAISANEN

IN SMALL CLAIMS COURT

SEVENTH    JUDICIAL CIRCUIT

PLAINTIFF'S STATEMENT OF SMALL CLAIMS
51SMC24-000747

SMALL CLAIMS CASE NO.: _____

| Describe the basis for your claim: (use additional sheet if necessary) | | | Past due accounts. |
|---|---|---|---|
| **CLIENT** | **PRINCIPAL** | **INTEREST** | **TOTAL** |
| MONUMENT HEALTH | $205.01 | $213.92 | $418.93 |
| BLACK HILLS URGENT CARE | $199.22 | $15.78 | $215.00 |
| SCOVEL PSYCHOLOGICAL | $186.60 | $48.70 | $235.30 |
| ACTION MECHANICAL | $207.04 | $39.14 | $246.18 |
| BLACK HILLS URGENT CARE | $72.00 | $22.91 | $94.91 |
| MONUMENT HEALTH | $1,009.83 | $150.64 | $1,160.47 |
| MONUMENT HEALTH | $213.22 | $65.19 | $278.41 |
| DAKOTA RADIOLOGY | $214.91 | $78.96 | $293.87 |
| RAPID CITY EMERGENCY SERVICES | $83.00 | $16.44 | $99.44 |
| MONUMENT HEALTH | $82.95 | $26.31 | $109.26 |
| MONUMENT HEALTH | $600.00 | $147.21 | $747.21 |
| MONUMENT HEALTH | $340.00 | $83.42 | $423.42 |
| MONUMENT HEALTH | $277.00 | $58.05 | $335.05 |
| MONUMENT HEALTH | $324.90 | $89.05 | $413.95 |
| MONUMENT HEALTH | $91.40 | $12.29 | $103.69 |
| MONUMENT HEALTH | $72.00 | $19.32 | $91.32 |
| MONUMENT HEALTH | $60.00 | $16.10 | $76.10 |
| MONUMENT HEALTH | $64.57 | $15.84 | $80.41 |
| MONUMENT HEALTH | $52.00 | $12.75 | $64.75 |
| MONUMENT HEALTH | $45.52 | $15.10 | $60.62 |
| MONUMENT HEALTH | $25.00 | $7.93 | $32.93 |
| MONUMENT HEALTH | $16.50 | $16.50 | $4.82 |
| MONUMENT HEALTH | $28.50 | $28.50 | $8.06 |
| MONUMENT HEALTH | $33.00 | $33.00 | $8.86 |
| MONUMENT HEALTH | $25.00 | $25.00 | $8.15 |
| MONUMENT HEALTH | $25.00 | $25.00 | $7.86 |
| MONUMENT HEALTH | $25.00 | $25.00 | $7.86 |
| MONUMENT HEALTH | $30.00 | $30.00 | $9.09 |
| MONUMENT HEALTH | $30.00 | $30.00 | $9.09 |
| MONUMENT HEALTH | $30.00 | $30.00 | $9.09 |

| | | |
|---|---|---|
| PRINCIPAL | $4,669.17 | (Exclude interest and filing fees) |
| INTEREST | $1,398.05 | |
| SUB-TOTAL | $6,067.22 | |
| FILING FEES | $48.82 | |
| PLAINTIFF'S TOTAL | $6,116.04 | |

Additional fees charged for service options listed below.  It is the Plaintiff's responsibility to contact the sheriff or process server for fee amounts.

| | Sheriff Service only--no certified mail. |
|---|---|
| X | Sheriff/Personal Service requested if certified mail returned unserved. |

J & J ATTORNEY SERVICES

Tawnya L Hofmaier

Plaintiff's Printed Name
*Legal Department Director*

/s/ Tawnya L Hofmaier

Signature of Plaintiff

April 24, 2024
Date

***COPY OF THE JUDGMENT IS REQUESTED***

CCB Acct No.: ▮▮▮▮▮



**MONUMENT**
HEALTH
MH Rapid City Clinic Fairmont Blvd

EFINAGR

Waisanen, Chyenne M
DOB: 4/██████o. Female
MRN: █████
CSN: ███████
DOS: 4/9/2024



# Financial Responsibility Agreement
Page 1 of 1

1. **Patient Portion Due at Time of Service.** The Undersigned, whether as patient or as agent, acknowledges all co-payments must be paid at time of service. This arrangement is part of the patient's contract with his or her insurance company. For procedures, the Undersigned will be asked to pay a co-insurance and deductible. Upon request, an estimate of services will be given prior to the service being performed.

2. **Insurance and Claims Submission.** The Undersigned, whether as patient or as agent, understands Monument Health will submit insurance claims to most insurance companies; however, if Monument Health does not participate with the patient's insurance plan, it will be the responsibility of the Undersigned to pay-in-full at time of service. The Undersigned should be aware that some or all of the services may be non-covered by insurers, and many insurance companies require pre-authorization for various procedures. Monument Health will assist in obtaining the necessary pre-authorizations when needed; however, it is the responsibility of the Undersigned to determine if the patient's insurance company requires one. Failure to obtain the necessary pre-authorization or second opinion may result in a reduction or denial of benefits by the insurance company, which would result in the requirement of the Undersigned to pay the full amount due. For employer-requested services, Monument Health will confirm pre-authorization and guarantee of payment prior to the service being rendered.

3. **Assignment of Insurance Benefits.** If the patient's care is covered by insurance, the Undersigned agrees the insurance company is to pay Monument Health directly for the patient's care. Additionally, certain physicians (e.g., anesthesiologists, oncologists, pathologists, and radiologists) may participate in the patient's care. These physicians are not employees or agents of Monument Health, and they will bill separately for their care. The person signing this form, whether he or she is the patient or is signing for the patient, authorizes direct payment to Monument Health and/or the physicians of any insurance benefits, settlements, or awards otherwise payable for this outpatient service (including emergency services if rendered) at a rate not to exceed the respective charges of Monument Health and/or the physicians. The Undersigned understands he or she is financially responsible for charges not paid by insurance or any other third-party payor.

4. **Promise to Pay Account.** The Undersigned agrees that he or she will pay for the care the patient receives. The person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the account charges in accordance with the rates and policies of Monument Health. If the patient is uninsured or has a large deductible, payment arrangements can be made with a Monument Health Patient Financial Counselor. The Undersigned also agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory amount per year.

5. **Guarantee of Account.** The Undersigned understands that Monument Health must be paid for the care the patient receives. The Undersigned may expect that someone else is going to pay for the patient's care, as there may be insurance coverage, or the patient may have been injured due to someone else's negligence, or there may be other circumstances; however, the Undersigned agrees to be personally responsible for paying for the care received. Even if the Undersigned believes another party is obligated to pay for the care, he or she still agrees to personally guarantee Monument Health will be paid for the care the patient receives. Therefore, the person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the charges in accordance with the rates and policies of Monument Health. He or she agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory allowable interest rate per year.

6. **Minor Patients.** The Undersigned understands that the parent or guardian accompanying a minor is responsible for payment. An unaccompanied minor will not be seen without a minor consent form signed by the parent or guardian, and the minor must bring his or her co-payment or patient portion due at the time of service.

Signature captured by Chyenne M Waisanen at 4/9/2024 09:27 AM

Chyenne M Waisanen

**Jasmine Tomek**
Witness

IN THE STATE OF SOUTH DAKOTA
COUNTY OF PENNINGTON

IN CIVIL COURT
7TH JUDICIAL CIRCUIT

| | |
|---|---|
| Chyenne Waisanen,<br>Daniel Waisanen<br>    Plaintiff.<br><br>V.<br><br>Credit Collection Bureau<br>    Defendant. | Case no.:  S\C\V84 - 00\7\7<br><br>Affidavit for Motion for Temporary Restraining Order |

### Affidavit for Motion for Temporary Restraining Order

We, Chyenne and Daniel Waisanen, being duly sworn, depose and state as follows:

### I. Factual Background

1. On June 20, 2024, a default judgment was entered against us for an alleged debt totaling $6,116.04, including costs and pre-judgment interest.

2. On October 18, 2024, a writ of execution was issued, resulting in the seizure of our 2016 Ford F150 Supercrew Pickup (VIN: 1FTEW1EG3GFC33149), valued at approximately $27,000, to satisfy the alleged debt.

### II. Fraudulent and Improper Assignment of Debt

3. The alleged debt originates from medical services, but no signed contract exists between us and the medical provider.

4. The Defendant's documentation lacks proof of ownership or validity of the assigned debt, violating SDCL § 57A-9-203(b)(3).

5. The assignment of debt includes only itemized billing statements and lacks original agreements or consent forms.

6. The digital signature on the assignment lacks authentication metadata (e.g., IP address or timestamp), making its validity questionable under SDCL § 15-6-56(e).

7. Account numbers on the hospital's original consent forms do not match those on the assignments provided by the Defendant, undermining the assignment's validity.

### III. Irreparable Harm

8. The seized vehicle is our work truck and critical to our small renovation business.

9. Without the vehicle, we are unable to transport materials, tools, and equipment necessary for completing renovation projects, directly jeopardizing our ability to generate income and sustain our livelihood.

10. The seizure has caused immediate and irreparable harm to our business and personal lives, as it is also essential for daily transportation.

11. The value of the seized vehicle significantly exceeds the amount of the alleged debt, resulting in an unjust windfall for the Defendant and an unnecessary burden on us.

### IV. Legal Basis for Relief

12. Under SDCL § 57A-9-203(b), no valid security agreement exists between us and the Defendant, and they lack the right to enforce any interest in the vehicle.

13. Defendant has failed to provide clear evidence of a valid assignment of the alleged debt, as required under SDCL §§ 57A-3-203(b) and 57A-3-309(b).

14. The sale of the vehicle would cause immediate and irreparable harm to our business and livelihood, warranting equitable relief under SDCL § 21-29-2.

### V. Relief Requested

15. We respectfully request that the Court:

    - Issue a temporary restraining order halting the sale of the 2016 Ford F150 Supercrew Pickup;

    - Schedule a hearing to determine the continuation of the restraining order as a preliminary injunction; and

    - Grant any other relief the Court deems just and equitable.

We affirm under penalty of perjury that the foregoing is true and correct to the best of our knowledge.

CHYENNE WAISANEN
2315 E Philadelphia St
Rapid City SD 57703
N/A

DANIEL WAISANEN
2315 E Philadelphia St
Rapid City SD 57703
NA

*Date: 11. 26. 2024

Subscribed and sworn to before me this 26 day of Nov , 2024

Notary Public Signature: _____

My Commission Expires: _____

FILED
Pennington County, SD
IN CIRCUIT COURT

NOV 26 2024

Amber Watkins, Clerk of Courts
By_____Deputy

**SDCL 57A-9-203-** Attachment and enforceability of security interest--Proceeds--Supporting obligations--Formal requisites.

(a) A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment.

(b) Except as otherwise provided in subsections (c) through (i), a security interest is enforceable against the debtor and third parties with respect to the collateral only if:

    (1)   Value has been given;

    (2)   The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and

    (3)   One of the following conditions is met:

        (A)   The debtor has signed a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned;

        (B)   The collateral is not a certificated security and is in the possession of the secured party under § 57A-9-313 pursuant to the debtor's security agreement;

        (C)   The collateral is a certificated security in registered form and the security certificate has been delivered to the secured party under § 57A-8-301 pursuant to the debtor's security agreement;

        (D)   The collateral is controllable accounts, controllable electronic records, controllable payment intangibles, deposit accounts, electronic documents, electronic money, investment property, or letter-of-credit rights, and the secured party has control under § 57A-7-106, 57A-9-104, 57A-9-105.1, 57A-9-106, 57A-9-107, or 57A-9-107.1 pursuant to the debtor's security agreement; or

        (E)   The collateral is chattel paper and the secured party has possession and control under § 57A-9-314.1 pursuant to the debtor's security agreement.

(c) Subsection (b) is subject to § 57A-4-210 on the security interest of a collecting bank, § 57A-5-118 on the security interest of a letter-of-credit issuer or nominated person, § 57A-9-110 on a security interest arising under chapter 57A-2 or 57A-2A, and § 57A-9-206 on security interests in investment property.

(d) A person becomes bound as debtor by a security agreement entered into by another person if, by operation of law other than this chapter or by contract:

    (1)   The security agreement becomes effective to create a security interest in the person's property; or

    (2)   The person becomes generally obligated for the obligations of the other person, including the obligation secured under the security agreement, and acquires or succeeds to all or substantially all of the assets of the other person.

(e) If a new debtor becomes bound as debtor by a security agreement entered into by another person:

    (1)   The agreement satisfies subsection (b)(3) with respect to existing or after-acquired property of the new debtor to the extent the property is described in the agreement; and

## 57A-3-309, Enforcement of lost, destroyed, or stolen instrument.

(a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, § 57A-3-308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

**Source:** SL 1994, ch 367, § 3-309.

11/25/24, 1:25 PM Case 5:25-cv-05600-RAL Codified Law 15-6-56(e)... Document 1-2 Filed 01/03/25 Page 122 of 202 PageID #:

**15-6-56(e). Form of affidavits for summary judgment--Further testimony--Defense required.**

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in § 15-6-56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in § 15-6-56, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

**Source:** SD RCP, Rule 56 (e), as adopted by Sup. Ct. Order March 29, 1966, effective July 1, 1966.

**21-29-1. Power to issue writ--Purposes for which used.**

The writ of mandamus may be issued by the Supreme and circuit courts, to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board, or person.

**Source:** CCivP 1877, § 695; CL 1887, § 5517; RCCivP 1903, § 764; RC 1919, § 3006; SDC 1939 & Supp 1960, § 37.4501.

### 21-29-2. Writ issued when ordinary remedy inadequate--Application and affidavit.

The writ of mandamus must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon affidavit, upon the application of the party beneficially interested.

**Source:** CCivP 1877, § 696; CL 1887, § 5518; RCCivP 1903, § 765; RC 1919, § 3007; SDC 1939 & Supp 1960, § 37.4502.

IN THE STATE OF SOUTH DAKOTA       IN CIVIL COURT
COUNTY OF PENNINGTON       7TH JUDICIAL CIRCUIT

| | |
|---|---|
| CHYENNE WAISANEN, <br> DANIEL WAISANEN <br>      Plaintiff. <br><br> V. <br><br> CREDIT COLLECTION BUREAU <br>      Defendant. | Case no.:   SVCVV 24·0O\747 <br><br> Affidavit of Truth |

## Affidavit of Truth

We, CHYENNE and DANIEL WAISANEN, of 2315 E Philadelphia St Rapid City South Dakota 57703, being duly sworn, do hereby make this Affidavit of Truth based upon my personal knowledge, belief, and understanding, and in accordance with the laws of the State of South Dakota. This affidavit is submitted to clarify the facts, irregularities, and procedural misconduct I have encountered in relation to the judgment placed against me, subsequent seizure of personal property, and actions taken by the involved agencies.

### Timeline

### Procedural Irregularities in Judgment and Execution

1. The judgment for wage garnishment lacked transparency, and the agency pursued a second execution after a "lost execution," compounding financial strain.
2. The writ of execution for the seizure was issued without specificity regarding the property to be seized, violating enforcement norms.

### Fraudulent Documentation

3. The assignments of debt were signed electronically on the same day, regardless of the dates of service or acquisition of the debt.
4. The electronic signatures lack essential metadata (e.g., timestamps, IP addresses) to verify authenticity.
5. The signer for the hospital is untraceable, and email communications to her are undeliverable, raising doubts about the validity of the assignments.

### Improper Disclosure of Personal Data

1

6. The court provided sensitive personal information without verifying the requestor's identity, breaching confidentiality protocols.

### Misconduct During Seizure

7. The sheriff deputies did not allow us to retrieve essential items from the vehicle's front seat before its seizure.

8. The deputies were hesitant to allow access to the front seat to retrieve wallets, identification, and keys, imposing unnecessary restrictions.

9. The Plaintiff was terrified and unable to open the vehicle's front door to retrieve essential items, such as their wallet, keys, or other necessities, out of a well-founded concern that any action might result in detention or further escalation by the deputies present.

### Intimidation and Unprofessional Conduct

10. Deputies openly admitted to following and surveilling us before executing the seizure, including blocking the driveway with a personal unmarked vehicle.

11. Their statements that "there's nothing you can do" dismissed our rights and responsibilities as a citizen, employing both force and coercion to assert dominance over the situation. Civil Sheriff's further pressured us by stating that "if we did not hand over the keys to facilitate the seizure, it would compromise the sale value of the vehicle", intensifying the coercive tactics used against us.

12. When we did not provide the keys to the sheriff, they proceeded to load the vehicle onto the tow truck while it was locked and in park, potentially causing damage to the vehicle in the process.

### Repeated Denial of Motions Without Explanation

13. The court denied multiple motions without providing reasoning, leaving us with no recourse except to file this lawsuit.

### Expanded Timeline for the Complaint

June 2024

14. Judgment issued for wage garnishment.

15. Bank account closed due to financial strain, but the agency failed to adapt collection methods in good faith.

## Subsequent Executions

16. Execution for wage garnishment reported as lost or stolen.
17. New execution filed for seizure, lacking any description of the targeted property.

October 28, 2024

18. Sheriff visits our property and is informed that no assets of the debt's value are available.

October 30, 2024

19. Three deputies arrive to seize our vehicle:
   - One deputy uses a personal, unmarked vehicle to block the driveway.
   - The vehicle is taken while locked and in park, with no opportunity to retrieve personal items from the front seat.

## Aftermath

20. Attempts to retrieve personal belongings are thwarted by the sheriff's office.
21. Additional motions to the court are denied without explanation.

## Legal and Emotional Impact

22. This sequence of events underscores a troubling pattern of procedural misconduct, exploitation of our lack of legal education, and actions that caused significant emotional distress. This case now reflects:
   - Fraudulent Practices: Collection agency and court documents display signs of fabrication, inconsistent data, and lack of verification.
   - Abuse of Power: The sheriff's office engaged in intimidation, surveillance, and misuse of authority.
   - Denial of Due Process: Both the courts and enforcement agencies failed to safeguard our legal rights.
   - Emotional and Financial Harm: The compounded stress, financial strain, and emotional toll justify seeking a significant award for damages.

I affirm under the penalties of perjury that the above is true and correct to the best of my knowledge.

Date:

3

_____
CHYENNE WAISANEN
2315 E Philadelphia St
Rapid City SD 57703
N/A

_____
DANIEL WAISANEN
2315 E Philadelphia St
Rapid City SD 57703
N/A

Subscribed and sworn to before me this 26 day of NOV , 2024

Notary Public Signature: _____  Notary Seal

My Commission Expires: _____



FILED
Pennington County, SD
IN CIRCUIT COURT

NOV 26 2024

Amber Watkins, Clerk of Courts
By_____Deputy

4

**IN THE STATE OF SOUTH DAKOTA**
**COUNTY OF PENNINGTON**

**IN CIVIL COURT**
**7TH JUDICIAL CIRCUIT**

| | |
|---|---|
| Chyenne Waisanen,<br>Daniel Waisanen<br>      Plaintiff. | Case no.:  51CIV24-001747 |
| V. | MOTION FOR TEMPORARY RESTRAINING ORDER TO HALT SALE OF SEIZED PROPERTY |
| Credit Collection Bureau<br>      Defendant. | |

## MOTION FOR TEMPORARY RESTRAINING ORDER TO HALT SALE OF SEIZED PROPERTY

NOW COME the Plaintiffs, Chyenne and Daniel Waisanen, pro se, respectfully requesting this Court to issue an order halting the sale of the Plaintiffs' personal property (a 2016 Ford F150 Supercrew Pickup (VIN: 1FTEW1EG3GFC33149)), which was unlawfully seized by the Defendant to satisfy an alleged judgment debt. The sale of the Plaintiffs' vehicle would cause irreparable harm, as it serves as a critical work vehicle essential to the operation of their business. Without this vehicle, the Plaintiffs would be unable to perform necessary business functions, jeopardizing their livelihood and ability to generate income. In support of this Motion, Plaintiffs state as follows:

### I. FACTUAL BACKGROUND

#### 1. The Alleged Judgment and Seizure

1.1. On June 20, 2024, a default judgment was entered in favor of Defendant for the alleged debt amount of $4,669.17 cost of $48.82 and Pre-judgment Interest for $1398.05 totaling $6116.04.

1.2. On October 18, 2024, Defendant obtained a writ of execution, leading to the seizure of Plaintiffs' personal property—a 2016 Ford F150 Supercrew Pickup (VIN: 1FTEW1EG3GFC33149) valued at approximately $27,000—to satisfy this alleged debt.

#### 2. Fraudulent and Improper Assignment of Debt

2.1. The debt in question stems from alleged medical services. Upon Plaintiffs' discovery, no original signed contract exists between Plaintiffs and the medical provider.

1

2.2. Defendant's documentation fails to establish ownership or validity of the assigned debt, as required under South Dakota Codified Laws (SDCL) § 57A-9-203(b)(3).

2.3. The "assignment of debt" contains only itemized billing statements with no attached consent forms or original agreements, violating the requirement for proof of enforceable obligations under SDCL § 57A-3-309(b).

2.4. The digital signature on the assignment lacks critical metadata (e.g., IP address or timestamp) to authenticate its validity, contrary to general evidentiary principles outlined in SDCL § 15-6-56(e) for electronic evidence.

### 3. Discrepancies in Account Numbers

3.1. Upon obtaining original consent forms from the hospital, Plaintiffs discovered that the account numbers listed on the hospital's documentation do not match the account numbers on the alleged assignments provided by Defendant. This inconsistency undermines the validity of the purported assignment under SDCL § 57A-9-203(b).

### 4. Irreparable Harm

4.1. Plaintiffs are suffering irreparable harm due to the seizure of their vehicle, which is essential for transportation, work, and daily living.

4.2. The value of the seized property grossly exceeds the amount of the alleged judgment, constituting an unjust windfall to the Defendant, in violation of equitable principles under SDCL § 21-29-1.

## II. LEGAL ARGUMENT

### 1. Violation of UCC § 9-203

1.1. Under SDCL § 57A-9-203(b), a secured party cannot enforce a security interest unless:

- (1) Value has been given;

- (2) The debtor has rights in the collateral; and

- (3) There is an authenticated security agreement that provides a description of the collateral.

Here, no valid security agreement exists between Plaintiffs and Defendant. Defendant cannot enforce any interest in the vehicle under this statute.

### 2. Invalid Assignment of Debt

2.1. Under South Dakota law, a party seeking to enforce an assignment must provide a valid chain of title. SDCL § 57A-3-203(b) specifies that the transfer of an instrument is not enforceable unless there is clear evidence of the transfer.

2.2. Defendant's documentation does not meet the evidentiary standard for proving assignment under SDCL § 57A-3-309(b), which requires proof of terms and the right to enforce the instrument.

### 3. Equitable Relief

3.1. Plaintiffs face immediate and irreparable harm if the vehicle is sold at auction. Monetary compensation will not adequately restore the Plaintiffs' loss of their work vehicle, critical to their business and livelihood. Under SDCL § 21-29-2, this Court has the equitable authority to issue an injunction where irreparable harm and inadequate legal remedies exist.

### III. RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request this Court:

1. Immediately issue a temporary restraining order halting the sale of the 2016 Ford F150 Supercrew Pickup until further order of this Court;

2. Schedule a hearing to determine the propriety of continuing the restraining order as a preliminary injunction;

3. Grant any other relief the Court deems just and equitable under the circumstances.

### IV. DECLARATION OF PLAINTIFFS

We, Chyenne and Daniel Waisanen, declare under penalty of perjury that the foregoing is true and correct to the best of our knowledge and belief.

Date: 11.26.2024

CHYENNE WAISANEN
2315 E Philadelphia St
Rapid City SD 57703

DANIEL WAISANEN
2315 E Philadelphia St
Rapid City SD 57703

FILED
Pennington County, SD
IN CIRCUIT COURT

NOV 26 2024

Amber Watkins, Clerk of Courts
By_____Deputy     3



**MONUMENT**
HEALTH
MH Rapid City Hospital



ETREATH

Waisanen, Chyenne M
DOB: ▓▓▓ y.o. Female
MRN: ▓▓▓
CSN: ▓▓▓8
DOS: 3/25/2022 0725



## Consent to Treatment and Conditions of Admission

Page 1 of 3

1. **Consent for Medical and Hospital Care.** The Undersigned, whether as patient or as agent, consents to the following:
   a. All initiation of care, consultation, treatment, and procedures to be performed during this hospitalization or on an outpatient basis (including emergency treatment or services). The treatment and procedures may include, but are not limited to, laboratory tests, x-rays, physical examinations, injections, medical or surgical treatments or procedures, anesthesia, or hospital services rendered under the general and special instructions of the patient's provider.
   b. Testing for HIV antibody (AIDS), hepatitis, or any bloodborne pathogen should the healthcare worker have an exposure to the patient's blood or other body fluids.
   c. The disposal of any body parts or tissues removed according to Monument Health policy, including the use of de-identified specimens for research purposes.
   d. Transfer and transportation to another facility for further care as instructed by the patient's provider.
   e. Allow the patient's prescription medication history to be obtained from external electronic sources.
2. **General Risks.** The Undersigned, whether as patient or as agent, understands that the practice of medicine and surgery is not an exact science and that diagnosis and treatment may involve risks of injury or even death. No guarantees can or have been made regarding the results of examinations, procedures, or treatment.
3. **Healthcare Providers/Relationships.** The Undersigned, whether as patient or as agent, understands:
   a. That providers furnishing services to the patient, including the radiologists, pathologists, anesthesiologists, emergency room providers, and the patient's attending and consulting providers, may be independent contractors, independent practitioners, or employees of Monument Health. Only employees of Monument Health may be considered agents of Monument Health. Additional clarification should be made by asking the patient's providers.
   b. That among those who may care for the patient at this Monument Health facility are medical, nursing, and other healthcare students who, unless requested otherwise, may be present or administer care as part of their training.
   c. That Monument Health may utilize certain electronic technologies to communicate between healthcare providers and monitor patients receiving care at Monument Health facilities. Examples include but are not limited to eICU, Telemedicine, and Telepharmacy.
4. **Release of Information.** The Undersigned, whether as patient or as agent, authorizes the following:
   a. Monument Health may disclose all or portions of the patient's medical record to any person or entity or their agents who may be liable to pay for all or a portion of the charges. Monument Health's authority shall include but is not limited to release of the patient's diagnosis, surgical procedure, plan of care, and benefits by telephone at the time of appointment check-in or admission or during or after the appointment or hospitalization. The entities to whom the information may be released shall include but not be limited to insurance companies, health maintenance organizations, worker's compensation carriers, or government or other payors or their agents, such as utilization review, rehabilitation, or auditing agencies.
   b. Release of clinical information to providers and facilities for the purpose of continued healthcare. The patient or agent understands that healthcare providers participate in Monument Health's Connect Program, and that patient data will be stored in a shared community electronic record. This clinical data may be shared with Monument Health, its affiliates, and other healthcare providers whom are associated with the patient's medical care.
   c. Gives consent to Monument Health and its respective subsidiaries, affiliates, and vendors, to contact the Undersigned at the number provided using any means of communication, including, but not limited to, calls placed to a cellular phone using an automated dialing device and calls using prerecorded messages and/or SMS text messages, regarding any current or future accounts, outstanding balances, or payments owed to Monument Health or its respective subsidiaries and affiliates even if the Undersigned will be charged by his or her service provider(s) for receiving such communications. The Undersigned understands he or she will be provided the option to update communication preferences during the servicing of accounts and will notify Monument Health if he or she wishes to revoke this method of notification.
5. **Personal Valuables.** The Undersigned, whether as patient or as agent, acknowledges and understands that keeping personal valuables is highly discouraged, and he or she is responsible for them (including money, jewelry, dentures, hearing aids, eyeglasses, etc.) while a patient at Monument Health. The hospital maintains a safe for safekeeping of personal valuables, and the Undersigned releases Monument Health from any liability for loss or damage due to the patient's negligence or that of any Monument Health employee unless the valuables are placed in the safe.

ETREATH

Waisanen, Chyenne M
DOB: ██████      Female
MRN: █████
CSN: █████████
DOS: 3/25/2022 0725



## Consent to Treatment and Conditions of Admission
Page 2 of 3

6. **Promise to Pay Account.** The Undersigned agrees that he or she will pay for the care the patient receives. The person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the account charges in accordance with the rates and policies of Monument Health. He or she also agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory amount per year.

7. **Guarantee of Account.** The Undersigned understands that Monument Health must be paid for the care the patient receives. The Undersigned may expect that someone else is going to pay for the patient's care, as there may be insurance coverage, or the patient may have been injured due to someone else's negligence, or there may be other circumstances; however, the Undersigned agrees to be personally responsible for paying for the care received. Even if the Undersigned believes another party is obligated to pay for the care, he or she still agrees to personally guarantee Monument Health will be paid for the care the patient receives. Therefore, the person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the charges in accordance with the rates and policies of Monument Health. He or she agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory allowable interest rate per year.

8. **Patient Portion Due at Time of Service.** The Undersigned, whether as patient or as agent, acknowledges all co-payments must be paid at time of service. This arrangement is part of the patient's contract with his or her insurance company. For procedures, the Undersigned will be asked to pay a co-insurance and deductible. Upon request, an estimate of services will be given prior to the service being performed.

9. **Insurance and Claims Submission.** The Undersigned, whether as patient or as agent, understands Monument Health will submit insurance claims to most insurance companies; however, if Monument Health does not participate with the patient's insurance plan, it will be the responsibility of the Undersigned to pay-in-full at time of service. The Undersigned should be aware that some or all of the services may be non-covered by insurers, and many insurance companies require pre-authorization for various procedures. Monument Health will assist in obtaining the necessary pre-authorizations when needed; however, it is the responsibility of the Undersigned to determine if the patient's insurance company requires one. Failure to obtain the necessary pre-authorization or second opinion may result in a reduction or denial of benefits by the insurance company, which would result in the requirement of the Undersigned to pay the full amount due. For employer-requested services, Monument Health will confirm pre-authorization and guarantee of payment prior to the service being rendered.

10. **Assignment of Insurance Benefits.** If the patient's care is covered by insurance, the Undersigned agrees the insurance company is to pay Monument Health directly for the patient's care. Additionally, certain physicians (e.g., anesthesiologists, oncologists, pathologists, and radiologists) may participate in the patient's care. These physicians are not employees or agents of Monument Health, and they will bill separately for their care. The person signing this form, whether he or she is the patient or is signing for the patient, authorizes direct payment to Monument Health and/or the physicians of any insurance benefits, settlements, or awards otherwise payable for this hospitalization or outpatient service (including emergency services if rendered) at a rate not to exceed the respective charges of Monument Health and/or the physicians. The Undersigned understands he or she is financially responsible for charges not paid by insurance or any other third-party payor.

11. **Patient Rights and Responsibilities.** The Undersigned, whether as patient or as agent, acknowledges he or she has been given the opportunity to review the Patient Rights and Responsibilities.

12. **Notice of Privacy Practices.** The Undersigned, whether as patient or as agent, acknowledges that the law requires that Monument Health maintain the privacy of the patient's Protected Health Information and that Monument Health provide a notice of legal duties and privacy policies with respect to protected health information. By signing below, the Undersigned acknowledges that he or she has received a copy of Monument Health's Notice of Privacy Practices.

13. **Minor Patients.** The Undersigned understands that the parent or guardian accompanying a minor is responsible for payment. An unaccompanied minor will not be seen without a minor consent form signed by the parent or guardian, and the minor must bring his or her co-payment or patient portion due at the time of service.

14. **Providers May Not Be On-Site 24 Hours Per Day, 7 Days Per Week.** The Undersigned, whether as patient or as agent, understands the following:
    a. Monument Health's Critical Access Hospitals (Custer, Lead-Deadwood, and Sturgis) may not have a medical provider on-site 24 hours per day, 7 days per week; however, a medical provider is on-call 24 hours per day, 7 days per week,

**MONUMENT**
HEALTH
MH Rapid City Hospital

ETREATH

Waisanen, Chyenne M
DOB:                        Female
MRN:
CSN:
DOS: 3/25/2022 0725



## Consent to Treatment and
## Conditions of Admission
Page 3 of 3

with a response time to the facility within 30 minutes to manage any emergency conditions that may occur.
b. Monument Health's Spearfish Surgery Center, a department of Monument Health Spearfish Hospital, does not have a physician and/or provider in-house 24 hours per day, 7 days per week. An on-call physician or provider is available 24 hours per day, 7 days per week, to meet the needs of any patient who develops an emergency medical condition.

Signature captured with Topaz by Chyenne M Waisanen at 3/25/2022 06:27 AM

Patient or Agent Signature
Printed Name If Signature Is Other than the Patient's

Relationship to Patient

2nd Witness Signature (If Applicable)

**Emily Anderson**
Witness



**MONUMENT**
HEALTH



EANESCON

Walsanen, Chyenne M
CSN: ▓▓▓▓▓
DOB: ▓▓▓▓▓ Female
MRN: ▓▓▓▓▓
Adm Date: 3/25/22





## Anesthesia Consent

I have explained to the patient (or his/her guardian) the nature of the anesthetic or sedative planned at Monument Health Rapid City Hospital and alternative approaches.

I have discussed the possibility of major risks or complications including but not limited to heart problems, lung problems, infection, bleeding, adverse drug reactions, blood clots, nerve damage, loss of limb function, paralysis, brain damage, or death. I have explained that with any procedure there is a possibility of unexpected problems, and no guarantees or promises can be made concerning results.

**Potential problems involving anesthetic alternatives and related care:**

☐  **General Anesthesia** ................. Sore throat, hoarseness, injury to teeth or airway, injury to arteries or veins, injury to eyes, awareness under anesthesia, nausea, and vomiting.

☑  **Monitored Anesthesia Care**
    **(With or Without Sedation)** ..... Depending on depth of level of sedation varying levels of awareness may occur, depressed breathing, potential injury to blood vessels.

☐  **Nerve Blocks**                          Pain or discomfort, injury to arteries or veins, need for general anesthesia,
    ............................
                                             headache, eye damage, double vision, droopy eyelid.

☐  **Regional Anesthetic or**
    **Invasive Monitoring** ................. Blood vessel damage, punctured lung, nerve damage.

There is occasionally the need for hospitalization because of anesthesia complications.

Anesthesia provided by: CRNA with Physician supervision

I am aware there may be students involved in my care such as a Medical Student, Student Registered Nurse Anesthetist, Emergency Medical Technician, Paramedic or Respiratory Therapy Student.

I understand, during my procedure a condition may arise or be discovered that the Anesthesia Provider did not or could not have anticipated. In that case, I consent to the administration of an alternative type of anesthesia and/or the performance of procedure(s) in addition to or different from that planned, which the Anesthesia Provider considers necessary or advisable to protect my life or health.

Comment:

**I have had an opportunity to ask questions and have had them answered to my satisfaction. I understand and agree to all of the terms above.**

Provider Signature:

Provider Signature

Signature captured with Topaz at 3/25/2022 07:01 AM

Provider Name:
ERENBERG, BRIAN



ETREATH

**MONUMENT**
**H E A L T H**
MH Rapid City Hospital



Walsanen, Chyenne M
DOB:                    Female
MRN:
CSN:
DOS: 3/25/2022 0725



## Consent to Treatment and
## Conditions of Admission
Page 3 of 3

with a response time to the facility within 30 minutes to manage any emergency conditions that may occur.

b. Monument Health's Spearfish Surgery Center, a department of Monument Health Spearfish Hospital, does not have a physician and/or provider in-house 24 hours per day, 7 days per week. An on-call physician or provider is available 24 hours per day, 7 days per week, to meet the needs of any patient who develops an emergency medical condition.

Signature captured with Topaz by Chyenne M. Walsanen at 3/25/2022 06:27 AM

Patient or Agent Signature
Printed Name if Signature is Other than the Patient's

Relationship to Patient

2nd Witness Signature (if Applicable)

**Emily Anderson**
Witness

**MONUMENT**
HEALTH
MH Rapid City Hospital

ETREATH



Waisanen, Chyenne M
DOB: █████████Female
MRN: ███████████
CSN: ████████████
DOS: 5/22/2024 0644



## Consent to Treatment and
## Conditions of Admission
Page 1 of 3

1. **Consent for Medical and Hospital Care.** The Undersigned, whether as patient or as agent, consents to the following:
   a. All initiation of care, consultation, treatment, and procedures to be performed during this hospitalization or on an outpatient basis (including emergency treatment or services). The treatment and procedures may include, but are not limited to, laboratory tests, x-rays, physical examinations, injections, medical or surgical treatments or procedures, anesthesia, other hospital services rendered under the general and special instructions of the patient's provider, or restraints that are necessary for safety and/or medical healing.
   b. Testing for HIV antibody (AIDS), hepatitis, or any bloodborne pathogen should the healthcare worker have an exposure to the patient's blood or other body fluids.
   c. The disposal of any body parts or tissues removed according to Monument Health policy, including the use of de-identified specimens for research purposes.
   d. Transfer and transportation to another facility for further care as instructed by the patient's provider.
   e. Allow the patient's prescription medication history to be obtained from external electronic sources.
2. **General Risks.** The Undersigned, whether as patient or as agent, understands that the practice of medicine and surgery is not an exact science and that diagnosis and treatment may involve risks of injury or even death. No guarantees can or have been made regarding the results of examinations, procedures, or treatment.
3. **Healthcare Providers/Relationships.** The Undersigned, whether as patient or as agent, understands:
   a. That providers furnishing services to the patient, including the radiologists, pathologists, anesthesiologists, emergency room providers, and the patient's attending and consulting providers, may be independent contractors, independent practitioners, or employees of Monument Health. Only employees of Monument Health may be considered agents of Monument Health. Additional clarification should be made by asking the patient's providers.
   b. That among those who may care for the patient at this Monument Health facility are medical, nursing, and other healthcare students who, unless requested otherwise, may be present or administer care as part of their training.
   c. That to support the care provided, Monument Health is using technology in some settings that uses artifical intelligence to generate entries in the patient's medical record based on secure audio recordings, machine learning, and cloud-based voice recognition of the visit or exam. A third-party service processes the recording and creates information for the medical record that is reviewed and approved by the patient's provider.
   d. That Monument Health may utilize certain electronic technologies to communicate between healthcare providers and monitor patients receiving care at Monument Health facilities. Examples include, but are not limited to, eICU, Telemedicine, and Telepharmacy, which use video cameras in rooms where patients receive care to transmit what happens in those rooms to caregivers.
4. **Release of Information.** The Undersigned, whether as patient or as agent, authorizes the following:
   a. Monument Health may disclose all or portions of the patient's medical record to any person or entity or their agents who may be liable to pay for all or a portion of the charges. Monument Health's authority shall include but is not limited to release of the patient's diagnosis, surgical procedure, plan of care, and benefits by telephone at the time of appointment check-in or admission or during or after the appointment or hospitalization. The entities to whom the information may be released shall include but not be limited to insurance companies, health maintenance organizations, worker's compensation carriers, or government or other payors or their agents, such as utilization review, rehabilitation, or auditing agencies.
   b. Release of clinical information to providers and facilities for the purpose of continued healthcare. The patient or agent understands that healthcare providers participate in Monument Health's Connect Program, and that patient data will be stored in a shared community electronic record. This clinical data may be shared with Monument Health, its affiliates, and other healthcare providers whom are associated with the patient's medical care.
   c. Gives consent to Monument Health and its respective subsidiaries, affiliates, and vendors, to contact the Undersigned at the number provided using any means of communication, including, but not limited to, calls placed to a cellular phone using an automated dialing device and calls using prerecorded messages and/or SMS text messages, regarding any current or future accounts, outstanding balances, or payments owed to Monument Health or its respective subsidiaries and affiliates even if the Undersigned will be charged by his or her service provider(s) for receiving such communications. The Undersigned understands he or she will be provided the option to update communication preferences during the servicing of accounts and will notify Monument Health if he or she wishes to revoke this method of notification.

 

EANESCON

**Waisanen, Chyenne M**
CSN:
DOB:
MRN:
Adm Date: 3/25/22

 

## Anesthesia Consent

**Patient/Surrogate Decision-Maker Signature:**

Signature captured at 3/25/2022 07:07 AM

Name:
Relationship:

**Witness Signature:**

Monica Crann

Signature captured at 3/25/2022 07:07 AM

**Second Witness (telephone consent):**

Witness Name(s):



**MONUMENT**
**HEALTH**
MH Rapid City Clinic Flormann St


ETREATCH

Waisanen, Chvenne M
DOB          .o. Female
MRN
CSN:
DOS: 8/8/2024



## Consent to Treatment:
## Clinic, Recurring Series,
## and Outpatient Services
Page 2 of 2

---

5. **Patient Rights and Responsibilities.** The Undersigned, whether as patient or as agent, acknowledges he or she has been given the opportunity to review the Patient Rights and Responsibilities.

6. **Notice of Privacy Practices.** The Undersigned, whether as patient or as agent, acknowledges that the law requires that Monument Health maintain the privacy of the patient's Protected Health Information and that Monument Health provide a notice of legal duties and privacy policies with respect to protected health information. By signing below, the Undersigned acknowledges that he or she has received a copy of Monument Health's Notice of Privacy Practices.

Signature captured at 8/8/2024 12:41 PM

**Renate Naber**
Witness



**MONUMENT**
H E A L T H
MH Rapid City Clinic Caregiver Cir

ETREATCH

Walsanen, Cheyenne
DOB: ████████ Female
MRN: ████
CSN: ████
DOS: 9/1/2021



## Consent to Treatment:
## Clinic, Recurring Series,
## and Outpatient Services
Page 1 of 2

1. **Consent for Medical Care.** The Undersigned, whether as patient or as agent, consents to the following:
   a. All initiation of care, consultation, treatment, and procedures to be performed (including emergency treatment or services). The treatment and procedures may include, but are not limited to, laboratory tests, x-rays , p h y s i c a l examinations, injections, medical or surgical treatments or procedures, anesthesia, or other services rendered under the general and special instructions of the patient's provider.
   b. Testing for HIV antibody (AIDS), hepatitis, or any bloodborne pathogen should the healthcare worker have an exposure to the patient's blood or other body fluids.
   c. The disposal of any body parts or tissues removed according to Monument Health policy, including the use of de-identified specimens for research purposes.
   d. Transfer and transportation to another facility for further care as instructed by the patient's provider.
   e. Allow the patient's prescription medication history to be obtained from external electronic sources.
2. **General Risks.** The Undersigned, whether as patient or as agent, understands that the practice of medicine and surgery is not an exact science and that diagnosis and treatment may involve risks of injury or even death. No guarantees can or have been made regarding the results of examinations, procedures, or treatment.
3. **Healthcare Providers/Relationships.** The Undersigned, whether as patient or as agent, understands:
   a. That providers furnishing services to the patient, including the radiologists, pathologists, anesthesiologists, emergency room providers, and the patient's attending and consulting providers, may be independent contractors, independent practitioners, or employees of Monument Health. Only employees of Monument Health may be considered agents of Monument Health. Additional clarification should be made by asking the patient's providers.
   b. That among those who may care for the patient at this Monument Health facility are medical, nursing, and other healthcare students who, unless requested otherwise, may be present or administer care as part of their training.
   c. That Monument Health may utilize certain electronic technologies to communicate between healthcare providers and monitor patients receiving care at Monument Health facilities. Examples include but are not limited to eICU, Telemedicine, and Telepharmacy.
4. **Release of Information.** The Undersigned, whether as patient or as agent, authorizes the following:
   a. Monument Health may disclose all or portions of the patient's medical record to any person or entity or their agents who may be liable to pay for all or a portion of the charges. Monument Health's authority shall include but is not limited to release of the patient's diagnosis, surgical procedure, plan of care, and benefits by telephone at the time of appointment check-in or during or after the appointment. The entities to whom the information may be released shall include but not be limited to insurance companies, health maintenance organizations, worker' s c o m p e n s a t i o n carriers, or government or other payors or their agents, such as utilization review, rehabilitation, or auditing agencies.
   b. Release of clinical information to providers and facilities for the purpose of continued healthcare. The patient or agent understands that healthcare providers participate in Monument Health's Connect Program, and that patient data will be stored in a shared community electronic record. This clinical data may be shared with Monument Health, its affiliates, and other healthcare providers whom are associated with the patient's medical care.
   c. Gives consent to Monument Health and its respective subsidiaries, affiliates, and vendors, to contact the Undersigned at the number provided using any means of communication, including, but not limited to, calls placed to a cellular phone using an automated dialing device and calls using prerecorded messages and/or SMS text messages, regarding any current or future accounts, outstanding balances, or payments owed to Monument Health or its respective subsidiaries and affiliates even if the Undersigned will be charged by his or her service provider(s) for receiving such communications. The Undersigned understands he or she will be provided the option to update communication preferences during the servicing of accounts and will notify Monument Health if he or she wishes to revoke this method of notification.
5. **Patient Rights and Responsibilities.** The Undersigned, whether as patient or as agent, acknowledges he or she has been given the opportunity to review the Patient Rights and Responsibilities.
6. **Notice of Privacy Practices.** The Undersigned, whether as patient or as agent, acknowledges that the law requires that Monument Health maintain the privacy of the patient's Protected Health Information and that Monument Health provide a notice of legal duties and privacy policies with respect to protected health information. By signing below, the Undersigned acknowledges that he or she has received a copy of Monument Health's Notice of Privacy Practices.



**ETREATCH**

Walsanen, Cheyenne
DOB: ███████ y.o. Female
MRN: ████████
CSN: ████████
DOS: 9/1/2021



**MONUMENT**
**HEALTH**
MH Rapid City Clinic Caregiver Cir

# Consent to Treatment:
# Clinic, Recurring Series,
# and Outpatient Services
Page 2 of 2

---

Signature captured at 9/1/2021 01:05 PM

Patient or Agent Signature | 2nd Witness Signature (If Applicable)

Printed Name if Signature is Other than the Patient's

Relationship to Patient | **Kimberly Keller**
Witness

**MONUMENT**
H E A L T H
MH Rapid City Clinic Caregiver Cir

EFINAGR

Waisanen, Cheyenne
DOB: ██████. Female
MRN: ██████
CSN: ██████
DOS: 9/1/2021



## Financial Responsibility Agreement
Page 1 of 1

1. **Patient Portion Due at Time of Service.** The Undersigned, whether as patient or as agent, acknowledges all co-payments must be paid at time of service. This arrangement is part of the patient's contract with his or her insurance company. For procedures, the Undersigned will be asked to pay a co-insurance and deductible. Upon request, an estimate of services will be given prior to the service being performed.

2. **Insurance and Claims Submission.** The Undersigned, whether as patient or as agent, understands Monument Health will submit insurance claims to most insurance companies; however, if Monument Health does not participate with the patient's insurance plan, it will be the responsibility of the Undersigned to pay-in-full at time of service. The Undersigned *should be aware that some or all of the services may be non-covered by insurers, and many insurance companies require* pre-authorization for various procedures. Monument Health will assist in obtaining the necessary pre-authorizations when needed; however, it is the responsibility of the Undersigned to determine if the patient's insurance company requires one. Failure to obtain the necessary pre-authorization or second opinion may result in a reduction or denial of benefits by the insurance company, which would result in the requirement of the Undersigned to pay the full amount due. For employer-requested services, Monument Health will confirm pre-authorization and guarantee of payment prior to the service being rendered.

3. **Assignment of Insurance Benefits.** If the patient's care is covered by insurance, the Undersigned agrees the insurance company is to pay Monument Health directly for the patient's care. Additionally, certain physicians (e.g., anesthesiologists, oncologists, pathologists, and radiologists) may participate in the patient's care. These physicians are not employees or agents of Monument Health, and they will bill separately for their care. The person signing this form, whether he or she is the patient or is signing for the patient, authorizes direct payment to Monument Health and/or the physicians of any insurance benefits, settlements, or awards otherwise payable for this outpatient service (including emergency services if rendered) at a rate not to exceed the respective charges of Monument Health and/or the physicians. The Undersigned understands he or she is financially responsible for charges not paid by insurance or any other third-party payor.

4. **Promise to Pay Account.** The Undersigned agrees that he or she will pay for the care the patient receives. The person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the account charges in accordance with the rates and policies of Monument Health. If the patient is uninsured or has a large deductible, payment arrangements can be made with a Monument Health Patient Financial Counselor. The Undersigned also agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory amount per year.

5. **Guarantee of Account.** The Undersigned understands that Monument Health must be paid for the care the patient receives. The Undersigned may expect that someone else is going to pay for the patient's care, as there may be insurance coverage, or the patient may have been injured due to someone else's negligence, or there may be other circumstances; however, the Undersigned agrees to be personally responsible for paying for the care received. Even if the Undersigned believes another party is obligated to pay for the care, he or she still agrees to personally guarantee Monument Health will be paid for the care the patient receives. Therefore, the person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the charges in accordance with the rates and policies of Monument Health. He or she agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory allowable interest rate per year.

6. **Minor Patients.** The Undersigned understands that the parent or guardian accompanying a minor is responsible for payment. An unaccompanied minor will not be seen without a minor consent form signed by the parent or guardian, and the minor must bring his or her co-payment or patient portion due at the time of service.

Signature captured with Topaz by Cheyenne Waisanen at 9/1/2021 01:05 PM
Patient or Agent Signature

Printed Name if Signature is Other than the Patient's

Relationship to Patient

**Kimberly Keller**
Witness

**MONUMENT**
**HEALTH**
MH Rapid City Clinic Caregiver Cir

ETREATCH

Walsanen, Cheyenne
DOB: ▮▮▮▮▮▮▮ y.o. Female
MRN: ▮▮▮▮▮
CSN: ▮▮▮▮▮▮▮
DOS: 9/1/2021



## Consent to Treatment:
## Clinic, Recurring Series,
## and Outpatient Services
Page 2 of 2

Signature captured at 9/1/2021 01:05 PM

Patient or Agent Signature

2nd Witness Signature (If Applicable)

Printed Name if Signature is Other than the Patient's

Relationship to Patient

**Kimberly Keller**
Witness



**MONUMENT**
H E A L T H
MH Rapid City Hospital

ETREATCH

Walsanen, Chyenne
DOB: ████████ Female
MRN: ████████
CSN: ████████
DOS: 1/11/2022 0800



## Consent to Treatment:
## Clinic, Recurring Series,
## and Outpatient Services
Page 1 of 2

1. **Consent for Medical Care.** The Undersigned, whether as patient or as agent, consents to the following:
   a. All initiation of care, consultation, treatment, and procedures to be performed (including emergency treatment or services). The treatment and procedures may include, but are not limited to, laboratory tests, x-rays, physical examinations, injections, medical or surgical treatments or procedures, anesthesia, or other services rendered under the general and special instructions of the patient's provider.
   b. Testing for HIV antibody (AIDS), hepatitis, or any bloodborne pathogen should the healthcare worker have an exposure to the patient's blood or other body fluids.
   c. The disposal of any body parts or tissues removed according to Monument Health policy, including the use of de-identified specimens for research purposes.
   d. Transfer and transportation to another facility for further care as instructed by the patient's provider.
   e. Allow the patient's prescription medication history to be obtained from external electronic sources.

2. **General Risks.** The Undersigned, whether as patient or as agent, understands that the practice of medicine and surgery is not an exact science and that diagnosis and treatment may involve risks of injury or even death. No guarantees can or have been made regarding the results of examinations, procedures, or treatment.

3. **Healthcare Providers/Relationships.** The Undersigned, whether as patient or as agent, understands:
   a. That providers furnishing services to the patient, including the radiologists, pathologists, anesthesiologists, emergency room providers, and the patient's attending and consulting providers, may be independent contractors, independent practitioners, or employees of Monument Health. Only employees of Monument Health may be considered agents of Monument Health. Additional clarification should be made by asking the patient's providers.
   b. That among those who may care for the patient at this Monument Health facility are medical, nursing, and other healthcare students who, unless requested otherwise, may be present or administer care as part of their training.
   c. That Monument Health may utilize certain electronic technologies to communicate between healthcare providers and monitor patients receiving care at Monument Health facilities. Examples include but are not limited to eICU, Telemedicine, and Telepharmacy.

4. **Release of Information.** The Undersigned, whether as patient or as agent, authorizes the following:
   a. Monument Health may disclose all or portions of the patient's medical record to any person or entity or their agents who may be liable to pay for all or a portion of the charges. Monument Health's authority shall include but is not limited to release of the patient's diagnosis, surgical procedure, plan of care, and benefits by telephone at the time of appointment check-in or during or after the appointment. The entities to whom the information may be released shall include but not be limited to insurance companies, health maintenance organizations, worker's compensation carriers, or government or other payors or their agents, such as utilization review, rehabilitation, or auditing agencies.
   b. Release of clinical information to providers and facilities for the purpose of continued healthcare. The patient or agent understands that healthcare providers participate in Monument Health's Connect Program, and that patient data will be stored in a shared community electronic record. This clinical data may be shared with Monument Health, its affiliates, and other healthcare providers whom are associated with the patient's medical care.
   c. Gives consent to Monument Health and its respective subsidiaries, affiliates, and vendors, to contact the Undersigned at the number provided using any means of communication, including, but not limited to, calls placed to a cellular phone using an automated dialing device and calls using prerecorded messages and/or SMS text messages, regarding any current or future accounts, outstanding balances, or payments owed to Monument Health or its respective subsidiaries and affiliates even if the Undersigned will be charged by his or her service provider(s) for receiving such communications. The Undersigned understands he or she will be provided the option to update communication preferences during the servicing of accounts and will notify Monument Health if he or she wishes to revoke this method of notification.

5. **Patient Rights and Responsibilities.** The Undersigned, whether as patient or as agent, acknowledges he or she has been given the opportunity to review the Patient Rights and Responsibilities.

6. **Notice of Privacy Practices.** The Undersigned, whether as patient or as agent, acknowledges that the law requires that Monument Health maintain the privacy of the patient's Protected Health Information and that Monument Health provide a notice of legal duties and privacy policies with respect to protected health information. By signing below, the Undersigned acknowledges that he or she has received a copy of Monument Health's Notice of Privacy Practices.



**MONUMENT**
HEALTH

 EANESCON

**Waisanen, Chyenne M**
CSN:
DOB:
MRN:
Adm Date: 5/22/24



## Anesthesia Consent

I have explained to the patient (or his/her guardian) the nature of the anesthetic or sedative planned at Monument Health Rapid City Hospital and alternative approaches.

I have discussed the possibility of major risks or complications including but not limited to heart problems, lung problems, infection, bleeding, adverse drug reactions, blood clots, nerve damage, loss of limb function, paralysis, brain damage, or death. I have explained that with any procedure there is a possibility of unexpected problems, and no guarantees or promises can be made concerning results.

**Potential problems involving anesthetic alternatives and related care:**

☑ **General Anesthesia** ................. Sore throat, hoarseness, injury to teeth or airway, injury to arteries or veins, injury to eyes, awareness under anesthesia, nausea, and vomiting.

☐ **Monitored Anesthesia Care**
**(With or Without Sedation)** ..... Depending on depth of level of sedation varying levels of awareness may occur, depressed breathing, potential injury to blood vessels.

☐ **Nerve Blocks** .......................... Pain or discomfort, injury to arteries or veins, need for general anesthesia,
headache, eye damage, double vision, droopy eyelid.

☑ **Regional Anesthetic or**
**Invasive Monitoring** ................ Blood vessel damage, punctured lung, nerve damage.

There is occasionally the need for hospitalization because of anesthesia complications.

Anesthesia provided by: CRNA with Anesthesiologist supervision

I am aware there may be students involved in my care such as a Medical Student, Student Registered Nurse Anesthetist, Emergency Medical Technician, Paramedic or Respiratory Therapy Student.

I understand, during my procedure a condition may arise or be discovered that the Anesthesia Provider did not or could not have anticipated. In that case, I consent to the administration of an alternative type of anesthesia and/or the performance of procedure(s) in addition to or different from that planned, which the Anesthesia Provider considers necessary or advisable to protect my life or health.

Comment:

**I have had an opportunity to ask questions and have had them answered to my satisfaction. I understand and agree to all of the terms above.**

Provider Signature:

Provider Signature

_Saved signature used at 5/22/2024 9:57 PM_

Provider Name:BUTZ, JOHN

Patient/Surrogate Decision-Maker Signature:            Witness Signature:



**MONUMENT**
HEALTH


EANESCON

**Waisanen, Chyenne M**
CSN:
DOB:
MRN:
Adm Date: 5/22/24



## Anesthesia Consent

Person Responsible Signature

Signature captured with Topaz Signature Pad at 5/22/2024 10:09 PM

Witness Signature

Signature captured with Topaz Signature Pad at 5/22/2024 10:09 PM

Danielle Rhoads, RN
Second Witness Signature(telephone consent)



**MONUMENT**
HEALTH

EANESCON



**Waisanen, Chyenne M**
CSN:
DOB:
MRN:
**Adm Date: 5/22/24**



## Anesthesia Consent

Person Responsible Signature

Signature captured with Topaz Signature Pad at 5/22/2024 12:35 PM

Witness Signature

Signature captured with Topaz Signature Pad at 5/22/2024 12:34 PM

**Second Witness Signature(telephone consent)**



 EANESCON

**Waisanen, Chyenne M**
CSN:
DOB:
MRN:
Adm Date: 5/22/24



## Anesthesia Consent

I have explained to the patient (or his/her guardian) the nature of the anesthetic or sedative planned at Monument Health Rapid City Hospital and alternative approaches.

I have discussed the possibility of major risks or complications including but not limited to heart problems, lung problems, infection, bleeding, adverse drug reactions, blood clots, nerve damage, loss of limb function, paralysis, brain damage, or death. I have explained that with any procedure there is a possibility of unexpected problems, and no guarantees or promises can be made concerning results.

**Potential problems involving anesthetic alternatives and related care:**

☐  **General Anesthesia** ................. Sore throat, hoarseness, injury to teeth or airway, injury to arteries or veins, injury to eyes, awareness under anesthesia, nausea, and vomiting.

☐  **Monitored Anesthesia Care**
**(With or Without Sedation)** ..... Depending on depth of level of sedation varying levels of awareness may occur, depressed breathing, potential injury to blood vessels.

☐  **Nerve Blocks**
..........................    Pain or discomfort, injury to arteries or veins, need for general anesthesia,
headache, eye damage, double vision, droopy eyelid.

☑  **Regional Anesthetic or**
**Invasive Monitoring** ................ Blood vessel damage, punctured lung, nerve damage.

There is occasionally the need for hospitalization because of anesthesia complications.

Anesthesia provided by: Anesthesiologist

I am aware there may be students involved in my care such as a Medical Student, Student Registered Nurse Anesthetist, Emergency Medical Technician, Paramedic or Respiratory Therapy Student.

I understand, during my procedure a condition may arise or be discovered that the Anesthesia Provider did not or could not have anticipated. In that case, I consent to the administration of an alternative type of anesthesia and/or the performance of procedure(s) in addition to or different from that planned, which the Anesthesia Provider considers necessary or advisable to protect my life or health.

Comment:

**I have had an opportunity to ask questions and have had them answered to my satisfaction. I understand and agree to all of the terms above.**

Provider Signature:

Provider Signature

Saved signature used at 5/22/2024 12:23 PM

Provider Name: HUOT, MICHAEL

Patient/Surrogate Decision-Maker Signature:                    Witness Signature:

**MONUMENT**
HEALTH

EANESCON

**Waisanen, Chyenne M**
CSN:
DOB:
MRN:
Adm Date: 3/24/24



## Anesthesia Consent

Person Responsible Signature

Signature captured with Topaz Signature Pad at 3/25/2024 06:52 AM

Chyenne Waisanen

Witness Signature

Signature captured with Topaz Signature Pad at 3/25/2024 06:53 AM

Kaitlin Schleusner RN

Second Witness Signature(telephone consent)





EANESCON

**Waisanen, Chyenne M**
CSN:
DOB:                    le
MRN:
Adm Date: 3/24/24





## Anesthesia Consent

I have explained to the patient (or his/her guardian) the nature of the anesthetic or sedative planned at Monument Health Rapid City Hospital and alternative approaches.

I have discussed the possibility of major risks or complications including but not limited to heart problems, lung problems, infection, bleeding, adverse drug reactions, blood clots, nerve damage, loss of limb function, paralysis, brain damage, or death. I have explained that with any procedure there is a possibility of unexpected problems, and no guarantees or promises can be made concerning results.

**Potential problems involving anesthetic alternatives and related care:**

☑   **General Anesthesia** ................. Sore throat, hoarseness, injury to teeth or airway, injury to arteries or veins, injury to eyes, awareness under anesthesia, nausea, and vomiting.

☑   **Monitored Anesthesia Care**
**(With or Without Sedation)** ..... Depending on depth of level of sedation varying levels of awareness may occur, depressed breathing, potential injury to blood vessels.

☑   **Nerve Blocks**                              Pain or discomfort, injury to arteries or veins, need for general anesthesia,
        .............................
                                                          headache, eye damage, double vision, droopy eyelid.

☑   **Regional Anesthetic or**
**Invasive Monitoring** ................. Blood vessel damage, punctured lung, nerve damage.

There is occasionally the need for hospitalization because of anesthesia complications.

Anesthesia provided by: CRNA with Anesthesiologist supervision

I am aware there may be students involved in my care such as a Medical Student, Student Registered Nurse Anesthetist, Emergency Medical Technician, Paramedic or Respiratory Therapy Student.

I understand, during my procedure a condition may arise or be discovered that the Anesthesia Provider did not or could not have anticipated. In that case, I consent to the administration of an alternative type of anesthesia and/or the performance of procedure(s) in addition to or different from that planned, which the Anesthesia Provider considers necessary or advisable to protect my life or health.

Comment:

**I have had an opportunity to ask questions and have had them answered to my satisfaction. I understand and agree to all of the terms above.**

Provider Signature:

Provider Signature

Saved signature used at 3/25/2024 06:30 AM
Provider Name: HUOT, MICHAEL

Patient/Surrogate Decision-Maker Signature:                    Witness Signature:




**MONUMENT**
HEALTH

## Informed Consent for
## Surgery and Procedures


ECONSENT



Waisanen, Chyenne M
CSN:
DOB:
MRN:
Adm Date: 052224

---

more surgery during my procedure, I permit the provider to proceed, with the following exceptions:

I ask that any tissue, parts, organs, body fluids, or blood products removed from me be disposed of by the hospital as usual, including the use of my de-identified specimens for research purposes, with the following exceptions:

I have had the chance to ask questions. The information I have been given is enough for me to understand the consequences of my decision and consent to this procedure as my own free act.

Provider Signature:

Provider Signature

Electronically signed at 5/22/2024 10:16 PM

Provider Name:
BUEHNER, MARVIN [3219]

Witness Signature:

Signature captured with Topaz Signature Pad by Danielle Rhoads RN at 5/22/2024 10:12 PM

Patient/Surrogate Decision-Maker Signature:

Signature captured with Topaz Signature Pad at 5/22/2024 10:12 PM

Second Witness (telephone consent):

ETREATCH

**MONUMENT**
HEALTH
MH Rapid City Urgent Care
Jackson Blvd

Walsanen, Chyenne M
DOB:                    o. Female
MRN:
CSN:
DOS: 5/29/2024



## Consent to Treatment:
## Clinic, Recurring Series,
## and Outpatient Services
Page 1 of 2

1. **Consent for Medical Care.** The Undersigned, whether as patient or as agent, consents to the following:
   a. All initiation of care, consultation, treatment, and procedures to be performed (including emergency treatment or services). The treatment and procedures may include, but are not limited to, laboratory tests, x-rays, physical examinations, injections, medical or surgical treatments or procedures, anesthesia, other services rendered under the general and special instructions of the patient's provider, or restraints that are necessary for safety and/or medical healing..
   b. Testing for HIV antibody (AIDS), hepatitis, or any bloodborne pathogen should the healthcare worker have an exposure to the patient's blood or other body fluids.
   c. The disposal of any body parts or tissues removed according to Monument Health policy, including the use of de-identified specimens for research purposes.
   d. Transfer and transportation to another facility for further care as instructed by the patient's provider.
   e. Allow the patient's prescription medication history to be obtained from external electronic sources.
2. **General Risks.** The Undersigned, whether as patient or as agent, understands that the practice of medicine and surgery is not an exact science and that diagnosis and treatment may involve risks of injury or even death. No guarantees can or have been made regarding the results of examinations, procedures, or treatment.
3. **Healthcare Providers/Relationships.** The Undersigned, whether as patient or as agent, understands:
   a. That providers furnishing services to the patient, including the radiologists, pathologists, anesthesiologists, emergency room providers, and the patient's attending and consulting providers, may be independent contractors, independent practitioners, or employees of Monument Health. Only employees of Monument Health may be considered agents of Monument Health. Additional clarification should be made by asking the patient's providers.
   b. That among those who may care for the patient at this Monument Health facility are medical, nursing, and other healthcare students who, unless requested otherwise, may be present or administer care as part of their training.
   c. That to support the care provided, Monument Health is using technology in some settings that uses artifical intelligence to generate entries in the patient's medical record based on secure audio recordings, machine learning, and cloud-based voice recognition of the visit or exam. A third-party service processes the recording and creates information for the medical record that is reviewed and approved by the patient's provider.
   d. That Monument Health may utilize certain electronic technologies to communicate between healthcare providers and monitor patients receiving care at Monument Health facilities. Examples include but are not limited to eICU, Telemedicine, and Telepharmacy, which use video cameras in rooms where patients receive care to transmit what happens in those rooms to caregivers.
4. **Release of Information.** The Undersigned, whether as patient or as agent, authorizes the following:
   a. Monument Health may disclose all or portions of the patient's medical record to any person or entity or their agents who may be liable to pay for all or a portion of the charges. Monument Health's authority shall include but is not limited to release of the patient's diagnosis, surgical procedure, plan of care, and benefits by telephone at the time of appointment check-in or during or after the appointment. The entities to whom the information may be released shall include but not be limited to insurance companies, health maintenance organizations, worker's compensation carriers, or government or other payors or their agents, such as utilization review, rehabilitation, or auditing agencies.
   b. Release of clinical information to providers and facilities for the purpose of continued healthcare. The patient or agent understands that healthcare providers participate in Monument Health's Connect Program, and that patient data will be stored in a shared community electronic record. This clinical data may be shared with Monument Health, its affiliates, and other healthcare providers whom are associated with the patient's medical care.
   c. Gives consent to Monument Health and its respective subsidiaries, affiliates, and vendors, to contact the Undersigned at the number provided using any means of communication, including, but not limited to, calls placed to a cellular phone using an automated dialing device and calls using prerecorded messages and/or SMS text messages, regarding any current or future accounts, outstanding balances, or payments owed to Monument Health or its respective subsidiaries and affiliates even if the Undersigned will be charged by his or her service provider(s) for receiving such communications. The Undersigned understands he or she will be provided the option to update communication preferences during the servicing of accounts and will notify Monument Health if he or she wishes to revoke this






ETREATCH

**Waisanen, Chyenne M**
DOB: ▮▮▮▮▮ b. Female
MRN: ▮▮▮▮▮
CSN: ▮▮▮▮▮
DOS: 4/9/2024



MONUMENT
H E A L T H
MH Rapid City Clinic Fairmont Blvd

## Consent to Treatment:
## Clinic, Recurring Series,
## and Outpatient Services
Page 2 of 2

5. **Patient Rights and Responsibilities.** The Undersigned, whether as patient or as agent, acknowledges he or she has been given the opportunity to review the Patient Rights and Responsibilities.
6. **Notice of Privacy Practices.** The Undersigned, whether as patient or as agent, acknowledges that the law requires that Monument Health maintain the privacy of the patient's Protected Health Information and that Monument Health provide a notice of legal duties and privacy policies with respect to protected health information. By signing below, the Undersigned acknowledges that he or she has received a copy of Monument Health's Notice of Privacy Practices.

Signature captured at 4/9/2024 09:27 AM

**Jasmine Tomek**
Witness

 **MONUMENT** HEALTH

 ECONSENT

Walsanen, Chyenne M
CSN:
DOB:
MRN:
Adm Date: 052224



## Informed Consent for Surgery and Procedures

The Provider, BUEHNER, MARVIN [3219], has told me I have the following condition(s):
I have chosen as treatment for my condition(s) to have the following procedure(s):
  Cesarean Section

**Operative Side:**

This procedure will be performed at .
The provider has told me the reason for this procedure and how it is usually done. I understand that procedures have risks such as severe loss of blood, infection, and/or heart stoppage. My provider has told me about this procedure's/treatment's anticipated benefits, its material risks, and alternative therapies.

No guarantees or promises have been made to me that this procedure will make my condition better.
I permit the provider named above and such other practitioners or persons as are needed to assist him/her to perform this procedure at the above named facility. I understand that providers, other practitioners, and medical students including but not limited to residents could be performing important tasks related to my procedure/treatment. Qualified medical practitioners will only perform tasks that are within their scope of practice and for which they have been granted privileges at the hospital.

I approve the administration of sedation and the use of local anesthetics, drugs and medicines as may be deemed appropriate. If they will be used, the risks and benefits/alternatives of sedation have been explained to me by the procedural provider.

I approve the use of photography, closed circuit television recording and to use the photographs and other materials for study, educational and scientific purposes, in accordance with ordinary practices of the facility. I consent to have my procedure observed, for educational purposes, by individual(s) other than those assisting the provider during the procedure.

---

**If I Accept Blood Products:**
I understand certain surgeries, procedures, or illnesses may result in loss of blood. I authorize the administration of blood and/or blood components during the procedure as well as during the course of my hospital stay. If blood will be used, the risks, benefits/alternatives have been explained to me by the provider.

**If I Refuse Blood Products:**
I request that NO blood derivative be administered to me. I hereby release the hospital, its personnel, the attending provider and its agents from any responsibility whatsoever for unfavorable reactions or any untoward results due to my refusal to permit the use of blood or its derivatives. The possible risks and consequences of such refusal on my part have been fully explained and I fully understand such risks and consequences may occur as a result of my refusal.

**BLOOD AND BLOOD PRODUCTS ARE ACCEPTED**

---

**To be completed by the patient:**
The provider has told me that sometimes during surgery it is discovered that more surgery is needed right away. If I need

**MONUMENT**
**HEALTH**
MH Rapid City Clinic Flormann St

ETREATCH

Waisanen, Chyenne
DOB:              , Female
MRN:
CSN:
DOS: 10/29/2021



**Consent to Treatment:**
**Clinic, Recurring Series,**
**and Outpatient Services**
Page 1 of 2

1. **Consent for Medical Care.** The Undersigned, whether as patient or as agent, consents to the following:
    a. All initiation of care, consultation, treatment, and procedures to be performed (including emergency treatment or services). The treatment and procedures may include, but are not limited to, laboratory tests, x-rays , p h y s i c a l examinations, injections, medical or surgical treatments or procedures, anesthesia, or other services rendered under the general and special instructions of the patient's provider.
    b. Testing for HIV antibody (AIDS), hepatitis, or any bloodborne pathogen should the healthcare worker have an exposure to the patient's blood or other body fluids.
    c. The disposal of any body parts or tissues removed according to Monument Health policy, including the use of de-identified specimens for research purposes.
    d. Transfer and transportation to another facility for further care as instructed by the patient's provider.
    e. Allow the patient's prescription medication history to be obtained from external electronic sources.
2. **General Risks.** The Undersigned, whether as patient or as agent, understands that the practice of medicine and surgery is not an exact science and that diagnosis and treatment may involve risks of injury or even death. No guarantees can or have been made regarding the results of examinations, procedures, or treatment.
3. **Healthcare Providers/Relationships.** The Undersigned, whether as patient or as agent, understands:
    a. That providers furnishing services to the patient, including the radiologists, pathologists, anesthesiologists, emergency room providers, and the patient's attending and consulting providers, may be independent contractors, independent practitioners, or employees of Monument Health. Only employees of Monument Health may be considered agents of Monument Health. Additional clarification should be made by asking the patient's providers.
    b. That among those who may care for the patient at this Monument Health facility are medical, nursing, and other healthcare students who, unless requested otherwise, may be present or administer care as part of their training.
    c. That Monument Health may utilize certain electronic technologies to communicate between healthcare providers and monitor patients receiving care at Monument Health facilities. Examples include but are not limited to eICU, Telemedicine, and Telepharmacy.
4. **Release of Information.** The Undersigned, whether as patient or as agent, authorizes the following:
    a. Monument Health may disclose all or portions of the patient's medical record to any person or entity or their agents who may be liable to pay for all or a portion of the charges. Monument Health's authority shall include but is not limited to release of the patient's diagnosis, surgical procedure, plan of care, and benefits by telephone at the time of appointment check-in or during or after the appointment. The entities to whom the information may be released shall include but not be limited to insurance companies, health maintenance organizations, worker's c o m p e n s a t i o n carriers, or government or other payors or their agents, such as utilization review, rehabilitation, or auditing agencies.
    b. Release of clinical information to providers and facilities for the purpose of continued healthcare. The patient or agent understands that healthcare providers participate in Monument Health's Connect Program, and that patient data will be stored in a shared community electronic record. This clinical data may be shared with Monument Health, its affiliates, and other healthcare providers whom are associated with the patient's medical care.
    c. Gives consent to Monument Health and its respective subsidiaries, affiliates, and vendors, to contact the Undersigned at the number provided using any means of communication, including, but not limited to, calls placed to a cellular phone using an automated dialing device and calls using prerecorded messages and/or SMS text messages, regarding any current or future accounts, outstanding balances, or payments owed to Monument Health or its respective subsidiaries and affiliates even if the Undersigned will be charged by his or her service provider(s) for receiving such communications. The Undersigned understands he or she will be provided the option to update communication preferences during the servicing of accounts and will notify Monument Health if he or she wishes to revoke this method of notification.
5. **Patient Rights and Responsibilities.** The Undersigned, whether as patient or as agent, acknowledges he or she has been given the opportunity to review the Patient Rights and Responsibilities.
6. **Notice of Privacy Practices.** The Undersigned, whether as patient or as agent, acknowledges that the law requires that Monument Health maintain the privacy of the patient's Protected Health Information and that Monument Health provide a notice of legal duties and privacy policies with respect to protected health information. By signing below, the Undersigned acknowledges that he or she has received a copy of Monument Health's Notice of Privacy Practices.




**MONUMENT**
H E A L T H
MH Rapid City Clinic 5th St Multi
Specialty


ETREATCH

Waisanen, Chyenne
DOB: ████████     Female
MRN: ████████
CSN:
DOS: 10/27/2021



# Consent to Treatment:
# Clinic, Recurring Series,
# and Outpatient Services
Page 2 of 2

acknowledges that he or she has received a copy of Monument Health's Notice of Privacy Practices.

Signature captured at 10/27/2021 02:28 PM

Patient or Agent Signature

2nd Witness Signature (If Applicable)

Printed Name if Signature is Other than the Patient's

Relationship to Patient

**Krista Schnell**
Witness

**MONUMENT** HEALTH
MH Rapid City Clinic Flormann St

ETREATCH

Waisanen, Chyenne M
DOB:                    Female
MRN:
CSN:
DOS: 8/8/2024



## Consent to Treatment:
## Clinic, Recurring Series,
## and Outpatient Services
Page 1 of 2

I. **Consent for Medical Care.** The Undersigned, whether as patient or as agent, consents to the following:

    a. All initiation of care, consultation, treatment, and procedures to be performed (including emergency treatment or services). The treatment and procedures may include, but are not limited to, laboratory tests, x-rays, physical examinations, injections, medical or surgical treatments or procedures, anesthesia, other services rendered under the general and special instructions of the patient's provider, or restraints that are necessary for safety and/or medical healing..

    b. Testing for HIV antibody (AIDS), hepatitis, or any bloodborne pathogen should the healthcare worker have an exposure to the patient's blood or other body fluids.

    c. The disposal of any body parts or tissues removed according to Monument Health policy, including the use of de-identified specimens for research purposes.

    d. Transfer and transportation to another facility for further care as instructed by the patient's provider.

    e. Allow the patient's prescription medication history to be obtained from external electronic sources.

2. **General Risks.** The Undersigned, whether as patient or as agent, understands that the practice of medicine and surgery is not an exact science and that diagnosis and treatment may involve risks of injury or even death. No guarantees can or have been made regarding the results of examinations, procedures, or treatment.

3. **Healthcare Providers/Relationships.** The Undersigned, whether as patient or as agent, understands:

    a. That providers furnishing services to the patient, including the radiologists, pathologists, anesthesiologists, emergency room providers, and the patient's attending and consulting providers, may be independent contractors, independent practitioners, or employees of Monument Health. Only employees of Monument Health may be considered agents of Monument Health. Additional clarification should be made by asking the patient's providers.

    b. That among those who may care for the patient at this Monument Health facility are medical, nursing, and other healthcare students who, unless requested otherwise, may be present or administer care as part of their training.

    c. That to support the care provided, Monument Health is using technology in some settings that uses artifical intelligence to generate entries in the patient's medical record based on secure audio recordings, machine learning, and cloud-based voice recognition of the visit or exam. A third-party service processes the recording and creates information for the medical record that is reviewed and approved by the patient's provider.

    d. That Monument Health may utilize certain electronic technologies to communicate between healthcare providers and monitor patients receiving care at Monument Health facilities. Examples include but are not limited to eICU, Telemedicine, and Telepharmacy, which use video cameras in rooms where patients receive care to transmit what happens in those rooms to caregivers.

4. **Release of Information.** The Undersigned, whether as patient or as agent, authorizes the following:

    a. Monument Health may disclose all or portions of the patient's medical record to any person or entity or their agents who may be liable to pay for all or a portion of the charges. Monument Health's authority shall include but is not limited to release of the patient's diagnosis, surgical procedure, plan of care, and benefits by telephone at the time of appointment check-in or during or after the appointment. The entities to whom the information may be released shall include but not be limited to insurance companies, health maintenance organizations, worker's compensation carriers, or government or other payors or their agents, such as utilization review, rehabilitation, or auditing agencies.

    b. Release of clinical information to providers and facilities for the purpose of continued healthcare. The patient or agent understands that healthcare providers participate in Monument Health's Connect Program, and that patient data will be stored in a shared community electronic record. This clinical data may be shared with Monument Health, its affiliates, and other healthcare providers whom are associated with the patient's medical care.

    c. Gives consent to Monument Health and its respective subsidiaries, affiliates, and vendors, to contact the Undersigned at the number provided using any means of communication, including, but not limited to, calls placed to a cellular phone using an automated dialing device and calls using prerecorded messages and/or SMS text messages, regarding any current or future accounts, outstanding balances, or payments owed to Monument Health or its respective subsidiaries and affiliates even if the Undersigned will be charged by his or her service provider(s) for receiving such communications. The Undersigned understands he or she will be provided the option to update communication preferences during the servicing of accounts and will notify Monument Health if he or she wishes to revoke this method of notification.

**MONUMENT** HEALTH

MH Rapid City Urgent Care
Jackson Blvd

ETREATCH

Waisanen, Chyenne M
DOB: ███████ o. Female
MRN: ████████
CSN: ████████
DOS: 5/29/2024

# Consent to Treatment:
# Clinic, Recurring Series,
# and Outpatient Services
Page 2 of 2

method of notification.

5. **Patient Rights and Responsibilities.** The Undersigned, whether as patient or as agent, acknowledges he or she has been given the opportunity to review the Patient Rights and Responsibilities.

6. **Notice of Privacy Practices.** The Undersigned, whether as patient or as agent, acknowledges that the law requires that Monument Health maintain the privacy of the patient's Protected Health Information and that Monument Health provide a notice of legal duties and privacy policies with respect to protected health information. By signing below, the Undersigned acknowledges that he or she has received a copy of Monument Health's Notice of Privacy Practices.

Signature captured at 5/29/2024 11.58 AM

**Kelsey Matthews**
Witness



**MONUMENT** HEALTH
MH Rapid City Hospital


ETREATH

**Waisanen, Chyenne M**
DOB:                    Female
MRN
CSN:
DOS: 5/22/2024 0844



## Consent to Treatment and Conditions of Admission
Page 2 of 3

5. **Personal Valuables.** The Undersigned, whether as patient or as agent, acknowledges and understands that keeping personal valuables is highly discouraged, and he or she is responsible for them (including money, jewelry, dentures, hearing aids, eyeglasses, etc.) while a patient at Monument Health. The hospital maintains a safe for safekeeping of personal valuables, and the Undersigned releases Monument Health from any liability for loss or damage due to the patient's negligence or that of any Monument Health employee unless the valuables are placed in the safe.

6. **Promise to Pay Account.** The Undersigned agrees that he or she will pay for the care the patient receives. The person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the account charges in accordance with the rates and policies of Monument Health. He or she also agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory amount per year.

7. **Guarantee of Account.** The Undersigned understands that Monument Health must be paid for the care the patient receives. The Undersigned may expect that someone else is going to pay for the patient's care, as there may be insurance coverage, or the patient may have been injured due to someone else's negligence, or there may be other circumstances; however, the Undersigned agrees to be personally responsible for paying for the care received. Even if the Undersigned believes another party is obligated to pay for the care, he or she still agrees to personally guarantee Monument Health will be paid for the care the patient receives. Therefore, the person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the charges in accordance with the rates and policies of Monument Health. He or she agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory allowable interest rate per year.

8. **Patient Portion Due at Time of Service.** The Undersigned, whether as patient or as agent, acknowledges all co-payments must be paid at time of service. This arrangement is part of the patient's contract with his or her insurance company. For procedures, the Undersigned will be asked to pay a co-insurance and deductible. Upon request, an estimate of services will be given prior to the service being performed.

9. **Insurance and Claims Submission.** The Undersigned, whether as patient or as agent, understands Monument Health will submit insurance claims to most insurance companies; however, if Monument Health does not participate with the patient's insurance plan, it will be the responsibility of the Undersigned to pay-in-full at time of service. The Undersigned should be aware that some or all of the services may be non-covered by insurers, and many insurance companies require pre-authorization for various procedures. Monument Health will assist in obtaining the necessary pre-authorizations when needed; however, it is the responsibility of the Undersigned to determine if the patient's insurance company requires one. Failure to obtain the necessary pre-authorization or second opinion may result in a reduction or denial of benefits by the insurance company, which would result in the requirement of the Undersigned to pay the full amount due. For employer-requested services, Monument Health will confirm pre-authorization and guarantee of payment prior to the service being rendered.

10. **Assignment of Insurance Benefits.** If the patient's care is covered by insurance, the Undersigned agrees the insurance company is to pay Monument Health directly for the patient's care. Additionally, certain physicians (e.g., anesthesiologists, oncologists, pathologists, and radiologists) may participate in the patient's care. These physicians are not employees or agents of Monument Health, and they will bill separately for their care. The person signing this form, whether he or she is the patient or is signing for the patient, authorizes direct payment to Monument Health and/or the physicians of any insurance benefits, settlements, or awards otherwise payable for this hospitalization or outpatient service (including emergency services if rendered) at a rate not to exceed the respective charges of Monument Health and/or the physicians. The Undersigned understands he or she is financially responsible for charges not paid by insurance or any other third-party payor.

11. **Patient Rights and Responsibilities.** The Undersigned, whether as patient or as agent, acknowledges he or she has been given the opportunity to review the Patient Rights and Responsibilities.

12. **Notice of Privacy Practices.** The Undersigned, whether as patient or as agent, acknowledges that the law requires that Monument Health maintain the privacy of the patient's Protected Health Information and that Monument Health provide a notice of legal duties and privacy policies with respect to protected health information. By signing below, the Undersigned acknowledges that he or she has received a copy of Monument Health's Notice of Privacy Practices.

13. **Minor Patients.** The Undersigned understands that the parent or guardian accompanying a minor is responsible for payment. An unaccompanied minor will not be seen without a minor consent form signed by the parent or guardian, and



**MONUMENT**
HEALTH
MH Rapid City Hospital

Waisanen, Chyenne M
DOB: ▇▇▇▇ Female
MRN: ▇▇▇▇
CSN: ▇▇▇▇
DOS: 5/22/2024 0644



## Consent to Treatment and
## Conditions of Admission
Page 3 of 3

the minor must bring his or her co-payment or patient portion due at the time of service.

14. **Providers May Not Be On-Site 24 Hours Per Day, 7 Days Per Week.** The Undersigned, whether as patient or as agent, understands the following:

   a. Monument Health's Critical Access Hospitals (Custer, Lead-Deadwood, and Sturgis) may not have a medical provider on-site 24 hours per day, 7 days per week; however, a medical provider is on-call 24 hours per day, 7 days per week, with a response time to the facility within 30 minutes to manage any emergency conditions that may occur.

   b. Monument Health's Spearfish Surgery Center, a department of Monument Health Spearfish Hospital, does not have a physician and/or provider in-house 24 hours per day, 7 days per week. An on-call physician or provider is available 24 hours per day, 7 days per week, to meet the needs of any patient who develops an emergency medical condition.

_____
Signature captured by Cheyenne Waisanen at 5/22/2024 6:46 AM
Cheyenne Waisanen

_____
Saved signature used by Tami Rae Wipf at 5/22/2024 6:46 AM
Tami Rae Wipf

**Tami Rae Wipf**
Witness



**MONUMENT**
HEALTH
MH Rapid City Clinic Flormann St


EFINAGR

Waisanen, Chyenne M
DOB: Female
MRN:
CSN:
DOS: 8/8/2024



## Financial Responsibility Agreement
Page 1 of 1

1. **Patient Portion Due at Time of Service.** The Undersigned, whether as patient or as agent, acknowledges all co-payments must be paid at time of service. This arrangement is part of the patient's contract with his or her insurance company. For procedures, the Undersigned will be asked to pay a co-insurance and deductible. Upon request, an estimate of services will be given prior to the service being performed.

2. **Insurance and Claims Submission.** The Undersigned, whether as patient or as agent, understands Monument Health will submit insurance claims to most insurance companies; however, if Monument Health does not participate with the patient's insurance plan, it will be the responsibility of the Undersigned to pay-in-full at time of service. The Undersigned should be aware that some or all of the services may be non-covered by insurers, and many insurance companies require pre-authorization for various procedures. Monument Health will assist in obtaining the necessary pre-authorizations when needed; however, it is the responsibility of the Undersigned to determine if the patient's insurance company requires one. Failure to obtain the necessary pre-authorization or second opinion may result in a reduction or denial of benefits by the insurance company, which would result in the requirement of the Undersigned to pay the full amount due. For employer-requested services, Monument Health will confirm pre-authorization and guarantee of payment prior to the service being rendered.

3. **Assignment of Insurance Benefits.** If the patient's care is covered by insurance, the Undersigned agrees the insurance company is to pay Monument Health directly for the patient's care. Additionally, certain physicians (e.g., anesthesiologists, oncologists, pathologists, and radiologists) may participate in the patient's care. These physicians are not employees or agents of Monument Health, and they will bill separately for their care. The person signing this form, whether he or she is the patient or is signing for the patient, authorizes direct payment to Monument Health and/or the physicians of any insurance benefits, settlements, or awards otherwise payable for this outpatient service (including emergency services if rendered) at a rate not to exceed the respective charges of Monument Health and/or the physicians. The Undersigned understands he or she is financially responsible for charges not paid by insurance or any other third-party payor.

4. **Promise to Pay Account.** The Undersigned agrees that he or she will pay for the care the patient receives. The person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the account charges in accordance with the rates and policies of Monument Health. If the patient is uninsured or has a large deductible, payment arrangements can be made with a Monument Health Patient Financial Counselor. The Undersigned also agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory amount per year.

5. **Guarantee of Account.** The Undersigned understands that Monument Health must be paid for the care the patient receives. The Undersigned may expect that someone else is going to pay for the patient's care, as there may be insurance coverage, or the patient may have been injured due to someone else's negligence, or there may be other circumstances; however, the Undersigned agrees to be personally responsible for paying for the care received. Even if the Undersigned believes another party is obligated to pay for the care, he or she still agrees to personally guarantee Monument Health will be paid for the care the patient receives. Therefore, the person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the charges in accordance with the rates and policies of Monument Health. He or she agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory allowable interest rate per year.

6. **Minor Patients.** The Undersigned understands that the parent or guardian accompanying a minor is responsible for payment. An unaccompanied minor will not be seen without a minor consent form signed by the parent or guardian, and the minor must bring his or her co-payment or patient portion due at the time of service.

Signature captured by Chyenne M Waisanen at 8/8/2024 12:41 PM

Chyenne M Waisanen

**Renate Naber**
Witness

**MONUMENT**
HEALTH
MH Rapid City Urgent Care
Jackson Blvd

EFINAGR

Waisanen, Chyenne M
DOB:              b. Female
MRN:
CSN:
DOS: 5/29/2024



## Financial Responsibility Agreement
Page 1 of 1

1. **Patient Portion Due at Time of Service.** The Undersigned, whether as patient or as agent, acknowledges all co-payments must be paid at time of service. This arrangement is part of the patient's contract with his or her insurance company. For procedures, the Undersigned will be asked to pay a co-insurance and deductible. Upon request, an estimate of services will be given prior to the service being performed.

2. **Insurance and Claims Submission.** The Undersigned, whether as patient or as agent, understands Monument Health will submit insurance claims to most insurance companies; however, if Monument Health does not participate with the patient's insurance plan, it will be the responsibility of the Undersigned to pay-in-full at time of service. The Undersigned should be aware that some or all of the services may be non-covered by insurers, and many insurance companies require pre-authorization for various procedures. Monument Health will assist in obtaining the necessary pre-authorizations when needed; however, it is the responsibility of the Undersigned to determine if the patient's insurance company requires one. Failure to obtain the necessary pre-authorization or second opinion may result in a reduction or denial of benefits by the insurance company, which would result in the requirement of the Undersigned to pay the full amount due. For employer-requested services, Monument Health will confirm pre-authorization and guarantee of payment prior to the service being rendered.

3. **Assignment of Insurance Benefits.** If the patient's care is covered by insurance, the Undersigned agrees the insurance company is to pay Monument Health directly for the patient's care. Additionally, certain physicians (e.g., anesthesiologists, oncologists, pathologists, and radiologists) may participate in the patient's care. These physicians are not employees or agents of Monument Health, and they will bill separately for their care. The person signing this form, whether he or she is the patient or is signing for the patient, authorizes direct payment to Monument Health and/or the physicians of any insurance benefits, settlements, or awards otherwise payable for this outpatient service (including emergency services if rendered) at a rate not to exceed the respective charges of Monument Health and/or the physicians. The Undersigned understands he or she is financially responsible for charges not paid by insurance or any other third-party payor.

4. **Promise to Pay Account.** The Undersigned agrees that he or she will pay for the care the patient receives. The person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the account charges in accordance with the rates and policies of Monument Health. If the patient is uninsured or has a large deductible, payment arrangements can be made with a Monument Health Patient Financial Counselor. The Undersigned also agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory amount per year.

5. **Guarantee of Account.** The Undersigned understands that Monument Health must be paid for the care the patient receives. The Undersigned may expect that someone else is going to pay for the patient's care, as there may be insurance coverage, or the patient may have been injured due to someone else's negligence, or there may be other circumstances; however, the Undersigned agrees to be personally responsible for paying for the care received. Even if the Undersigned believes another party is obligated to pay for the care, he or she still agrees to personally guarantee Monument Health will be paid for the care the patient receives. Therefore, the person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the charges in accordance with the rates and policies of Monument Health. He or she agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory allowable interest rate per year.

6. **Minor Patients.** The Undersigned understands that the parent or guardian accompanying a minor is responsible for payment. An unaccompanied minor will not be seen without a minor consent form signed by the parent or guardian, and the minor must bring his or her co-payment or patient portion due at the time of service.

Signature captured by Chyenne M Waisanen at 5/29/2024 11:58 AM

Chyenne M Waisanen

**Kelsey Matthews**
Witness



**MONUMENT**
HEALTH
MH Rapid City Hospital

ETREATH

Waisanen, Chyenne M
DOB:                      Female
MRN:
CSN:
DOS: 3/24/2024 1357



## Consent to Treatment and Conditions of Admission
Page 2 of 3

5. **Personal Valuables.** The Undersigned, whether as patient or as agent, acknowledges and understands that keeping personal valuables is highly discouraged, and he or she is responsible for them (including money, jewelry, dentures, hearing aids, eyeglasses, etc.) while a patient at Monument Health. The hospital maintains a safe for safekeeping of personal valuables, and the Undersigned releases Monument Health from any liability for loss or damage due to the patient's negligence or that of any Monument Health employee unless the valuables are placed in the safe.

6. **Promise to Pay Account.** The Undersigned agrees that he or she will pay for the care the patient receives. The person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the account charges in accordance with the rates and policies of Monument Health. He or she also agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory amount per year.

7. **Guarantee of Account.** The Undersigned understands that Monument Health must be paid for the care the patient receives. The Undersigned may expect that someone else is going to pay for the patient's care, as there may be insurance coverage, or the patient may have been injured due to someone else's negligence, or there may be other circumstances; however, the Undersigned agrees to be personally responsible for paying for the care received. Even if the Undersigned believes another party is obligated to pay for the care, he or she still agrees to personally guarantee Monument Health will be paid for the care the patient receives. Therefore, the person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the charges in accordance with the rates and policies of Monument Health. He or she agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory allowable interest rate per year.

8. **Patient Portion Due at Time of Service.** The Undersigned, whether as patient or as agent, acknowledges all co-payments must be paid at time of service. This arrangement is part of the patient's contract with his or her insurance company. For procedures, the Undersigned will be asked to pay a co-insurance and deductible. Upon request, an estimate of services will be given prior to the service being performed.

9. **Insurance and Claims Submission.** The Undersigned, whether as patient or as agent, understands Monument Health will submit insurance claims to most insurance companies; however, if Monument Health does not participate with the patient's insurance plan, it will be the responsibility of the Undersigned to pay-in-full at time of service. The Undersigned should be aware that some or all of the services may be non-covered by insurers, and many insurance companies require pre-authorization for various procedures. Monument Health will assist in obtaining the necessary pre-authorizations when needed; however, it is the responsibility of the Undersigned to determine if the patient's insurance company requires one. Failure to obtain the necessary pre-authorization or second opinion may result in a reduction or denial of benefits by the insurance company, which would result in the requirement of the Undersigned to pay the full amount due. For employer-requested services, Monument Health will confirm pre-authorization and guarantee of payment prior to the service being rendered.

10. **Assignment of Insurance Benefits.** If the patient's care is covered by insurance, the Undersigned agrees the insurance company is to pay Monument Health directly for the patient's care. Additionally, certain physicians (e.g., anesthesiologists, oncologists, pathologists, and radiologists) may participate in the patient's care. These physicians are not employees or agents of Monument Health, and they will bill separately for their care. The person signing this form, whether he or she is the patient or is signing for the patient, authorizes direct payment to Monument Health and/or the physicians of any insurance benefits, settlements, or awards otherwise payable for this hospitalization or outpatient service (including emergency services if rendered) at a rate not to exceed the respective charges of Monument Health and/or the physicians. The Undersigned understands he or she is financially responsible for charges not paid by insurance or any other third-party payor.

11. **Patient Rights and Responsibilities.** The Undersigned, whether as patient or as agent, acknowledges he or she has been given the opportunity to review the Patient Rights and Responsibilities.

12. **Notice of Privacy Practices.** The Undersigned, whether as patient or as agent, acknowledges that the law requires that Monument Health maintain the privacy of the patient's Protected Health Information and that Monument Health provide a notice of legal duties and privacy policies with respect to protected health information. By signing below, the Undersigned acknowledges that he or she has received a copy of Monument Health's Notice of Privacy Practices.

13. **Minor Patients.** The Undersigned understands that the parent or guardian accompanying a minor is responsible for payment. An unaccompanied minor will not be seen without a minor consent form signed by the parent or guardian, and



**MONUMENT**
HEALTH
MH Rapid City Hospital

ETREATH

Waisanen, Chyenne M
DOB:                    Female
MRN:
CSN:
DOS: 3/24/2024 1357



## Consent to Treatment and
## Conditions of Admission
Page 3 of 3

the minor must bring his or her co-payment or patient portion due at the time of service.

14. **Providers May Not Be On-Site 24 Hours Per Day, 7 Days Per Week.** The Undersigned, whether as patient or as agent, understands the following:

a. Monument Health's Critical Access Hospitals (Custer, Lead-Deadwood, and Sturgis) may not have a medical provider on-site 24 hours per day, 7 days per week; however, a medical provider is on-call 24 hours per day, 7 days per week, with a response time to the facility within 30 minutes to manage any emergency conditions that may occur.

b. Monument Health's Spearfish Surgery Center, a department of Monument Health Spearfish Hospital, does not have a physician and/or provider in-house 24 hours per day, 7 days per week. An on-call physician or provider is available 24 hours per day, 7 days per week, to meet the needs of any patient who develops an emergency medical condition.

---

Signature captured by Chyenne Waisanen at 3/24/2024 01:59 PM

Chyenne Waisanen

---

Saved signature used by Janie Cuny at 3/24/2024 01:59 PM

Janie Cuny

**Janie Cuny**
Witness

**MONUMENT**
**HEALTH**
MH Rapid City Clinic Caregiver Cir

ETREATCH

Walsanen, Cheyenne
DOB: ██████████, Female
MRN: ████████
CSN: █████████
DOS: 9/1/2021



## Consent to Treatment:
## Clinic, Recurring Series,
## and Outpatient Services
Page 1 of 2

1. **Consent for Medical Care.** The Undersigned, whether as patient or as agent, consents to the following:
   a. All initiation of care, consultation, treatment, and procedures to be performed (including emergency treatment or services). The treatment and procedures may include, but are not limited to, laboratory tests, x-rays, physical examinations, injections, medical or surgical treatments or procedures, anesthesia, or other services rendered under the general and special instructions of the patient's provider.
   b. Testing for HIV antibody (AIDS), hepatitis, or any bloodborne pathogen should the healthcare worker have an exposure to the patient's blood or other body fluids.
   c. The disposal of any body parts or tissues removed according to Monument Health policy, including the use of de-identified specimens for research purposes.
   d. Transfer and transportation to another facility for further care as instructed by the patient's provider.
   e. Allow the patient's prescription medication history to be obtained from external electronic sources.
2. **General Risks.** The Undersigned, whether as patient or as agent, understands that the practice of medicine and surgery is not an exact science and that diagnosis and treatment may involve risks of injury or even death. No guarantees can or have been made regarding the results of examinations, procedures, or treatment.
3. **Healthcare Providers/Relationships.** The Undersigned, whether as patient or as agent, understands:
   a. That providers furnishing services to the patient, including the radiologists, pathologists, anesthesiologists, emergency room providers, and the patient's attending and consulting providers, may be independent contractors, independent practitioners, or employees of Monument Health. Only employees of Monument Health may be considered agents of Monument Health. Additional clarification should be made by asking the patient's providers.
   b. That among those who may care for the patient at this Monument Health facility are medical, nursing, and other healthcare students who, unless requested otherwise, may be present or administer care as part of their training.
   c. That Monument Health may utilize certain electronic technologies to communicate between healthcare providers and monitor patients receiving care at Monument Health facilities. Examples include but are not limited to eICU, Telemedicine, and Telepharmacy.
4. **Release of Information.** The Undersigned, whether as patient or as agent, authorizes the following:
   a. Monument Health may disclose all or portions of the patient's medical record to any person or entity or their agents who may be liable to pay for all or a portion of the charges. Monument Health's authority shall include but is not limited to release of the patient's diagnosis, surgical procedure, plan of care, and benefits by telephone at the time of appointment check-in or during or after the appointment. The entities to whom the information may be released shall include but not be limited to insurance companies, health maintenance organizations, worker's compensation carriers, or government or other payors or their agents, such as utilization review, rehabilitation, or auditing agencies.
   b. Release of clinical information to providers and facilities for the purpose of continued healthcare. The patient or agent understands that healthcare providers participate in Monument Health's Connect Program, and that patient data will be stored in a shared community electronic record. This clinical data may be shared with Monument Health, its affiliates, and other healthcare providers whom are associated with the patient's medical care.
   c. Gives consent to Monument Health and its respective subsidiaries, affiliates, and vendors, to contact the Undersigned at the number provided using any means of communication, including, but not limited to, calls placed to a cellular phone using an automated dialing device and calls using prerecorded messages and/or SMS text messages, regarding any current or future accounts, outstanding balances, or payments owed to Monument Health or its respective subsidiaries and affiliates even if the Undersigned will be charged by his or her service provider(s) for receiving such communications. The Undersigned understands he or she will be provided the option to update communication preferences during the servicing of accounts and will notify Monument Health if he or she wishes to revoke this method of notification.
5. **Patient Rights and Responsibilities.** The Undersigned, whether as patient or as agent, acknowledges he or she has been given the opportunity to review the Patient Rights and Responsibilities.
6. **Notice of Privacy Practices.** The Undersigned, whether as patient or as agent, acknowledges that the law requires that Monument Health maintain the privacy of the patient's Protected Health Information and that Monument Health provide a notice of legal duties and privacy policies with respect to protected health information. By signing below, the Undersigned acknowledges that he or she has received a copy of Monument Health's Notice of Privacy Practices.



**MONUMENT**
**HEALTH**
MH Rapid City Clinic Caregiver Cir


ETREATCH

Walsanen, Cheyenne
DOB:                    Female
MRN:
CSN:
DOS: 9/1/2021



# Consent to Treatment:
# Clinic, Recurring Series,
# and Outpatient Services
Page 2 of 2

Signature captured at 9/1/2021 01:05 PM

Patient or Agent Signature

2nd Witness Signature (If Applicable)

Printed Name If Signature is Other than the Patient's

Relationship to Patient

**Kimberly Keller**
Witness



**MONUMENT**
HEALTH
MH Rapid City Clinic Caregiver Cir

EFINAGR

Walsanan, Cheyenne
DOB: _____ o. Female
MRN:
CSN:
DOS: 9/1/2021

## Financial Responsibility Agreement
Page 1 of 1

1. **Patient Portion Due at Time of Service.** The Undersigned, whether as patient or as agent, acknowledges all co-payments must be paid at time of service. This arrangement is part of the patient's contract with his or her insurance company. For procedures, the Undersigned will be asked to pay a co-insurance and deductible. Upon request, an estimate of services will be given prior to the service being performed.

2. **Insurance and Claims Submission.** The Undersigned, whether as patient or as agent, understands Monument Health will submit insurance claims to most insurance companies; however, if Monument Health does not participate with the patient's insurance plan, it will be the responsibility of the Undersigned to pay-in-full at time of service. The Undersigned should be aware that some or all of the services may be non-covered by insurers, and many insurance companies require pre-authorization for various procedures. Monument Health will assist in obtaining the necessary pre-authorizations when needed; however, it is the responsibility of the Undersigned to determine if the patient's insurance company requires one. Failure to obtain the necessary pre-authorization or second opinion may result in a reduction or denial of benefits by the insurance company, which would result in the requirement of the Undersigned to pay the full amount due. For employer-requested services, Monument Health will confirm pre-authorization and guarantee of payment prior to the service being rendered.

3. **Assignment of Insurance Benefits.** If the patient's care is covered by insurance, the Undersigned agrees the insurance company is to pay Monument Health directly for the patient's care. Additionally, certain physicians (e.g., anesthesiologists, oncologists, pathologists, and radiologists) may participate in the patient's care. These physicians are not employees or agents of Monument Health, and they will bill separately for their care. The person signing this form, whether he or she is the patient or is signing for the patient, authorizes direct payment to Monument Health and/or the physicians of any insurance benefits, settlements, or awards otherwise payable for this outpatient service (including emergency services if rendered) at a rate not to exceed the respective charges of Monument Health and/or the physicians. *The Undersigned understands he or she is financially responsible for charges not paid by insurance or any other third-party payor.*

4. **Promise to Pay Account.** The Undersigned agrees that he or she will pay for the care the patient receives. The person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the account charges in accordance with the rates and policies of Monument Health. If the patient is uninsured or has a large deductible, payment arrangements can be made with a Monument Health Patient Financial Counselor. The Undersigned also agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory amount per year.

5. **Guarantee of Account.** The Undersigned understands that Monument Health must be paid for the care the patient receives. The Undersigned may expect that someone else is going to pay for the patient's care, as there may be insurance coverage, or the patient may have been injured due to someone else's negligence, or there may be other circumstances; however, the Undersigned agrees to be personally responsible for paying for the care received. Even if the Undersigned believes another party is obligated to pay for the care, he or she still agrees to personally guarantee Monument Health will be paid for the care the patient receives. Therefore, the person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the charges in accordance with the rates and policies of Monument Health. He or she agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory allowable interest rate per year.

6. **Minor Patients.** The Undersigned understands that the parent or guardian accompanying a minor is responsible for payment. An unaccompanied minor will not be seen without a minor consent form signed by the parent or guardian, and the minor must bring his or her co-payment or patient portion due at the time of service.

Signature captured with Topaz by Cheyenne Walsanen at 9/1/2021 01:05 PM
Patient or Agent Signature

Printed Name If Signature Is Other than the Patient's

**Kimberly Keller**

Relationship to Patient                                              Witness



**MONUMENT**
HEALTH
MH Rapid City Hospital


ETREATH

Waisanen, Chyenne M
DOB:                    Female
MRN:
CSN:
DOS: 3/24/2024 1357



## Consent to Treatment and Conditions of Admission

Page 1 of 3

1. **Consent for Medical and Hospital Care.** The Undersigned, whether as patient or as agent, consents to the following:
   a. All initiation of care, consultation, treatment, and procedures to be performed during this hospitalization or on an outpatient basis (including emergency treatment or services). The treatment and procedures may include, but are not limited to, laboratory tests, x-rays, physical examinations, injections, medical or surgical treatments or procedures, anesthesia, other hospital services rendered under the general and special instructions of the patient's provider, or restraints that are necessary for safety and/or medical healing.
   b. Testing for HIV antibody (AIDS), hepatitis, or any bloodborne pathogen should the healthcare worker have an exposure to the patient's blood or other body fluids.
   c. The disposal of any body parts or tissues removed according to Monument Health policy, including the use of de-identified specimens for research purposes.
   d. Transfer and transportation to another facility for further care as instructed by the patient's provider.
   e. Allow the patient's prescription medication history to be obtained from external electronic sources.
2. **General Risks.** The Undersigned, whether as patient or as agent, understands that the practice of medicine and surgery is not an exact science and that diagnosis and treatment may involve risks of injury or even death. No guarantees can or have been made regarding the results of examinations, procedures, or treatment.
3. **Healthcare Providers/Relationships.** The Undersigned, whether as patient or as agent, understands:
   a. That providers furnishing services to the patient, including the radiologists, pathologists, anesthesiologists, emergency room providers, and the patient's attending and consulting providers, may be independent contractors, independent practitioners, or employees of Monument Health. Only employees of Monument Health may be considered agents of Monument Health. Additional clarification should be made by asking the patient's providers.
   b. That among those who may care for the patient at this Monument Health facility are medical, nursing, and other healthcare students who, unless requested otherwise, may be present or administer care as part of their training.
   c. That to support the care provided, Monument Health is using technology in some settings that uses artifical intelligence to generate entries in the patient's medical record based on secure audio recordings, machine learning, and cloud-based voice recognition of the visit or exam. A third-party service processes the recording and creates information for the medical record that is reviewed and approved by the patient's provider.
   d. That Monument Health may utilize certain electronic technologies to communicate between healthcare providers and monitor patients receiving care at Monument Health facilities. Examples include, but are not limited to, eICU, Telemedicine, and Telepharmacy, which use video cameras in rooms where patients receive care to transmit what happens in those rooms to caregivers.
4. **Release of Information.** The Undersigned, whether as patient or as agent, authorizes the following:
   a. Monument Health may disclose all or portions of the patient's medical record to any person or entity or their agents who may be liable to pay for all or a portion of the charges. Monument Health's authority shall include but is not limited to release of the patient's diagnosis, surgical procedure, plan of care, and benefits by telephone at the time of appointment check-in or admission or during or after the appointment or hospitalization. The entities to whom the information may be released shall include but not be limited to insurance companies, health maintenance organizations, worker's compensation carriers, or government or other payors or their agents, such as utilization review, rehabilitation, or auditing agencies.
   b. Release of clinical information to providers and facilities for the purpose of continued healthcare. The patient or agent understands that healthcare providers participate in Monument Health's Connect Program, and that patient data will be stored in a shared community electronic record. This clinical data may be shared with Monument Health, its affiliates, and other healthcare providers whom are associated with the patient's medical care.
   c. Gives consent to Monument Health and its respective subsidiaries, affiliates, and vendors, to contact the Undersigned at the number provided using any means of communication, including, but not limited to, calls placed to a cellular phone using an automated dialing device and calls using prerecorded messages and/or SMS text messages, regarding any current or future accounts, outstanding balances, or payments owed to Monument Health or its respective subsidiaries and affiliates even if the Undersigned will be charged by his or her service provider(s) for receiving such communications. The Undersigned understands he or she will be provided the option to update communication preferences during the servicing of accounts and will notify Monument Health if he or she wishes to revoke this method of notification.

## Document Information
**Patient Consent: Consent - Other**
03/24/2024 12:00 AM
**Attached To:**
Hospital Encounter on 3/24/24

## Source Information
Interface, Scanned Document Link In

## To print
Click on the scanned image to open a printer friendly version of the document.
For e-signature forms, click the hyperlink.

Consent - Other - Scan on 3/25/2024 2:13 PM

1 of 1 pages printed

**MONUMENT**
HEALTH

**Consent for Magnetic Resonance Imaging During Pregnancy**

Page 1 of 1

Patient
Last Name _____ **Walsanen, Chyenne M**
                DOB:
First Name _____ MRN:
                DOS:
Date of Birth _____
Patient CSN #: _____

Dr. _Voigt_ _____ has told me I have the following condition(s):
_Cholelithiasis_

I have chosen as treatment for my condition(s) to have the following procedure(s)

_MRCP without contrast_

There are currently no known side effects of Magnetic Resonance Imaging (MRI) for the pregnant woman or fetus. In fact, since MRI does not use ionizing radiation, it may be safer than routine x-rays or other tests which use x-rays such as computed tomography.

However, the long term effects of MRI cannot be fully evaluated or known until the technique has been used for many more years. The Food and Drug Administration (FDA) has not formally approved MRI for pregnant women and infants.

Because most providers believe that MRI is safe during pregnancy, many scans of pregnant women are being performed throughout this country and the world. These studies are obtained when the referring provider considers the potential information from the scan to be medically important

Your signature on this form indicates that you have read and understand the above information, that you have had the chance to ask questions, and that you release Monument Health and its providers and personnel from responsibility for any problem or liability that might occur with respect to you, your pregnancy, or your child

| Provider/Nurse Signature | Date | Time |
|---|---|---|
| Dr. Voigt | | |
| Provider/Nurse Printed Name | | |

| Patient Signature (if competent) | Date | Time |
|---|---|---|
| Cheyenne Waisunen | | |
| Patient's Printed Name | | |

| Interpreter Signature (if applicable) | Date | Time |
|---|---|---|

| Surrogate Decision Maker Signature | Date | Time |
|---|---|---|

| Witness Signature | Date | Time |
|---|---|---|
| Claire Mathey | | |
| Witness Printed Name | | |

| Surrogate Decision Maker Printed Name | | |
|---|---|---|

| Witness phone/contact | Date | Time |
|---|---|---|

| Second Provider or Provider Signature for Emergencies for Incompetent Patient and No Family | Date | Time |
|---|---|---|

003697-20210608
Intranet Forms\Consents and Agreements

**CONSENTS**



**MONUMENT**
H E A L T H
MH Rapid City Orthopedic &
Specialty Hospital

ETREATCH

Waisanen, Daniel
DOB: o. Male
MRN:
CSN:
DOS: 10/13/2021

## Consent to Treatment:
## Clinic, Recurring Series,
## and Outpatient Services
Page 1 of 2

1. **Consent for Medical Care.** The Undersigned, whether as patient or as agent, consents to the following:
   a. All initiation of care, consultation, treatment, and procedures to be performed (including emergency treatment or services). The treatment and procedures may include, but are not limited to, laboratory tests, x-rays , p h y s i c a l examinations, injections, medical or surgical treatments or procedures, anesthesia, or other services rendered under the general and special instructions of the patient's provider.
   b. Testing for HIV antibody (AIDS), hepatitis, or any bloodborne pathogen should the healthcare worker have an exposure to the patient's blood or other body fluids.
   c. The disposal of any body parts or tissues removed according to Monument Health policy, including the use of de-identified specimens for research purposes.
   d. Transfer and transportation to another facility for further care as instructed by the patient's provider.
   e. Allow the patient's prescription medication history to be obtained from external electronic sources.
2. **General Risks.** The Undersigned, whether as patient or as agent, understands that the practice of medicine and surgery is not an exact science and that diagnosis and treatment may involve risks of injury or even death. No guarantees can or have been made regarding the results of examinations, procedures, or treatment.
3. **Healthcare Providers/Relationships.** The Undersigned, whether as patient or as agent, understands:
   a. That providers furnishing services to the patient, including the radiologists, pathologists, anesthesiologists, emergency room providers, and the patient's attending and consulting providers, may be independent contractors, independent practitioners, or employees of Monument Health. Only employees of Monument Health may be considered agents of Monument Health. Additional clarification should be made by asking the patient's providers.
   b. That among those who may care for the patient at this Monument Health facility are medical, nursing, and other healthcare students who, unless requested otherwise, may be present or administer care as part of their training.
   c. That Monument Health may utilize certain electronic technologies to communicate between healthcare providers and monitor patients receiving care at Monument Health facilities. Examples include but are not limited to eICU, Telemedicine, and Telepharmacy.
4. **Release of Information.** The Undersigned, whether as patient or as agent, authorizes the following:
   a. Monument Health may disclose all or portions of the patient's medical record to any person or entity or their agents who may be liable to pay for all or a portion of the charges. Monument Health's authority shall include but is not limited to release of the patient's diagnosis, surgical procedure, plan of care, and benefits by telephone at the time of appointment check-in or during or after the appointment. The entities to whom the information may be released shall include but not be limited to insurance companies, health maintenance organizations, worker' s c o m p e n s a t i o n carriers, or government or other payors or their agents, such as utilization review, rehabilitation, or auditing agencies.
   b. Release of clinical information to providers and facilities for the purpose of continued healthcare. The patient or agent understands that healthcare providers participate in Monument Health's Connect Program, and that patient data will be stored in a shared community electronic record. This clinical data may be shared with Monument Health, its affiliates, and other healthcare providers whom are associated with the patient's medical care.
   c. Gives consent to Monument Health and its respective subsidiaries, affiliates, and vendors, to contact the Undersigned at the number provided using any means of communication, including, but not limited to, calls placed to a cellular phone using an automated dialing device and calls using prerecorded messages and/or SMS text messages, regarding any current or future accounts, outstanding balances, or payments owed to Monument Health or its respective subsidiaries and affiliates even if the Undersigned will be charged by his or her service provider(s) for receiving such communications. The Undersigned understands he or she will be provided the option to update communication preferences during the servicing of accounts and will notify Monument Health if he or she wishes to revoke this method of notification.
5. **Patient Rights and Responsibilities.** The Undersigned, whether as patient or as agent, acknowledges he or she has been given the opportunity to review the Patient Rights and Responsibilities.
6. **Notice of Privacy Practices.** The Undersigned, whether as patient or as agent, acknowledges that the law requires that Monument Health maintain the privacy of the patient's Protected Health Information and that Monument Health provide a notice of legal duties and privacy policies with respect to protected health information. By signing below, the Undersigned

CONSENTS



ETREATCH



**Walsanen, Daniel**
DOB:               o. Male
MRN:
CSN:
DOS: 10/13/2021

MH Rapid City Orthopedic &
Specialty Hospital

# Consent to Treatment:
# Clinic, Recurring Series,
# and Outpatient Services
Page 2 of 2

acknowledges that he or she has received a copy of Monument Health's Notice of Privacy Practices.

Signature captured at 10/13/2021 01.56 PM

Patient or Agent Signature

Printed Name if Signature is Other than the Patient's

Relationship to Patient

2nd Witness Signature (If Applicable)

**Halley Foster**
Witness



**MONUMENT**
H E A L T H
MH Rapid City Clinic 5th St Multi
Specialty

ETREATCH

Walsanen, Chyenne
DOB: ▮▮▮▮▮o. Female
MRN:
CSN:
DOS: 10/27/2021

# Consent to Treatment: Clinic, Recurring Series, and Outpatient Services
Page 1 of 2

1. **Consent for Medical Care.** The Undersigned, whether as patient or as agent, consents to the following:
   a. All initiation of care, consultation, treatment, and procedures to be performed (including emergency treatment or services). The treatment and procedures may include, but are not limited to, laboratory tests, x-rays , p h y s i c a l examinations, injections, medical or surgical treatments or procedures, anesthesia, or other services rendered under the general and special instructions of the patient's provider.
   b. Testing for HIV antibody (AIDS), hepatitis, or any bloodborne pathogen should the healthcare worker have an exposure to the patient's blood or other body fluids.
   c. The disposal of any body parts or tissues removed according to Monument Health policy, including the use of de-identified specimens for research purposes.
   d. Transfer and transportation to another facility for further care as instructed by the patient's provider.
   e. Allow the patient's prescription medication history to be obtained from external electronic sources.
2. **General Risks.** The Undersigned, whether as patient or as agent, understands that the practice of medicine and surgery is not an exact science and that diagnosis and treatment may involve risks of injury or even death. No guarantees can or have been made regarding the results of examinations, procedures, or treatment.
3. **Healthcare Providers/Relationships.** The Undersigned, whether as patient or as agent, understands:
   a. That providers furnishing services to the patient, including the radiologists, pathologists, anesthesiologists, emergency room providers, and the patient's attending and consulting providers, may be independent contractors, independent practitioners, or employees of Monument Health. Only employees of Monument Health may be considered agents of Monument Health. Additional clarification should be made by asking the patient's providers.
   b. That among those who may care for the patient at this Monument Health facility are medical, nursing, and other healthcare students who, unless requested otherwise, may be present or administer care as part of their training.
   c. That Monument Health may utilize certain electronic technologies to communicate between healthcare providers and monitor patients receiving care at Monument Health facilities. Examples include but are not limited to eICU, Telemedicine, and Telepharmacy.
4. **Release of Information.** The Undersigned, whether as patient or as agent, authorizes the following:
   a. Monument Health may disclose all or portions of the patient's medical record to any person or entity or their agents who may be liable to pay for all or a portion of the charges. Monument Health's authority shall include but is not limited to release of the patient's diagnosis, surgical procedure, plan of care, and benefits by telephone at the time of appointment check-in or during or after the appointment. The entities to whom the information may be released shall include but not be limited to insurance companies, health maintenance organizations, worker' s c o m p e n s a t i o n carriers, or government or other payors or their agents, such as utilization review, rehabilitation, or auditing agencies.
   b. Release of clinical information to providers and facilities for the purpose of continued healthcare. The patient or agent understands that healthcare providers participate in Monument Health's Connect Program, and that patient data will be stored in a shared community electronic record. This clinical data may be shared with Monument Health, its affiliates, and other healthcare providers whom are associated with the patient's medical care.
   c. Gives consent to Monument Health and its respective subsidiaries, affiliates, and vendors, to contact the Undersigned at the number provided using any means of communication, including, but not limited to, calls placed to a cellular phone using an automated dialing device and calls using prerecorded messages and/or SMS text messages, regarding any current or future accounts, outstanding balances, or payments owed to Monument Health or its respective subsidiaries and affiliates even if the Undersigned will be charged by his or her service provider(s) for receiving such communications. The Undersigned understands he or she will be provided the option to update communication preferences during the servicing of accounts and will notify Monument Health if he or she wishes to revoke this method of notification.
5. **Patient Rights and Responsibilities.** The Undersigned, whether as patient or as agent, acknowledges he or she has been given the opportunity to review the Patient Rights and Responsibilities.
6. **Notice of Privacy Practices.** The Undersigned, whether as patient or as agent, acknowledges that the law requires that Monument Health maintain the privacy of the patient's Protected Health Information and that Monument Health provide a notice of legal duties and privacy policies with respect to protected health information. By signing below, the Undersigned



**MONUMENT**
**HEALTH**
MH Rapid City Clinic Caregiver Cir



ETREATCH

**Waisanen, Cheyenne**
DOB: ███████ b. Female
MRN:
CSN:
DOS: 9/1/2021



## Consent to Treatment:
## Clinic, Recurring Series,
## and Outpatient Services
Page 2 of 2

---

Signature captured at 9/1/2021 01:05 PM

Patient or Agent Signature

2nd Witness Signature (If Applicable)

Printed Name If Signature Is Other than the Patient's

Relationship to Patient

**Kimberly Keller**
Witness



**MONUMENT**
H E A L T H

MH Rapid City Clinic 5th St Multi
Specialty



EFINAGR

Waisanen, Chyenne
DOB:                    o. Female
MRN:
CSN:
DOS: 10/27/2021

# Financial Responsibility Agreement
Page 1 of 2

1. **Patient Portion Due at Time of Service.** The Undersigned, whether as patient or as agent, acknowledges all co-payments must be paid at time of service. This arrangement is part of the patient's contract with his or her insurance company. For procedures, the Undersigned will be asked to pay a co-insurance and deductible. Upon request, an estimate of services will be given prior to the service being performed.

2. **Insurance and Claims Submission.** The Undersigned, whether as patient or as agent, understands Monument Health will submit insurance claims to most insurance companies; however, if Monument Health does not participate with the patient's insurance plan, it will be the responsibility of the Undersigned to pay-in-full at time of service. The Undersigned should be aware that some or all of the services may be non-covered by insurers, and many insurance companies require pre-authorization for various procedures. Monument Health will assist in obtaining the necessary pre-authorizations when needed; however, it is the responsibility of the Undersigned to determine if the patient's insurance company requires one. Failure to obtain the necessary pre-authorization or second opinion may result in a reduction or denial of benefits by the insurance company, which would result in the requirement of the Undersigned to pay the full amount due. For employer-requested services, Monument Health will confirm pre-authorization and guarantee of payment prior to the service being rendered.

3. **Assignment of Insurance Benefits.** If the patient's care is covered by insurance, the Undersigned agrees the insurance company is to pay Monument Health directly for the patient's care. Additionally, certain physicians (e.g., anesthesiologists, oncologists, pathologists, and radiologists) may participate in the patient's care. These physicians are not employees or agents of Monument Health, and they will bill separately for their care. The person signing this form, whether he or she is the patient or is signing for the patient, authorizes direct payment to Monument Health and/or the physicians of any insurance benefits, settlements, or awards otherwise payable for this outpatient service (including emergency services if rendered) at a rate not to exceed the respective charges of Monument Health and/or the physicians. The Undersigned understands he or she is financially responsible for charges not paid by insurance or any other third-party payor.

4. **Promise to Pay Account.** The Undersigned agrees that he or she will pay for the care the patient receives. The person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the account charges in accordance with the rates and policies of Monument Health. If the patient is uninsured or has a large deductible, payment arrangements can be made with a Monument Health Patient Financial Counselor. The Undersigned also agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory amount per year.

5. **Guarantee of Account.** The Undersigned understands that Monument Health must be paid for the care the patient receives. The Undersigned may expect that someone else is going to pay for the patient's care, as there may be insurance coverage, or the patient may have been injured due to someone else's negligence, or there may be other circumstances; however, the Undersigned agrees to be personally responsible for paying for the care received. Even if the Undersigned believes another party is obligated to pay for the care, he or she still agrees to personally guarantee Monument Health will be paid for the care the patient receives. Therefore, the person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the charges in accordance with the rates and policies of Monument Health. He or she agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory allowable interest rate per year.

6. **Minor Patients.** The Undersigned understands that the parent or guardian accompanying a minor is responsible for payment. An unaccompanied minor will not be seen without a minor consent form signed by the parent or guardian, and the minor must bring his or her co-payment or patient portion due at the time of service.

Signature captured with Topaz by Chyenne Waisanen at 10/27/2021 02:28 PM
**Patient or Agent Signature**

Printed Name if Signature is Other than the Patient's

**Krista Schnell**

Relationship to Patient                           Witness



**MONUMENT**
**HEALTH**
MH Rapid City Clinic 5th St Multi
Specialty

EFINAGR

Waisanen, Chyenne
DOB: ▮▮▮▮ Female
MRN: ▮▮▮▮
CSN: ▮▮▮▮▮▮
DOS: 10/27/2021



## Financial Responsibility
## Agreement
Page 2 of 2



**MONUMENT**
HEALTH
MH Rapid City Hospital

ETREATH

Walsanen, Chyenne M
DOB:                Female
MRN:
CSN:
DOS: 2/27/2023 1144

## Consent to Treatment and
## Conditions of Admission
Page 2 of 3

hearing aids, eyeglasses, etc.) while a patient at Monument Health. The hospital maintains a safe for safekeeping of personal valuables, and the Undersigned releases Monument Health from any liability for loss or damage due to the patient's negligence or that of any Monument Health employee unless the valuables are placed in the safe.

6. **Promise to Pay Account.** The Undersigned agrees that he or she will pay for the care the patient receives. The person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the account charges in accordance with the rates and policies of Monument Health. He or she also agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory amount per year.

7. **Guarantee of Account.** The Undersigned understands that Monument Health must be paid for the care the patient receives. The Undersigned may expect that someone else is going to pay for the patient's care, as there may be insurance coverage, or the patient may have been injured due to someone else's negligence, or there may be other circumstances; however, the Undersigned agrees to be personally responsible for paying for the care received. Even if the Undersigned believes another party is obligated to pay for the care, he or she still agrees to personally guarantee Monument Health will be paid for the care the patient receives. Therefore, the person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the charges in accordance with the rates and policies of Monument Health. He or she agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory allowable interest rate per year.

8. **Patient Portion Due at Time of Service.** The Undersigned, whether as patient or as agent, acknowledges all co-payments must be paid at time of service. This arrangement is part of the patient's contract with his or her insurance company. For procedures, the Undersigned will be asked to pay a co-insurance and deductible. Upon request, an estimate of services will be given prior to the service being performed.

9. **Insurance and Claims Submission.** The Undersigned, whether as patient or as agent, understands Monument Health will submit insurance claims to most insurance companies; however, if Monument Health does not participate with the patient's insurance plan, it will be the responsibility of the Undersigned to pay-in-full at time of service. The Undersigned should be aware that some or all of the services may be non-covered by insurers, and many insurance companies require pre-authorization for various procedures. Monument Health will assist in obtaining the necessary pre-authorizations when needed; however, it is the responsibility of the Undersigned to determine if the patient's insurance company requires one. Failure to obtain the necessary pre-authorization or second opinion may result in a reduction or denial of benefits by the insurance company, which would result in the requirement of the Undersigned to pay the full amount due. For employer-requested services, Monument Health will confirm pre-authorization and guarantee of payment prior to the service being rendered.

10. **Assignment of Insurance Benefits.** If the patient's care is covered by insurance, the Undersigned agrees the insurance company is to pay Monument Health directly for the patient's care. Additionally, certain physicians (e.g., anesthesiologists, oncologists, pathologists, and radiologists) may participate in the patient's care. These physicians are not employees or agents of Monument Health, and they will bill separately for their care. The person signing this form, whether he or she is the patient or is signing for the patient, authorizes direct payment to Monument Health and/or the physicians of any insurance benefits, settlements, or awards otherwise payable for this hospitalization or outpatient service (including emergency services if rendered) at a rate not to exceed the respective charges of Monument Health and/or the physicians. The Undersigned understands he or she is financially responsible for charges not paid by insurance or any other third-party payor.

11. **Patient Rights and Responsibilities.** The Undersigned, whether as patient or as agent, acknowledges he or she has been given the opportunity to review the Patient Rights and Responsibilities.

12. **Notice of Privacy Practices.** The Undersigned, whether as patient or as agent, acknowledges that the law requires that Monument Health maintain the privacy of the patient's Protected Health Information and that Monument Health provide a notice of legal duties and privacy policies with respect to protected health information. By signing below, the Undersigned acknowledges that he or she has received a copy of Monument Health's Notice of Privacy Practices.

13. **Minor Patients.** The Undersigned understands that the parent or guardian accompanying a minor is responsible for payment. An unaccompanied minor will not be seen without a minor consent form signed by the parent or guardian, and the minor must bring his or her co-payment or patient portion due at the time of service.

14. **Providers May Not Be On-Site 24 Hours Per Day, 7 Days Per Week.** The Undersigned, whether as patient or as agent,

**MONUMENT**
HEALTH
MH Rapid City Hospital

ETREATH

Waisanen, Chyenne M
DOB: ▮▮▮▮▮▮▮▮ ▮▮ale
MRN: ▮▮▮▮▮▮
CSN: ▮▮▮▮▮▮
DOS: 2/27/2023 1144



## Consent to Treatment and Conditions of Admission
Page 1 of 3

1. **Consent for Medical and Hospital Care.** The Undersigned, whether as patient or as agent, consents to the following:
   a. All initiation of care, consultation, treatment, and procedures to be performed during this hospitalization or on an outpatient basis (including emergency treatment or services). The treatment and procedures may include, but are not limited to, laboratory tests, x-rays, physical examinations, injections, medical or surgical treatments or procedures, anesthesia, or hospital services rendered under the general and special instructions of the patient's provider.
   b. Testing for HIV antibody (AIDS), hepatitis, or any bloodborne pathogen should the healthcare worker have an exposure to the patient's blood or other body fluids.
   c. The disposal of any body parts or tissues removed according to Monument Health policy, including the use of de-identified specimens for research purposes.
   d. Transfer and transportation to another facility for further care as instructed by the patient's provider.
   e. Allow the patient's prescription medication history to be obtained from external electronic sources.
2. **General Risks.** The Undersigned, whether as patient or as agent, understands that the practice of medicine and surgery is not an exact science and that diagnosis and treatment may involve risks of injury or even death. No guarantees can or have been made regarding the results of examinations, procedures, or treatment.
3. **Healthcare Providers/Relationships.** The Undersigned, whether as patient or as agent, understands:
   a. That providers furnishing services to the patient, including the radiologists, pathologists, anesthesiologists, emergency room providers, and the patient's attending and consulting providers, may be independent contractors, independent practitioners, or employees of Monument Health. Only employees of Monument Health may be considered agents of Monument Health. Additional clarification should be made by asking the patient's providers.
   b. That among those who may care for the patient at this Monument Health facility are medical, nursing, and other healthcare students who, unless requested otherwise, may be present or administer care as part of their training.
   c. That to support the care provided, Monument Health is using technology in some settings that uses artificial intelligence to generate entries in the patient's medical record based on secure audio recordings, machine learning, and cloud-based voice recognition of the visit or exam. A third-party service processes the recording and creates information for the medical record that is reviewed and approved by the patient's provider. That Monument Health may utilize certain electronic technologies to communicate between healthcare providers and monitor patients receiving care at Monument Health facilities. Examples include but are not limited to eICU, Telemedicine, and Telepharmacy.
4. **Release of Information.** The Undersigned, whether as patient or as agent, authorizes the following:
   a. Monument Health may disclose all or portions of the patient's medical record to any person or entity or their agents who may be liable to pay for all or a portion of the charges. Monument Health's authority shall include but is not limited to release of the patient's diagnosis, surgical procedure, plan of care, and benefits by telephone at the time of appointment check-in or admission or during or after the appointment or hospitalization. The entities to whom the information may be released shall include but not be limited to insurance companies, health maintenance organizations, worker's compensation carriers, or government or other payors or their agents, such as utilization review, rehabilitation, or auditing agencies.
   b. Release of clinical information to providers and facilities for the purpose of continued healthcare. The patient or agent understands that healthcare providers participate in Monument Health's Connect Program, and that patient data will be stored in a shared community electronic record. This clinical data may be shared with Monument Health, its affiliates, and other healthcare providers whom are associated with the patient's medical care.
   c. Gives consent to Monument Health and its respective subsidiaries, affiliates, and vendors, to contact the Undersigned at the number provided using any means of communication, including, but not limited to, calls placed to a cellular phone using an automated dialing device and calls using prerecorded messages and/or SMS text messages, regarding any current or future accounts, outstanding balances, or payments owed to Monument Health or its respective subsidiaries and affiliates even if the Undersigned will be charged by his or her service provider(s) for receiving such communications. The Undersigned understands he or she will be provided the option to update communication preferences during the servicing of accounts and will notify Monument Health if he or she wishes to revoke this method of notification.
5. **Personal Valuables.** The Undersigned, whether as patient or as agent, acknowledges and understands that keeping personal valuables is highly discouraged, and he or she is responsible for them (including money, jewelry, dentures,



ETREATH



**Waisanen, Chyenne M**
DOB: ████████ Female
MRN: ████████
CSN: ████████
DOS: 2/27/2023 1144



**MONUMENT** HEALTH
MH Rapid City Hospital

## Consent to Treatment and Conditions of Admission
Page 3 of 3

understands the following:

a. Monument Health's Critical Access Hospitals (Custer, Lead-Deadwood, and Sturgis) may not have a medical provider on-site 24 hours per day, 7 days per week; however, a medical provider is on-call 24 hours per day, 7 days per week, with a response time to the facility within 30 minutes to manage any emergency conditions that may occur.

b. Monument Health's Spearfish Surgery Center, a department of Monument Health Spearfish Hospital, does not have a physician and/or provider in-house 24 hours per day, 7 days per week. An on-call physician or provider is available 24 hours per day, 7 days per week, to meet the needs of any patient who develops an emergency medical condition.

Click to Sign or Name of Other than Patient

Signature captured at 2/27/2023 11:57 AM

**Rebecca Schlup**
Witness



**MONUMENT**
H E A L T H
MH Rapid City Orthopedic &
Specialty Hospital

ETREATCH

Waisanen, Daniel
DOB: ███████.o. Male
MRN: ███
CSN: ████████
DOS: 9/10/2021



# Consent to Treatment:
# Clinic, Recurring Series,
# and Outpatient Services
Page 1 of 2

1. **Consent for Medical Care.** The Undersigned, whether as patient or as agent, consents to the following:
   a. All initiation of care, consultation, treatment, and procedures to be performed (including emergency treatment or services). The treatment and procedures may include, but are not limited to, laboratory tests, x-rays , p h y s i c a l examinations, injections, medical or surgical treatments or procedures, anesthesia, or other services rendered under the general and special instructions of the patient's provider.
   b. Testing for HIV antibody (AIDS), hepatitis, or any bloodborne pathogen should the healthcare worker have an exposure to the patient's blood or other body fluids.
   c. The disposal of any body parts or tissues removed according to Monument Health policy, including the use of de-identified specimens for research purposes.
   d. Transfer and transportation to another facility for further care as instructed by the patient's provider.
   e. Allow the patient's prescription medication history to be obtained from external electronic sources.
2. **General Risks.** The Undersigned, whether as patient or as agent, understands that the practice of medicine and surgery is not an exact science and that diagnosis and treatment may involve risks of injury or even death. No guarantees can or have been made regarding the results of examinations, procedures, or treatment.
3. **Healthcare Providers/Relationships.** The Undersigned, whether as patient or as agent, understands:
   a. That providers furnishing services to the patient, including the radiologists, pathologists, anesthesiologists, emergency room providers, and the patient's attending and consulting providers, may be independent contractors, independent practitioners, or employees of Monument Health. Only employees of Monument Health may be considered agents of Monument Health. Additional clarification should be made by asking the patient's providers.
   b. That among those who may care for the patient at this Monument Health facility are medical, nursing, and other healthcare students who, unless requested otherwise, may be present or administer care as part of their training.
   c. That Monument Health may utilize certain electronic technologies to communicate between healthcare providers and monitor patients receiving care at Monument Health facilities. Examples include but are not limited to eICU, Telemedicine, and Telepharmacy.
4. **Release of Information.** The Undersigned, whether as patient or as agent, authorizes the following:
   a. Monument Health may disclose all or portions of the patient's medical record to any person or entity or their agents who may be liable to pay for all or a portion of the charges. Monument Health's authority shall include but is not limited to release of the patient's diagnosis, surgical procedure, plan of care, and benefits by telephone at the time of appointment check-in or during or after the appointment. The entities to whom the information may be released shall include but not be limited to insurance companies, health maintenance organizations, worker's c o m p e n s a t i o n carriers, or government or other payors or their agents, such as utilization review, rehabilitation, or auditing agencies.
   b. Release of clinical information to providers and facilities for the purpose of continued healthcare. The patient or agent understands that healthcare providers participate in Monument Health's Connect Program, and that patient data will be stored in a shared community electronic record. This clinical data may be shared with Monument Health, its affiliates, and other healthcare providers whom are associated with the patient's medical care.
   c. Gives consent to Monument Health and its respective subsidiaries, affiliates, and vendors, to contact the Undersigned at the number provided using any means of communication, including, but not limited to, calls placed to a cellular phone using an automated dialing device and calls using prerecorded messages and/or SMS text messages, regarding any current or future accounts, outstanding balances, or payments owed to Monument Health or its respective subsidiaries and affiliates even if the Undersigned will be charged by his or her service provider(s) for receiving such communications. The Undersigned understands he or she will be provided the option to update communication preferences during the servicing of accounts and will notify Monument Health if he or she wishes to revoke this method of notification.
5. **Patient Rights and Responsibilities.** The Undersigned, whether as patient or as agent, acknowledges he or she has been given the opportunity to review the Patient Rights and Responsibilities.
6. **Notice of Privacy Practices.** The Undersigned, whether as patient or as agent, acknowledges that the law requires that Monument Health maintain the privacy of the patient's Protected Health Information and that Monument Health provide a notice of legal duties and privacy policies with respect to protected health information. By signing below, the Undersigned



**MONUMENT**
**HEALTH**
MH Rapid City Orthopedic &
Specialty Hospital



ETREATCH

**Walsanen, Daniel**
DOB: ██████ b. Male
MRN: ████
CSN: ████
DOS: 9/10/2021



# Consent to Treatment:
# Clinic, Recurring Series,
# and Outpatient Services
Page 2 of 2

acknowledges that he or she has received a copy of Monument Health's Notice of Privacy Practices.

Signature captured at 9/10/2021 02:50 PM

Patient or Agent Signature

2nd Witness Signature (If Applicable)

Printed Name if Signature Is Other than the Patient's

**Larissa Grinnell**
Relationship to Patient                     Witness

**MONUMENT** HEALTH

MH Rapid City Orthopedic & Specialty Hospital

EFINAGR

Walsanen, Daniel
DOB:                    o. Male
MRN:
CSN:
DOS: 9/10/2021



# Financial Responsibility Agreement

Page 1 of 2

1. **Patient Portion Due at Time of Service.** The Undersigned, whether as patient or as agent, acknowledges all co-payments must be paid at time of service. This arrangement is part of the patient's contract with his or her insurance company. For procedures, the Undersigned will be asked to pay a co-insurance and deductible. Upon request, an estimate of services will be given prior to the service being performed.

2. **Insurance and Claims Submission.** The Undersigned, whether as patient or as agent, understands Monument Health will submit insurance claims to most insurance companies; however, if Monument Health does not participate with the patient's insurance plan, it will be the responsibility of the Undersigned to pay-in-full at time of service. The Undersigned *should be aware that some or all of the services may be non-covered by insurers, and many insurance companies require pre-authorization for various procedures.* Monument Health will assist in obtaining the necessary pre-authorizations when needed; however, it is the responsibility of the Undersigned to determine if the patient's insurance company requires one. Failure to obtain the necessary pre-authorization or second opinion may result in a reduction or denial of benefits by the insurance company, which would result in the requirement of the Undersigned to pay the full amount due. For employer-requested services, Monument Health will confirm pre-authorization and guarantee of payment prior to the service being rendered.

3. **Assignment of Insurance Benefits.** If the patient's care is covered by insurance, the Undersigned agrees the insurance company is to pay Monument Health directly for the patient's care. Additionally, certain physicians (e.g., anesthesiologists, oncologists, pathologists, and radiologists) may participate in the patient's care. These physicians are not employees or agents of Monument Health, and they will bill separately for their care. The person signing this form, whether he or she is the patient or is signing for the patient, authorizes direct payment to Monument Health and/or the physicians of any insurance benefits, settlements, or awards otherwise payable for this outpatient service (including *emergency services if rendered) at a rate not to exceed the respective charges of Monument Health and/or the physicians.* The Undersigned understands he or she is financially responsible for charges not paid by insurance or any other third-party payor.

4. **Promise to Pay Account.** The Undersigned agrees that he or she will pay for the care the patient receives. The person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the account charges in accordance with the rates and policies of Monument Health. If the patient is uninsured or has a large deductible, payment arrangements can be made with a Monument Health Patient Financial Counselor. The Undersigned also agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory amount per year.

5. **Guarantee of Account.** The Undersigned understands that Monument Health must be paid for the care the patient receives. The Undersigned may expect that someone else is going to pay for the patient's care, as there may be insurance coverage, or the patient may have been injured due to someone else's negligence, or there may be other circumstances; however, the Undersigned agrees to be personally responsible for paying for the care received. Even if the Undersigned believes another party is obligated to pay for the care, he or she still agrees to personally guarantee Monument Health will be paid for the care the patient receives. Therefore, the person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the charges in accordance with the rates and policies of Monument Health. *He or she agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory allowable interest rate per year.*

6. **Minor Patients.** The Undersigned understands that the parent or guardian accompanying a minor is responsible for payment. An unaccompanied minor will not be seen without a minor consent form signed by the parent or guardian, and the minor must bring his or her co-payment or patient portion due at the time of service.

Signature captured with Topaz by Daniel Walsanen at 9/10/2021 02:50 PM

Patient or Agent Signature

Printed Name if Signature is Other than the Patient's

Relationship to Patient

**Larissa Grinnell**
Witness

**MONUMENT**
HEALTH
MH Rapid City Clinic Caregiver Cir

ETREATCH

Waisanen, Daniel
DOB: [redacted] Male
MRN: [redacted]
CSN: [redacted]
DOS: 8/17/2021

## Consent to Treatment:
## Clinic, Recurring Series,
## and Outpatient Services
Page 1 of 2

1. **Consent for Medical Care.** The Undersigned, whether as patient or as agent, consents to the following:
   a. All initiation of care, consultation, treatment, and procedures to be performed (including emergency treatment or services). The treatment and procedures may include, but are not limited to, laboratory tests, x-rays , p h y s i c a l examinations, injections, medical or surgical treatments or procedures, anesthesia, or other services rendered under the general and special instructions of the patient's provider.
   b. Testing for HIV antibody (AIDS), hepatitis, or any bloodborne pathogen should the healthcare worker have an exposure to the patient's blood or other body fluids.
   c. The disposal of any body parts or tissues removed according to Monument Health policy, including the use of de-identified specimens for research purposes.
   d. Transfer and transportation to another facility for further care as instructed by the patient's provider.
   e. Allow the patient's prescription medication history to be obtained from external electronic sources.
2. **General Risks.** The Undersigned, whether as patient or as agent, understands that the practice of medicine and surgery is not an exact science and that diagnosis and treatment may involve risks of injury or even death. No guarantees can or have been made regarding the results of examinations, procedures, or treatment.
3. **Healthcare Providers/Relationships.** The Undersigned, whether as patient or as agent, understands:
   a. That providers furnishing services to the patient, including the radiologists, pathologists, anesthesiologists, emergency room providers, and the patient's attending and consulting providers, may be independent contractors, independent practitioners, or employees of Monument Health. Only employees of Monument Health may be considered agents of Monument Health. Additional clarification should be made by asking the patient's providers.
   b. That among those who may care for the patient at this Monument Health facility are medical, nursing, and other healthcare students who, unless requested otherwise, may be present or administer care as part of their training.
   c. That Monument Health may utilize certain electronic technologies to communicate between healthcare providers and monitor patients receiving care at Monument Health facilities. Examples include but are not limited to eICU, Telemedicine, and Telepharmacy.
4. **Release of Information.** The Undersigned, whether as patient or as agent, authorizes the following:
   a. Monument Health may disclose all or portions of the patient's medical record to any person or entity or their agents who may be liable to pay for all or a portion of the charges. Monument Health's authority shall include but is not limited to release of the patient's diagnosis, surgical procedure, plan of care, and benefits by telephone at the time of appointment check-in or during or after the appointment. The entities to whom the information may be released shall include but not be limited to insurance companies, health maintenance organizations, worker's c o m p e n s a t i o n carriers, or government or other payors or their agents, such as utilization review, rehabilitation, or auditing agencies.
   b. Release of clinical information to providers and facilities for the purpose of continued healthcare. The patient or agent understands that healthcare providers participate in Monument Health's Connect Program, and that patient data will be stored in a shared community electronic record. This clinical data may be shared with Monument Health, its affiliates, and other healthcare providers whom are associated with the patient's medical care.
   c. Gives consent to Monument Health and its respective subsidiaries, affiliates, and vendors, to contact the Undersigned at the number provided using any means of communication, including, but not limited to, calls placed to a cellular phone using an automated dialing device and calls using prerecorded messages and/or SMS text messages, regarding any current or future accounts, outstanding balances, or payments owed to Monument Health or its respective subsidiaries and affiliates even if the Undersigned will be charged by his or her service provider(s) for receiving such communications. The Undersigned understands he or she will be provided the option to update communication preferences during the servicing of accounts and will notify Monument Health if he or she wishes to revoke this method of notification.
5. **Patient Rights and Responsibilities.** The Undersigned, whether as patient or as agent, acknowledges he or she has been given the opportunity to review the Patient Rights and Responsibilities.
6. **Notice of Privacy Practices.** The Undersigned, whether as patient or as agent, acknowledges that the law requires that Monument Health maintain the privacy of the patient's Protected Health Information and that Monument Health provide a notice of legal duties and privacy policies with respect to protected health information. By signing below, the Undersigned acknowledges that he or she has received a copy of Monument Health's Notice of Privacy Practices.



**MONUMENT**
HEALTH
MH Rapid City Clinic Caregiver Cir

 ETREATCH

**Waisanen, Daniel**
DOB: ███████. Male
MRN: ███████
CSN: ███████
DOS: 8/17/2021



## Consent to Treatment:
## Clinic, Recurring Series,
## and Outpatient Services
Page 2 of 2

Signature captured at 8/17/2021 03:01 PM

Patient or Agent Signature

Printed Name if Signature is Other than the Patient's

Relationship to Patient

2nd Witness Signature (if Applicable)

**Tina Camp**
Witness

**MONUMENT**
HEALTH
MH Rapid City Clinic Caregiver Cir

EFINAGR

Walsanen, Daniel
DOB: ████████o. Male
MRN: ████████
CSN: ████████
DOS: 8/17/2021



## Financial Responsibility Agreement
Page 1 of 1

1. **Patient Portion Due at Time of Service.** The Undersigned, whether as patient or as agent, acknowledges all co-payments must be paid at time of service. This arrangement is part of the patient's contract with his or her insurance company. For procedures, the Undersigned will be asked to pay a co-insurance and deductible. Upon request, an estimate of services will be given prior to the service being performed.

2. **Insurance and Claims Submission.** The Undersigned, whether as patient or as agent, understands Monument Health will submit insurance claims to most insurance companies; however, if Monument Health does not participate with the patient's insurance plan, it will be the responsibility of the Undersigned to pay-in-full at time of service. The Undersigned should be aware that some or all of the services may be non-covered by insurers, and many insurance companies require pre-authorization for various procedures. Monument Health will assist in obtaining the necessary pre-authorizations when needed; however, it is the responsibility of the Undersigned to determine if the patient's insurance company requires one. Failure to obtain the necessary pre-authorization or second opinion may result in a reduction or denial of benefits by the insurance company, which would result in the requirement of the Undersigned to pay the full amount due. For employer-requested services, Monument Health will confirm pre-authorization and guarantee of payment prior to the service being rendered.

3. **Assignment of Insurance Benefits.** If the patient's care is covered by insurance, the Undersigned agrees the insurance company is to pay Monument Health directly for the patient's care. Additionally, certain physicians (e.g., anesthesiologists, oncologists, pathologists, and radiologists) may participate in the patient's care. These physicians are not employees or agents of Monument Health, and they will bill separately for their care. The person signing this form, whether he or she is the patient or is signing for the patient, authorizes direct payment to Monument Health and/or the physicians of any insurance benefits, settlements, or awards otherwise payable for this outpatient service (including emergency services if rendered) at a rate not to exceed the respective charges of Monument Health and/or the physicians. The Undersigned understands he or she is financially responsible for charges not paid by insurance or any other third-party payor.

4. **Promise to Pay Account.** The Undersigned agrees that he or she will pay for the care the patient receives. The person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the account charges in accordance with the rates and policies of Monument Health. If the patient is uninsured or has a large deductible, payment arrangements can be made with a Monument Health Patient Financial Counselor. The Undersigned also agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory amount per year.

5. **Guarantee of Account.** The Undersigned understands that Monument Health must be paid for the care the patient receives. The Undersigned may expect that someone else is going to pay for the patient's care, as there may be insurance coverage, or the patient may have been injured due to someone else's negligence, or there may be other circumstances; however, the Undersigned agrees to be personally responsible for paying for the care received. Even if the Undersigned believes another party is obligated to pay for the care, he or she still agrees to personally guarantee Monument Health will be paid for the care the patient receives. Therefore, the person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the charges in accordance with the rates and policies of Monument Health. He or she agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory allowable interest rate per year.

6. **Minor Patients.** The Undersigned understands that the parent or guardian accompanying a minor is responsible for payment. An unaccompanied minor will not be seen without a minor consent form signed by the parent or guardian, and the minor must bring his or her co-payment or patient portion due at the time of service.

Signature captured with Topaz by Daniel Walsanen at 8/17/2021 01:01 PM
**Patient or Agent Signature**

Printed Name if Signature is Other than the Patient's

**Tina Camp**
Witness

Relationship to Patient



**MONUMENT**
HEALTH
MH Rapid City Hospital

ETREATCH

Waisanen, Chyenne M
DOB: 4[    ]y.o. Female
MRN:
CSN: 1
DOS: 3/9/2023



## Consent to Treatment: Clinic, Recurring Series, and Outpatient Services
Page 1 of 2

1. **Consent for Medical Care.** The Undersigned, whether as patient or as agent, consents to the following:
   a. All initiation of care, consultation, treatment, and procedures to be performed (including emergency treatment or services). The treatment and procedures may include, but are not limited to, laboratory tests, x-rays, physical examinations, injections, medical or surgical treatments or procedures, anesthesia, or other services rendered under the general and special instructions of the patient's provider.
   b. Testing for HIV antibody (AIDS), hepatitis, or any bloodborne pathogen should the healthcare worker have an exposure to the patient's blood or other body fluids.
   c. The disposal of any body parts or tissues removed according to Monument Health policy, including the use of de-identified specimens for research purposes.
   d. Transfer and transportation to another facility for further care as instructed by the patient's provider.
   e. Allow the patient's prescription medication history to be obtained from external electronic sources.
2. **General Risks.** The Undersigned, whether as patient or as agent, understands that the practice of medicine and surgery is not an exact science and that diagnosis and treatment may involve risks of injury or even death. No guarantees can or have been made regarding the results of examinations, procedures, or treatment.
3. **Healthcare Providers/Relationships.** The Undersigned, whether as patient or as agent, understands:
   a. That providers furnishing services to the patient, including the radiologists, pathologists, anesthesiologists, emergency room providers, and the patient's attending and consulting providers, may be independent contractors, independent practitioners, or employees of Monument Health. Only employees of Monument Health may be considered agents of Monument Health. Additional clarification should be made by asking the patient's providers.
   b. That among those who may care for the patient at this Monument Health facility are medical, nursing, and other healthcare students who, unless requested otherwise, may be present or administer care as part of their training.
   c. That Monument Health may utilize certain electronic technologies to communicate between healthcare providers and monitor patients receiving care at Monument Health facilities. Examples include but are not limited to eICU, Telemedicine, and Telepharmacy.
4. **Release of Information.** The Undersigned, whether as patient or as agent, authorizes the following:
   a. Monument Health may disclose all or portions of the patient's medical record to any person or entity or their agents who may be liable to pay for all or a portion of the charges. Monument Health's authority shall include but is not limited to release of the patient's diagnosis, surgical procedure, plan of care, and benefits by telephone at the time of appointment check-in or during or after the appointment. The entities to whom the information may be released shall include but not be limited to insurance companies, health maintenance organizations, worker's compensation carriers, or government or other payors or their agents, such as utilization review, rehabilitation, or auditing agencies.
   b. Release of clinical information to providers and facilities for the purpose of continued healthcare. The patient or agent understands that healthcare providers participate in Monument Health's Connect Program, and that patient data will be stored in a shared community electronic record. This clinical data may be shared with Monument Health, its affiliates, and other healthcare providers whom are associated with the patient's medical care.
   c. Gives consent to Monument Health and its respective subsidiaries, affiliates, and vendors, to contact the Undersigned at the number provided using any means of communication, including, but not limited to, calls placed to a cellular phone using an automated dialing device and calls using prerecorded messages and/or SMS text messages, regarding any current or future accounts, outstanding balances, or payments owed to Monument Health or its respective subsidiaries and affiliates even if the Undersigned will be charged by his or her service provider(s) for receiving such communications. The Undersigned understands he or she will be provided the option to update communication preferences during the servicing of accounts and will notify Monument Health if he or she wishes to revoke this method of notification.
5. **Patient Rights and Responsibilities.** The Undersigned, whether as patient or as agent, acknowledges he or she has been given the opportunity to review the Patient Rights and Responsibilities.
6. **Notice of Privacy Practices.** The Undersigned, whether as patient or as agent, acknowledges that the law requires that Monument Health maintain the privacy of the patient's Protected Health Information and that Monument Health provide a notice of legal duties and privacy policies with respect to protected health information. By signing below, the Undersigned acknowledges that he or she has received a copy of Monument Health's Notice of Privacy Practices.



**ETREATCH**



Walsanen, Chyenne M
DOB: ████████ o. Female
MRN: ██████████
CSN: ██████████
DOS: 3/9/2023

## MONUMENT
HEALTH
MH Rapid City Hospital

# Consent to Treatment:
# Clinic, Recurring Series,
# and Outpatient Services
Page 2 of 2

Cick Add Signer Name If Other than Patient

*Signature captured at 3/9/2023 11:59 AM*

**Jeanne Ann Anderson**
Witness



**MONUMENT**
H E A L T H
MH Rapid City Hospital

EFINAGR

Waisanen, Chyenne M
DOB:                y.o. Female
MRN:
CSN:
DOS: 3/9/2023



## Financial Responsibility Agreement

Page 1 of 1

1. **Patient Portion Due at Time of Service.** The Undersigned, whether as patient or as agent, acknowledges all co-payments must be paid at time of service. This arrangement is part of the patient's contract with his or her insurance company. For procedures, the Undersigned will be asked to pay a co-insurance and deductible. Upon request, an estimate of services will be given prior to the service being performed.

2. **Insurance and Claims Submission.** The Undersigned, whether as patient or as agent, understands Monument Health will submit insurance claims to most insurance companies; however, if Monument Health does not participate with the patient's insurance plan, it will be the responsibility of the Undersigned to pay-in-full at time of service. The Undersigned should be aware that some or all of the services may be non-covered by insurers, and many insurance companies require pre-authorization for various procedures. Monument Health will assist in obtaining the necessary pre-authorizations when needed; however, it is the responsibility of the Undersigned to determine if the patient's insurance company requires one. Failure to obtain the necessary pre-authorization or second opinion may result in a reduction or denial of benefits by the insurance company, which would result in the requirement of the Undersigned to pay the full amount due. For employer-requested services, Monument Health will confirm pre-authorization and guarantee of payment prior to the service being rendered.

3. **Assignment of Insurance Benefits.** If the patient's care is covered by insurance, the Undersigned agrees the insurance company is to pay Monument Health directly for the patient's care. Additionally, certain physicians (e.g., anesthesiologists, oncologists, pathologists, and radiologists) may participate in the patient's care. These physicians are not employees or agents of Monument Health, and they will bill separately for their care. The person signing this form, whether he or she is the patient or is signing for the patient, authorizes direct payment to Monument Health and/or the physicians of any insurance benefits, settlements, or awards otherwise payable for this outpatient service (including emergency services if rendered) at a rate not to exceed the respective charges of Monument Health and/or the physicians. The Undersigned understands he or she is financially responsible for charges not paid by insurance or any other third-party payor.

4. **Promise to Pay Account.** The Undersigned agrees that he or she will pay for the care the patient receives. The person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the account charges in accordance with the rates and policies of Monument Health. If the patient is uninsured or has a large deductible, payment arrangements can be made with a Monument Health Patient Financial Counselor. The Undersigned also agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory amount per year.

5. **Guarantee of Account.** The Undersigned understands that Monument Health must be paid for the care the patient receives. The Undersigned may expect that someone else is going to pay for the patient's care, as there may be insurance coverage, or the patient may have been injured due to someone else's negligence, or there may be other circumstances; however, the Undersigned agrees to be personally responsible for paying for the care received. Even if the Undersigned believes another party is obligated to pay for the care, he or she still agrees to personally guarantee Monument Health will be paid for the care the patient receives. Therefore, the person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the charges in accordance with the rates and policies of Monument Health. He or she agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory allowable interest rate per year.

6. **Minor Patients.** The Undersigned understands that the parent or guardian accompanying a minor is responsible for payment. An unaccompanied minor will not be seen without a minor consent form signed by the parent or guardian, and the minor must bring his or her co-payment or patient portion due at the time of service.

Click X to Sign< Patient Name if Other than Patient

Signature captured at 3/9/2023 12:00 PM

**Jeanne Ann Anderson**
Witness



**MONUMENT**
H E A L T H
MH Rapid City Clinic Flormann St

ETREATCH

Waisanen, Chyenne M
DOB: ███████y.o. Female
MRN: █████████
CSN: █████████
DOS: 3/8/2023



## Consent to Treatment:
## Clinic, Recurring Series,
## and Outpatient Services
Page 1 of 2

1. **Consent for Medical Care.** The Undersigned, whether as patient or as agent, consents to the following:
   a. All initiation of care, consultation, treatment, and procedures to be performed (including emergency treatment or services). The treatment and procedures may include, but are not limited to, laboratory tests, x-rays, physical examinations, injections, medical or surgical treatments or procedures, anesthesia, or other services rendered under the general and special instructions of the patient's provider.
   b. Testing for HIV antibody (AIDS), hepatitis, or any bloodborne pathogen should the healthcare worker have an exposure to the patient's blood or other body fluids.
   c. The disposal of any body parts or tissues removed according to Monument Health policy, including the use of de-identified specimens for research purposes.
   d. Transfer and transportation to another facility for further care as instructed by the patient's provider.
   e. Allow the patient's prescription medication history to be obtained from external electronic sources.
2. **General Risks.** The Undersigned, whether as patient or as agent, understands that the practice of medicine and surgery is not an exact science and that diagnosis and treatment may involve risks of injury or even death. No guarantees can or have been made regarding the results of examinations, procedures, or treatment.
3. **Healthcare Providers/Relationships.** The Undersigned, whether as patient or as agent, understands:
   a. That providers furnishing services to the patient, including the radiologists, pathologists, anesthesiologists, emergency room providers, and the patient's attending and consulting providers, may be independent contractors, independent practitioners, or employees of Monument Health. Only employees of Monument Health may be considered agents of Monument Health. Additional clarification should be made by asking the patient's providers.
   b. That among those who may care for the patient at this Monument Health facility are medical, nursing, and other healthcare students who, unless requested otherwise, may be present or administer care as part of their training.
   c. That Monument Health may utilize certain electronic technologies to communicate between healthcare providers and monitor patients receiving care at Monument Health facilities. Examples include but are not limited to eICU, Telemedicine, and Telepharmacy.
4. **Release of Information.** The Undersigned, whether as patient or as agent, authorizes the following:
   a. Monument Health may disclose all or portions of the patient's medical record to any person or entity or their agents who may be liable to pay for all or a portion of the charges. Monument Health's authority shall include but is not limited to release of the patient's diagnosis, surgical procedure, plan of care, and benefits by telephone at the time of appointment check-in or during or after the appointment. The entitles to whom the information may be released shall include but not be limited to insurance companies, health maintenance organizations, worker's compensation carriers, or government or other payors or their agents, such as utilization review, rehabilitation, or auditing agencies.
   b. Release of clinical information to providers and facilities for the purpose of continued healthcare. The patient or agent understands that healthcare providers participate in Monument Health's Connect Program, and that patient data will be stored in a shared community electronic record. This clinical data may be shared with Monument Health, its affiliates, and other healthcare providers whom are associated with the patient's medical care.
   c. Gives consent to Monument Health and its respective subsidiaries, affiliates, and vendors, to contact the Undersigned at the number provided using any means of communication, including, but not limited to, calls placed to a cellular phone using an automated dialing device and calls using prerecorded messages and/or SMS text messages, regarding any current or future accounts, outstanding balances, or payments owed to Monument Health or its respective subsidiaries and affiliates even if the Undersigned will be charged by his or her service provider(s) for receiving such communications. The Undersigned understands he or she will be provided the option to update communication preferences during the servicing of accounts and will notify Monument Health if he or she wishes to revoke this method of notification.
5. **Patient Rights and Responsibilities.** The Undersigned, whether as patient or as agent, acknowledges he or she has been given the opportunity to review the Patient Rights and Responsibilities.
6. **Notice of Privacy Practices.** The Undersigned, whether as patient or as agent, acknowledges that the law requires that Monument Health maintain the privacy of the patient's Protected Health Information and that Monument Health provide a notice of legal duties and privacy policies with respect to protected health information. By signing below, the Undersigned acknowledges that he or she has received a copy of Monument Health's Notice of Privacy Practices.



**MONUMENT**
**HEALTH**
MH Rapid City Clinic Flormann St

ETREATCH

Walsanen, Chyenne M
DOB:                    b. Female
MRN:
CSN:
DOS: 3/8/2023



## Consent to Treatment:
### *Clinic, Recurring Series, and Outpatient Services*
Page 2 of 2

Click Add Signer Name if Other than Patient

Signature captured at 3/8/2023 03:41 PM

**Kaylea Bruhn**
Witness

**MONUMENT**
H E A L T H
MH Rapid City Clinic Flormann St

EFINAGR

Walsanen Chyenne M
DOB:                y.o. Female
MRN:
CSN:
DOS: 3/8/2023



## Financial Responsibility Agreement
Page 1 of 1

1. **Patient Portion Due at Time of Service.** The Undersigned, whether as patient or as agent, acknowledges all co-payments must be paid at time of service. This arrangement is part of the patient's contract with his or her insurance company. For procedures, the Undersigned will be asked to pay a co-insurance and deductible. Upon request, an estimate of services will be given prior to the service being performed.

2. **Insurance and Claims Submission.** The Undersigned, whether as patient or as agent, understands Monument Health will submit insurance claims to most insurance companies; however, if Monument Health does not participate with the patient's insurance plan, it will be the responsibility of the Undersigned to pay-in-full at time of service. The Undersigned should be aware that some or all of the services may be non-covered by insurers, and many insurance companies require pre-authorization for various procedures. Monument Health will assist in obtaining the necessary pre-authorizations when needed; however, it is the responsibility of the Undersigned to determine if the patient's insurance company requires one. Failure to obtain the necessary pre-authorization or second opinion may result in a reduction or denial of benefits by the insurance company, which would result in the requirement of the Undersigned to pay the full amount due. For employer-requested services, Monument Health will confirm pre-authorization and guarantee of payment prior to the service being rendered.

3. **Assignment of Insurance Benefits.** If the patient's care is covered by insurance, the Undersigned agrees the insurance company is to pay Monument Health directly for the patient's care. Additionally, certain physicians (e.g., anesthesiologists, oncologists, pathologists, and radiologists) may participate in the patient's care. These physicians are not employees or agents of Monument Health, and they will bill separately for their care. The person signing this form, whether he or she is the patient or is signing for the patient, authorizes direct payment to Monument Health and/or the physicians of any insurance benefits, settlements, or awards otherwise payable for this outpatient service (including emergency services if rendered) at a rate not to exceed the respective charges of Monument Health and/or the physicians. The Undersigned understands he or she is financially responsible for charges not paid by insurance or any other third-party payor.

4. **Promise to Pay Account.** The Undersigned agrees that he or she will pay for the care the patient receives. The person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the account charges in accordance with the rates and policies of Monument Health. If the patient is uninsured or has a large deductible, payment arrangements can be made with a Monument Health Patient Financial Counselor. The Undersigned also agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory amount per year.

5. **Guarantee of Account.** The Undersigned understands that Monument Health must be paid for the care the patient receives. The Undersigned may expect that someone else is going to pay for the patient's care, as there may be insurance coverage, or the patient may have been injured due to someone else's negligence, or there may be other circumstances; however, the Undersigned agrees to be personally responsible for paying for the care received. Even if the Undersigned believes another party is obligated to pay for the care, he or she still agrees to personally guarantee Monument Health will be paid for the care the patient receives. Therefore, the person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the charges in accordance with the rates and policies of Monument Health. He or she agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory allowable interest rate per year.

6. **Minor Patients.** The Undersigned understands that the parent or guardian accompanying a minor is responsible for payment. An unaccompanied minor will not be seen without a minor consent form signed by the parent or guardian, and the minor must bring his or her co-payment or patient portion due at the time of service.

Signature captured at 3/8/2023 03:41 PM

**Kaylea Bruhn**
Witness

**MONUMENT**
HEALTH
MH Rapid City Clinic Flormann St

EFINAGR



Walsanen, Chyenne
DOB: ███████ b. Female
MRN: ███████
CSN: ███████
DOS: 10/29/2021

# Financial Responsibility Agreement
Page 1 of 1

1. **Patient Portion Due at Time of Service.** The Undersigned, whether as patient or as agent, acknowledges all co-payments must be paid at time of service. This arrangement is part of the patient's contract with his or her insurance company. For procedures, the Undersigned will be asked to pay a co-insurance and deductible. Upon request, an estimate of services will be given prior to the service being performed.

2. **Insurance and Claims Submission.** The Undersigned, whether as patient or as agent, understands Monument Health will submit insurance claims to most insurance companies; however, if Monument Health does not participate with the patient's insurance plan, it will be the responsibility of the Undersigned to pay-in-full at time of service. The Undersigned should be aware that some or all of the services may be non-covered by insurers, and many insurance companies require pre-authorization for various procedures. Monument Health will assist in obtaining the necessary pre-authorizations when needed; however, it is the responsibility of the Undersigned to determine if the patient's insurance company requires one. Failure to obtain the necessary pre-authorization or second opinion may result in a reduction or denial of benefits by the insurance company, which would result in the requirement of the Undersigned to pay the full amount due. For employer-requested services, Monument Health will confirm pre-authorization and guarantee of payment prior to the service being rendered.

3. **Assignment of Insurance Benefits.** If the patient's care is covered by insurance, the Undersigned agrees the insurance company is to pay Monument Health directly for the patient's care. Additionally, certain physicians (e.g., anesthesiologists, oncologists, pathologists, and radiologists) may participate in the patient's care. These physicians are not employees or agents of Monument Health, and they will bill separately for their care. The person signing this form, whether he or she is the patient or is signing for the patient, authorizes direct payment to Monument Health and/or the physicians of any insurance benefits, settlements, or awards otherwise payable for this outpatient service (including emergency services if rendered) at a rate not to exceed the respective charges of Monument Health and/or the physicians. The Undersigned understands he or she is financially responsible for charges not paid by insurance or any other third-party payor.

4. **Promise to Pay Account.** The Undersigned agrees that he or she will pay for the care the patient receives. The person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the account charges in accordance with the rates and policies of Monument Health. If the patient is uninsured or has a large deductible, payment arrangements can be made with a Monument Health Patient Financial Counselor. The Undersigned also agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory amount per year.

5. **Guarantee of Account.** The Undersigned understands that Monument Health must be paid for the care the patient receives. The Undersigned may expect that someone else is going to pay for the patient's care, as there may be insurance coverage, or the patient may have been injured due to someone else's negligence, or there may be other circumstances; however, the Undersigned agrees to be personally responsible for paying for the care received. Even if the Undersigned believes another party is obligated to pay for the care, he or she still agrees to personally guarantee Monument Health will be paid for the care the patient receives. Therefore, the person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the charges in accordance with the rates and policies of Monument Health. He or she agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory allowable interest rate per year.

6. **Minor Patients.** The Undersigned understands that the parent or guardian accompanying a minor is responsible for payment. An unaccompanied minor will not be seen without a minor consent form signed by the parent or guardian, and the minor must bring his or her co-payment or patient portion due at the time of service.

_[signature]_

Signature captured with Topaz by Chyenne Waisanen at 10/29/2021 07:27 AM
Patient or Agent Signature

Printed Name if Signature is Other than the Patient's

Relationship to Patient

**Kimberly Rademacher-Heuer**
Witness

   

**MONUMENT**
H E A L T H
MH Rapid City Clinic Flormann St

EFINAGR

Waisanen, Chyenne
DOB: ███████o. Female
MRN: ███████
CSN: ███████
DOS: 10/29/2021

## Financial Responsibility Agreement

Page 1 of 1

1. **Patient Portion Due at Time of Service.** The Undersigned, whether as patient or as agent, acknowledges all co-payments must be paid at time of service. This arrangement is part of the patient's contract with his or her insurance company. For procedures, the Undersigned will be asked to pay a co-insurance and deductible. Upon request, an estimate of services will be given prior to the service being performed.

2. **Insurance and Claims Submission.** The Undersigned, whether as patient or as agent, understands Monument Health will submit insurance claims to most insurance companies; however, if Monument Health does not participate with the patient's insurance plan, it will be the responsibility of the Undersigned to pay-in-full at time of service. The Undersigned should be aware that some or all of the services may be non-covered by insurers, and many insurance companies require pre-authorization for various procedures. Monument Health will assist in obtaining the necessary pre-authorizations when needed; however, it is the responsibility of the Undersigned to determine if the patient's insurance company requires one. Failure to obtain the necessary pre-authorization or second opinion may result in a reduction or denial of benefits by the insurance company, which would result in the requirement of the Undersigned to pay the full amount due. For employer-requested services, Monument Health will confirm pre-authorization and guarantee of payment prior to the service being rendered.

3. **Assignment of Insurance Benefits.** If the patient's care is covered by insurance, the Undersigned agrees the insurance company is to pay Monument Health directly for the patient's care. Additionally, certain physicians (e.g., anesthesiologists, oncologists, pathologists, and radiologists) may participate in the patient's care. These physicians are not employees or agents of Monument Health, and they will bill separately for their care. The person signing this form, whether he or she is the patient or is signing for the patient, authorizes direct payment to Monument Health and/or the physicians of any insurance benefits, settlements, or awards otherwise payable for this outpatient service (including emergency services if rendered) at a rate not to exceed the respective charges of Monument Health and/or the physicians. The Undersigned understands he or she is financially responsible for charges not paid by insurance or any other third-party payor.

4. **Promise to Pay Account.** The Undersigned agrees that he or she will pay for the care the patient receives. The person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the account charges in accordance with the rates and policies of Monument Health. If the patient is uninsured or has a large deductible, payment arrangements can be made with a Monument Health Patient Financial Counselor. The Undersigned also agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory amount per year.

5. **Guarantee of Account.** The Undersigned understands that Monument Health must be paid for the care the patient receives. The Undersigned may expect that someone else is going to pay for the patient's care, as there may be insurance coverage, or the patient may have been injured due to someone else's negligence, or there may be other circumstances; however, the Undersigned agrees to be personally responsible for paying for the care received. Even if the Undersigned believes another party is obligated to pay for the care, he or she still agrees to personally guarantee Monument Health will be paid for the care the patient receives. Therefore, the person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the charges in accordance with the rates and policies of Monument Health. He or she agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory allowable interest rate per year.

6. **Minor Patients.** The Undersigned understands that the parent or guardian accompanying a minor is responsible for payment. An unaccompanied minor will not be seen without a minor consent form signed by the parent or guardian, and the minor must bring his or her co-payment or patient portion due at the time of service.

Signature captured with Topaz by Chyenne Waisanen at 10/29/2021 07:27 AM
**Patient or Agent Signature**

Printed Name if Signature is Other than the Patient's

Relationship to Patient

**Kimberly Rademacher-Heuer**
Witness



**MONUMENT**
**HEALTH**
MH Rapid City Clinic Flormann St

Walsanen, Chyenne
DOB: y.o. Female
MRN:
CSN:
DOS: 10/29/2021



## Financial Responsibility Agreement
Page 1 of 1

1. **Patient Portion Due at Time of Service.** The Undersigned, whether as patient or as agent, acknowledges all co-payments must be paid at time of service. This arrangement is part of the patient's contract with his or her insurance company. For procedures, the Undersigned will be asked to pay a co-insurance and deductible. Upon request, an estimate of services will be given prior to the service being performed.

2. **Insurance and Claims Submission.** The Undersigned, whether as patient or as agent, understands Monument Health will submit insurance claims to most insurance companies; however, if Monument Health does not participate with the patient's insurance plan, it will be the responsibility of the Undersigned to pay-in-full at time of service. The Undersigned should be aware that some or all of the services may be non-covered by insurers, and many insurance companies require pre-authorization for various procedures. Monument Health will assist in obtaining the necessary pre-authorizations when needed; however, it is the responsibility of the Undersigned to determine if the patient's insurance company requires one. Failure to obtain the necessary pre-authorization or second opinion may result in a reduction or denial of benefits by the insurance company, which would result in the requirement of the Undersigned to pay the full amount due. For employer-requested services, Monument Health will confirm pre-authorization and guarantee of payment prior to the service being rendered.

3. **Assignment of Insurance Benefits.** If the patient's care is covered by insurance, the Undersigned agrees the insurance company is to pay Monument Health directly for the patient's care. Additionally, certain physicians (e.g., anesthesiologists, oncologists, pathologists, and radiologists) may participate in the patient's care. These physicians are not employees or agents of Monument Health, and they will bill separately for their care. The person signing this form, whether he or she is the patient or is signing for the patient, authorizes direct payment to Monument Health and/or the physicians of any insurance benefits, settlements, or awards otherwise payable for this outpatient service (including emergency services if rendered) at a rate not to exceed the respective charges of Monument Health and/or the physicians. The Undersigned understands he or she is financially responsible for charges not paid by insurance or any other third-party payor.

4. **Promise to Pay Account.** The Undersigned agrees that he or she will pay for the care the patient receives. The person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the account charges in accordance with the rates and policies of Monument Health. If the patient is uninsured or has a large deductible, payment arrangements can be made with a Monument Health Patient Financial Counselor. The Undersigned also agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory amount per year.

5. **Guarantee of Account.** The Undersigned understands that Monument Health must be paid for the care the patient receives. The Undersigned may expect that someone else is going to pay for the patient's care, as there may be insurance coverage, or the patient may have been injured due to someone else's negligence, or there may be other circumstances; however, the Undersigned agrees to be personally responsible for paying for the care received. Even if the Undersigned believes another party is obligated to pay for the care, he or she still agrees to personally guarantee Monument Health will be paid for the care the patient receives. Therefore, the person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the charges in accordance with the rates and policies of Monument Health. He or she agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory allowable interest rate per year.

6. **Minor Patients.** The Undersigned understands that the parent or guardian accompanying a minor is responsible for payment. An unaccompanied minor will not be seen without a minor consent form signed by the parent or guardian, and the minor must bring his or her co-payment or patient portion due at the time of service.

Signature captured with Topaz by Chyenne Walsanen at 10/29/2021 07:27 AM
**Patient or Agent Signature**

Printed Name if Signature is Other than the Patient's

**Kimberly Rademacher-Heuer**

Relationship to Patient                           Witness

**MONUMENT**
H E A L T H
MH Rapid City Clinic Flormann St

ETREATCH

Walsanen, Chyenne
DOB: ▮▮▮▮▮ y.o. Female
MRN: ▮▮▮▮▮
CSN: ▮▮▮▮▮
DOS: 10/29/2021



## Consent to Treatment: Clinic, Recurring Series, and Outpatient Services
Page 2 of 2

Signature captured at 10/29/2021 07:27 AM

Patient or Agent Signature

Printed Name if Signature is Other than the Patient's

Relationship to Patient

Electronically signed at 10/29/2021 07:27 AM

2nd Witness Signature (If Applicable)

**Kimberly Rademacher-Heuer**
Witness

**MONUMENT**
HEALTH
MH Rapid City Hospital

EFINAGR

Waisanen, Chyenne
DOB: ▓▓▓▓▓▓. Female
MRN: ▓▓▓▓▓▓
CSN: ▓▓▓▓▓▓
DOS: 1/11/2022 0800

## Financial Responsibility Agreement
Page 1 of 1

1. **Patient Portion Due at Time of Service.** The Undersigned, whether as patient or as agent, acknowledges all co-payments must be paid at time of service. This arrangement is part of the patient's contract with his or her insurance company. For procedures, the Undersigned will be asked to pay a co-insurance and deductible. Upon request, an estimate of services will be given prior to the service being performed.

2. **Insurance and Claims Submission.** The Undersigned, whether as patient or as agent, understands Monument Health will submit insurance claims to most insurance companies; however, if Monument Health does not participate with the patient's insurance plan, it will be the responsibility of the Undersigned to pay-in-full at time of service. The Undersigned should be aware that some or all of the services may be non-covered by insurers, and many insurance companies require pre-authorization for various procedures. Monument Health will assist in obtaining the necessary pre-authorizations when needed; however, it is the responsibility of the Undersigned to determine if the patient's insurance company requires one. Failure to obtain the necessary pre-authorization or second opinion may result in a reduction or denial of benefits by the insurance company, which would result in the requirement of the Undersigned to pay the full amount due. For employer-requested services, Monument Health will confirm pre-authorization and guarantee of payment prior to the service being rendered.

3. **Assignment of Insurance Benefits.** If the patient's care is covered by insurance, the Undersigned agrees the insurance company is to pay Monument Health directly for the patient's care. Additionally, certain physicians (e.g., anesthesiologists, oncologists, pathologists, and radiologists) may participate in the patient's care. These physicians are not employees or agents of Monument Health, and they will bill separately for their care. The person signing this form, whether he or she is the patient or is signing for the patient, authorizes direct payment to Monument Health and/or the physicians of any insurance benefits, settlements, or awards otherwise payable for this outpatient service (including emergency services if rendered) at a rate not to exceed the respective charges of Monument Health and/or the physicians. The Undersigned understands he or she is financially responsible for charges not paid by insurance or any other third-party payor.

4. **Promise to Pay Account.** The Undersigned agrees that he or she will pay for the care the patient receives. The person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the account charges in accordance with the rates and policies of Monument Health. If the patient is uninsured or has a large deductible, payment arrangements can be made with a Monument Health Patient Financial Counselor. The Undersigned also agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory amount per year.

5. **Guarantee of Account.** The Undersigned understands that Monument Health must be paid for the care the patient receives. The Undersigned may expect that someone else is going to pay for the patient's care, as there may be insurance coverage, or the patient may have been injured due to someone else's negligence, or there may be other circumstances; however, the Undersigned agrees to be personally responsible for paying for the care received. Even if the Undersigned believes another party is obligated to pay for the care, he or she still agrees to personally guarantee Monument Health will be paid for the care the patient receives. Therefore, the person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the charges in accordance with the rates and policies of Monument Health. He or she agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory allowable interest rate per year.

6. **Minor Patients.** The Undersigned understands that the parent or guardian accompanying a minor is responsible for payment. An unaccompanied minor will not be seen without a minor consent form signed by the parent or guardian, and the minor must bring his or her co-payment or patient portion due at the time of service.

Signature captured with Topaz by Chyenne Waisanen at 1/11/2022 07:44 AM
Patient or Agent Signature

Printed Name if Signature is Other than the Patient's

Relationship to Patient

**Emily Anderson**
Witness



**MONUMENT**
HEALTH
MH Rapid City Hospital

EFINAGR

Waisanen, Chyenne
DOB:                        Female
MRN:
CSN:
DOS: 1/11/2022 0800



## Financial Responsibility Agreement
Page 1 of 1

1. **Patient Portion Due at Time of Service.** The Undersigned, whether as patient or as agent, acknowledges all co-payments must be paid at time of service. This arrangement is part of the patient's contract with his or her insurance company. For procedures, the Undersigned will be asked to pay a co-insurance and deductible. Upon request, an estimate of services will be given prior to the service being performed.

2. **Insurance and Claims Submission.** The Undersigned, whether as patient or as agent, understands Monument Health will submit insurance claims to most insurance companies; however, if Monument Health does not participate with the patient's insurance plan, it will be the responsibility of the Undersigned to pay-in-full at time of service. The Undersigned should be aware that some or all of the services may be non-covered by insurers, and many insurance companies require pre-authorization for various procedures. Monument Health will assist in obtaining the necessary pre-authorizations when needed; however, it is the responsibility of the Undersigned to determine if the patient's insurance company requires one. Failure to obtain the necessary pre-authorization or second opinion may result in a *reduction or denial of benefits* by the insurance company, which would result in the requirement of the Undersigned to pay the full amount due. For employer-requested services, Monument Health will confirm pre-authorization and guarantee of payment prior to the service being rendered.

3. **Assignment of Insurance Benefits.** If the patient's care is covered by insurance, the Undersigned agrees the insurance company is to pay Monument Health directly for the patient's care. Additionally, certain physicians (e.g., anesthesiologists, oncologists, pathologists, and radiologists) may participate in the patient's care. These physicians are not employees or agents of Monument Health, and they will bill separately for their care. The person signing this form, whether he or she is the patient or is signing for the patient, authorizes direct payment to Monument Health and/or the physicians of any insurance benefits, settlements, or awards otherwise payable for this outpatient service (including emergency services if rendered) at a rate not to exceed the respective charges of Monument Health and/or the physicians. The Undersigned understands he or she is *financially responsible for charges not paid by insurance or any other third-party payor.*

4. **Promise to Pay Account.** The Undersigned agrees that he or she will pay for the care the patient receives. The person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the account charges in accordance with the rates and policies of Monument Health. If the patient is uninsured or has a large deductible, payment arrangements can be made with a Monument Health Patient Financial Counselor. *The Undersigned also agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory amount per year.*

5. **Guarantee of Account.** The Undersigned understands that Monument Health must be paid for the care the patient receives. The Undersigned may expect that someone else is going to pay for the patient's care, as there may be insurance coverage, or the patient may have been injured due to someone else's negligence, or there may be other circumstances; however, the Undersigned agrees to be personally responsible for paying for the care received. Even if the Undersigned believes another party is obligated to pay for the care, he or she still agrees to personally guarantee Monument Health will be paid for the care the patient receives. Therefore, the person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the charges in accordance with the rates and policies of Monument Health. He or she agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory allowable interest rate per year.

6. **Minor Patients.** The Undersigned understands that the parent or guardian accompanying a minor is responsible for payment. An unaccompanied minor will not be seen without a minor consent form signed by the parent or guardian, and the minor must bring his or her co-payment or patient portion due at the time of service.

Signature captured with Topaz by Chyenne Waisanen at 1/11/2022 07:44 AM
Patient or Agent Signature

Printed Name if Signature is Other than the Patient's

**Emily Anderson**
Witness

Relationship to Patient



**MONUMENT**
HEALTH
MH Rapid City Hospital



Waisanen, Chyenne
DOB: ████████emale
MRN: ████████
CSN: ████████
DOS: 1/11/2022 0800

## Financial Responsibility Agreement

Page 1 of 1

1. **Patient Portion Due at Time of Service.** The Undersigned, whether as patient or as agent, acknowledges all co-payments must be paid at time of service. This arrangement is part of the patient's contract with his or her insurance company. For procedures, the Undersigned will be asked to pay a co-insurance and deductible. Upon request, an estimate of services will be given prior to the service being performed.

2. **Insurance and Claims Submission.** The Undersigned, whether as patient or as agent, understands Monument Health will submit insurance claims to most insurance companies; however, if Monument Health does not participate with the patient's insurance plan, it will be the responsibility of the Undersigned to pay-in-full at time of service. The Undersigned should be aware that some or all of the services may be non-covered by insurers, and many insurance companies require pre-authorization for various procedures. Monument Health will assist in obtaining the necessary pre-authorizations when needed; however, it is the responsibility of the Undersigned to determine if the patient's insurance company requires one. Failure to obtain the necessary pre-authorization or second opinion may result in a reduction or denial of benefits by the insurance company, which would result in the requirement of the Undersigned to pay the full amount due. For employer-requested services, Monument Health will confirm pre-authorization and guarantee of payment prior to the service being rendered.

3. **Assignment of Insurance Benefits.** If the patient's care is covered by insurance, the Undersigned agrees the insurance company is to pay Monument Health directly for the patient's care. Additionally, certain physicians (e.g., anesthesiologists, oncologists, pathologists, and radiologists) may participate in the patient's care. These physicians are not employees or agents of Monument Health, and they will bill separately for their care. The person signing this form, whether he or she is the patient or is signing for the patient, authorizes direct payment to Monument Health and/or the physicians of any insurance benefits, settlements, or awards otherwise payable for this outpatient service (including emergency services if rendered) at a rate not to exceed the respective charges of Monument Health and/or the physicians. The Undersigned understands he or she is financially responsible for charges not paid by insurance or any other third-party payor.

4. **Promise to Pay Account.** The Undersigned agrees that he or she will pay for the care the patient receives. The person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the account charges in accordance with the rates and policies of Monument Health. If the patient is uninsured or has a large deductible, payment arrangements can be made with a Monument Health Patient Financial Counselor. The Undersigned also agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory amount per year.

5. **Guarantee of Account.** The Undersigned understands that Monument Health must be paid for the care the patient receives. The Undersigned may expect that someone else is going to pay for the patient's care, as there may be insurance coverage, or the patient may have been injured due to someone else's negligence, or there may be other circumstances; however, the Undersigned agrees to be personally responsible for paying for the care received. Even if the Undersigned believes another party is obligated to pay for the care, he or she still agrees to personally guarantee Monument Health will be paid for the care the patient receives. Therefore, the person signing this document, whether he or she is the patient or is signing for the patient, agrees that he or she personally obligates himself or herself to pay the charges in accordance with the rates and policies of Monument Health. He or she agrees that Monument Health may assess interest on any unpaid balance at a rate not to exceed the maximum statutory allowable interest rate per year.

6. **Minor Patients.** The Undersigned understands that the parent or guardian accompanying a minor is responsible for payment. An unaccompanied minor will not be seen without a minor consent form signed by the parent or guardian, and the minor must bring his or her co-payment or patient portion due at the time of service.

Signature captured with Topaz by Chyenne Waisanen at 1/11/2022 07:44 AM
Patient or Agent Signature

Printed Name if Signature is Other than the Patient's

Relationship to Patient

**Emily Anderson**
Witness

**MONUMENT**
HEALTH
MH Rapid City Clinic Fairmont Blvd

ETREATCH

**Waisanen, Chyenne M**
DOB:                    o. Female
MRN:
CSN:
DOS: 4/9/2024

## Consent to Treatment:
## Clinic, Recurring Series,
## and Outpatient Services
Page 1 of 2

I. **Consent for Medical Care.** The Undersigned, whether as patient or as agent, consents to the following:

   a. All initiation of care, consultation, treatment, and procedures to be performed (including emergency treatment or services). The treatment and procedures may include, but are not limited to, laboratory tests, x-rays, physical examinations, injections, medical or surgical treatments or procedures, anesthesia, other services rendered under the general and special instructions of the patient's provider, or restraints that are necessary for safety and/or medical healing..

   b. Testing for HIV antibody (AIDS), hepatitis, or any bloodborne pathogen should the healthcare worker have an exposure to the patient's blood or other body fluids.

   c. The disposal of any body parts or tissues removed according to Monument Health policy, including the use of de-identified specimens for research purposes.

   d. Transfer and transportation to another facility for further care as instructed by the patient's provider.

   e. Allow the patient's prescription medication history to be obtained from external electronic sources.

2. **General Risks.** The Undersigned, whether as patient or as agent, understands that the practice of medicine and surgery is not an exact science and that diagnosis and treatment may involve risks of injury or even death. No guarantees can or have been made regarding the results of examinations, procedures, or treatment.

3. **Healthcare Providers/Relationships.** The Undersigned, whether as patient or as agent, understands:

   a. That providers furnishing services to the patient, including the radiologists, pathologists, anesthesiologists, emergency room providers, and the patient's attending and consulting providers, may be independent contractors, independent practitioners, or employees of Monument Health. Only employees of Monument Health may be considered agents of Monument Health. Additional clarification should be made by asking the patient's providers.

   b. That among those who may care for the patient at this Monument Health facility are medical, nursing, and other healthcare students who, unless requested otherwise, may be present or administer care as part of their training.

   c. That to support the care provided, Monument Health is using technology in some settings that uses artificial intelligence to generate entries in the patient's medical record based on secure audio recordings, machine learning, and cloud-based voice recognition of the visit or exam. A third-party service processes the recording and creates information for the medical record that is reviewed and approved by the patient's provider.

   d. That Monument Health may utilize certain electronic technologies to communicate between healthcare providers and monitor patients receiving care at Monument Health facilities. Examples include but are not limited to eICU, Telemedicine, and Telepharmacy, which use video cameras in rooms where patients receive care to transmit what happens in those rooms to caregivers.

4. **Release of Information.** The Undersigned, whether as patient or as agent, authorizes the following:

   a. Monument Health may disclose all or portions of the patient's medical record to any person or entity or their agents who may be liable to pay for all or a portion of the charges. Monument Health's authority shall include but is not limited to release of the patient's diagnosis, surgical procedure, plan of care, and benefits by telephone at the time of appointment check-in or during or after the appointment. The entities to whom the information may be released shall include but not be limited to insurance companies, health maintenance organizations, worker's compensation carriers, or government or other payors or their agents, such as utilization review, rehabilitation, or auditing agencies.

   b. Release of clinical information to providers and facilities for the purpose of continued healthcare. The patient or agent understands that healthcare providers participate in Monument Health's Connect Program, and that patient data will be stored in a shared community electronic record. This clinical data may be shared with Monument Health, its affiliates, and other healthcare providers whom are associated with the patient's medical care.

   c. Gives consent to Monument Health and its respective subsidiaries, affiliates, and vendors, to contact the Undersigned at the number provided using any means of communication, including, but not limited to, calls placed to a cellular phone using an automated dialing device and calls using prerecorded messages and/or SMS text messages, regarding any current or future accounts, outstanding balances, or payments owed to Monument Health or its respective subsidiaries and affiliates even if the Undersigned will be charged by his or her service provider(s) for receiving such communications. The Undersigned understands he or she will be provided the option to update communication preferences during the servicing of accounts and will notify Monument Health if he or she wishes to revoke this method of notification.

51CIV24-001747



**Pennington County
Sheriff's Office**

300 Kansas City Street Suite 100
Rapid City SD 57701-2889
Phone: 605.394.6113  Fax: 605.394.6854



Brian Mueller
Sheriff

WAISANEN, CHYENNE MARIE
2315 E PHILADELPHIA ST
RAPID CITY, SD 57703

CIRCUIT COURT

Return # 218064
Process # CP24-007568
Docket # 51CIV24-1747
Reference # FEE WAIVER

CHYENNE WAISANER; DANIEL WAISANER    }
    Plaintiffs,    }    SHERIFF'S RETURN OF SERVICE
    - vs -    }
CREDIT COLLECTIONS BUREAU    }
    Defendant    }

I, Brian Mueller, Sheriff of Pennington County South Dakota, hereby certify that on the **4th day of December, 2024, a FINANCIAL AFFIDAVIT; AFFIDAVIT OF TRUTH; AFFIDAVIT OF FINANCIAL HARDSHIP; MOTION TO WAIVE FILING & SERVICE OF PROCESS FEE; SUMMONS FOR UNLAWFUL AND FRAUDULENT DEBT COLLECTION PRACTICE; COMPLAINT FOR UNLAWFUL AND FRAUDULENT DEBT COLLECTION PRACTICES**, in the above entitled action, came into my hand for service on **CREDIT COLLECTIONS BUREAU**

That on the **5th day of December, 2024** at **10:35 AM**, in said county served the same on: **CREDIT COLLECTIONS BUREAU - Tanya Hofmaier (Manager)** at **410 SHERIDAN LAKE RD, RAPID CITY, SD 57702** by Deputy **David Douma**.

**Comments**

**Date Returned 12/5/24**

**Signed**    **Date**  12/06/24

Brian Mueller
*Pennington County Sheriff*
By: Civil Deputy David Douma
300 Kansas City St
Rapid City, SD 57701
Phone: (605) 394-6113

FILED
Pennington County, SD
IN CIRCUIT COURT

DEC 1 1 2024

Amber Watkins, Clerk of Courts
By _____ Clerk

STATE OF SOUTH DAKOTA ) IN CIRCUIT COURT

COUNTY OF PENNINGTON ) SEVENTH JUDICIAL CIRCUIT

Chyenne Waisanen
Daniel Waisanen )

) 51CTV24-1747

Plaintiff )
)
vs. )
) **NOTICE OF HEARING**
Credit Collections Bureau )
Defendant )
)

PLEASE TAKE NOTICE and be advised that a hearing on the above

captioned matter has been scheduled before the Honorable Roetzel ,

Circuit Court Judge, at the Pennington County Courthouse at Rapid City,

South Dakota on the 14 day of January , 20 25, at 2:30 am / pm)

Dated this 11 day of December , 20 24.

Plaintiff/Defendant

FILED
Pennington County, SD
IN CIRCUIT COURT

DEC 1 1 2024

Amber Watkins, Clerk of Courts
Clerk
By